Charles W. Ray, Jr.
LAW OFFICES OF CHARLES W. RAY, JR.
711 H Street, Suite 310
Anchorage, AK 99501
(907) 274-4839

Don C. Bauermeister
BURKE & BAUERMEISTER, P.L.L.C.
921 W. 6th Ave., Suite 250
Anchorage, AK 99501
(907) 277-6177

Co-Counsel for Plaintiffs

IN THE UNITED STATES COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| VALERIE ROUNTREE, individually and as Personal Representative of THE ESTATE OF APRIL LYNNE COX; MORGAN SCHEDIWY, a minor, through her natural mother and guardian VALERIE ROUNTREE; and CHRISTOPHER COX,<br><br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>CHING FENG BLINDS INDUSTRY CO., LTD., a Taiwanese corporation; JENCRAFT CORPORATION a/k/a JENCRAFT MANUFACTURING CO., INC., a New Jersey corporation; WAL-MART STORES, INC., a Delaware corporation; and WINDOW COVERING MANUFACTURERS ASSOCIATION,<br><br>　　　　　　Defendants. | Case No. 3:04-cv-00112-JWS<br><br><u>OPPOSITION TO WAL-MART STORES, INC.'S MOTION FOR SUMMARY JUDGMENT</u> |

Opposition to Wal-Mart Motion for Summary Judgment
Rountree v. Ching Feng, et al    A04-0112 CV (JWS)
Page 1 of 7                      Rountree 311.1 WalMart SJ Opp

INTRODUCTION

Defendant Wal-Mart Stores, Inc. ("Wal-Mart") has moved for summary judgment, asserting that it cannot be a part of this action since its records do not show the sale of any window blinds matching the dimensions of the blinds in which April Cox concededly strangled on 27 May 2002. For purposes of the pending motion, plaintiffs agree that the blinds are approximately 70 to 72 inches wide and extend to approximately 39 to 40 inches when fully lowered. Nevertheless, Wal-Mart's motion must be denied; there is admissible evidence that, when viewed in the light most favorable to plaintiffs, the subject blinds were purchased at Wal-Mart. In addition, plaintiffs have alleged a claim against all defendants regarding their failure to warn the consuming public of "known dangerous defects in the Blinds" and failing "to initiate a recall of horizontal blinds identical to, or substantially similar to, the Blinds, despite Defendants' knowledge" of the dangerous condition of such blinds. <u>See</u> Complaint at ¶25. Inasmuch as arguments going to the latter claim depend to some extent upon receipt by plaintiffs' counsel of documents recently reviewed in Atlanta, Georgia, plaintiffs respectfully request that the Court defer its ruling pending submission of such documentation by plaintiffs' counsel. Fed. R. Civ. P. 56(f); Affidavit of Charles W. Ray, Jr.

FACTS

Factual contentions by Wal-Mart in this motion are in important aspects incorrect.[1] It is Valerie Rountree's recollection that her daughter's crib was placed adjacent to the only window in the room because the furniture fit into the room best as it was

---

[1] The factual assertions by Wal-Mart were correct at the time made, although later developments, as noted in text, call several points into question.

Opposition to Wal-Mart Motion for Summary Judgment
Rountree v. Ching Feng, et al   A04-0112 CV (JWS)
Page 2 of 7   Rountree 311.1 WalMart SJ Opp

configured and that Valerie and her father Paul Rountree together arranged the furniture. Affidavit of Valerie Rountree ("V. Rountree Affidavit"); <u>compare</u> Wal-Mart's motion at 1. On the morning of April's death, Valerie believes Paul and Ilene had left the house very shortly before the incident and returned that afternoon, having returned from their camping trip the previous evening. V. Rountree Affidavit; <u>compare</u> Wal-Mart motion at 2. No complaint was filed naming Paul or Ilene Rountree in connection with April's death. Affidavit of Charles W. Ray, Jr. ("Ray Affidavit").

When police and other emergency personnel were still at Paul and Ilene Rountree's house, and Ilene had only just learned of April's death, she voluntarily remarked that she had purchased the subject blinds at Wal-Mart. V. Rountree Affidavit. The statement is admissible under Fed. R. Evid. 803(2) as an excited utterance. *See*, *e.g.*, *U.S. v. McLennan*, 563 F.2d 943, 948 (9th Cir. 1977), *cert. denied*, 435 U.S. 969 (1978). Ilene's deposition testimony that the subject blind was purchased "shortly after moving into the house in April 1994," is almost surely incorrect. As noted in discovery responses by the Window Covering Manufacturers Association (WCMA), the warning label on the bottom rail of the blinds post-dates adoption of the 1996 standard attached as Exhibit 1. *See* Exhibit 2, excerpts of WCMA response to plaintiffs' discovery requests. The reference on the label to "5.1.1" almost surely relates to that numbered section of the 1996 standard. *See* Exhibit 1 at 7. Since the standard was not even approved until 27 November 1996, Exhibit 1 at 2, the subject blinds were likely sold in 1997 or a later year, but necessarily before adoption of the 2002 standard that revised the 1996 standard. Ray Affidavit.

In 1994, some WCMA members and others, including defendant Wal-Mart, formed the Window Covering Safety Council (WCSC). Ray Affidavit. Wal-Mart has been

Opposition to Wal-Mart Motion for Summary Judgment
Rountree v. Ching Feng, et al    A04-0112 CV (JWS)
Page 3 of 7                       Rountree 311.1 WalMart SJ Opp

a member of WCSC since its inception to the present. Ray Affidavit. In 1994, at the same time WCMA was working on development of the 1996 standard, the WCSC proposed a "voluntary corrective action plan" to the Consumer Product Safety Commission (CPSC), to address the hazards of window blind cords. Ray Affidavit. Thereafter, WCSC, as well as WCMA, embarked upon a public relations campaign in which the public was informed that such blinds could be made safe by the simple expedient of cutting the side pull cord loop and affixing tassels to the ends of the severed loop. Ray Affidavit. At that time, however, there already had been reports of infants becoming entangled in the inner cords of window blinds of which WCMA and WCSC were aware. Ray Affidavit. The voluntary corrective action plan did not address in any fashion that strangulation hazard. Wal-Mart, as a member of WCSC, would have specific knowledge of the inner cord hazard, yet through WCSC, misled the public by disseminating information that the inner cord did not pose a hazard. Essentially Wal-Mart disseminated information known by it to be false with respect to the risks posed by window blinds such as those in which April strangled, and misled the public into believing the simple expedient of cutting the side pull cord loop eliminated any risk. Sadly, it was the risk of which WCMA, WCSC, and Wal-Mart were aware – a threat unknown to Valerie Rountree – that took April's life. V. Rountree Affidavit. It was not until November 2000 that the industry, including both WCMA and WCSC, undertook a "recall to repair" by which a program was set up to provide small plastic beads in an attempt to address the risk posed by the inner cords of window blinds. Ray Affidavit. However, WCSC and WCMA knew the program was ineffective. *Id.*

Opposition to Wal-Mart Motion for Summary Judgment
Rountree v. Ching Feng, et al        A04-0112 CV (JWS)
Page 4 of 7                          Rountree 311.1 WalMart SJ Opp

ARGUMENT

1. <u>A Genuine Issue of Material Fact Exists as to Whether Wal-Mart Sold the Subject Blinds to Ilene Rountree</u>.

The essential basis on which Wal-Mart seeks summary judgment is its contention that there is insufficient admissible evidence regarding its sale of the subject blinds to Ilene Rountree. However, at the time her step-granddaughter died, Ilene remarked upon her purchase of the blinds from Wal-Mart. V. Rountree Affidavit. Although less certain of that comment when deposed, Ilene still thought it likely that she had purchased the subject blinds from Wal-Mart. Wal-Mart Motion, Exhibit H at 2. In this posture, and viewing the evidence in the light most favorable to plaintiffs, the claims against Wal-Mart must stand.

2. <u>Wal-Mart has not Addressed all Allegations in the Complaint</u>.

As early as 1994, Wal-Mart, in conjunction with other members of WCSC as well as WCMA, embarked upon what is best described as a public relations campaign aimed at convincing the consuming public that a dangerous product could be made safe by simply cutting the side pull cord and attaching tassels to it. Ray Affidavit. For the duration of that public relations campaign, from 1994 until at least November 2000, WCMA, WCSC, and Wal-Mart all hid the truth; they knew there had been strangulation deaths involving the inner cord loops but nevertheless affirmatively stated that the "tassel fix" made the blinds safe. Valerie herself had, through some avenue, learned that the side pull cord posed a risk of strangulation to her 14-month-old daughter. V. Rountree Affidavit. For that reason, the side pull cord was firmly attached well out of April's reach; she did not, nor could she have, strangled in that cord. *Id*. As Wal-Mart had taken upon itself the task of warning the consuming public of a known dangerous defect, Wal-Mart had a duty to act reasonably

Opposition to Wal-Mart Motion for Summary Judgment
Rountree v. Ching Feng, et al   A04-0112 CV (JWS)
Page 5 of 7   Rountree 311.1 WalMart SJ Opp

under the circumstances and either (1) accurately warn of the risk; (2) propose a voluntary action plan that truly addressed the risk – including the inner cord loop danger; or (3) initiate a recall that would truly eliminate the hazard. Wal-Mart did none of those things. Instead it appears to have affirmatively misstated both the risk and the remedy, and undertook a public relations campaign that misinformed the public.

### CONCLUSION

Wal-Mart's motion must be denied. There is a genuine issue of material fact whether the subject blinds were purchased at Wal-Mart. In addition, Wal-Mart's motion does not address alternative allegations in the complaint regarding its failure to warn or failure to recall a product known by it to be dangerous. To the extent necessary, counsel for plaintiffs respectfully requests relief pursuant to Fed. R. Civ. P. 56(f) in order to submit documents that will support the statements in text.

DATED 30 January 2006

s/Charles W. Ray, Jr.
Law Offices of Charles W. Ray, Jr., P.C.
711 H Street, Suite 310
Anchorage, AK 99501
Phone: (907) 274-4839
Fax: (907) 277-9414
E-mail: dlcraylaw@acsalaska.net
craylaw@aol.com
ABA# 8406048

Opposition to Wal-Mart Motion for Summary Judgment
Rountree v. Ching Feng, et al    A04-0112 CV (JWS)
Page 6 of 7    Rountree 311.1 WalMart SJ Opp

I hereby certify that on 30 January 2006, a copy of the foregoing Opposition to Wal-Mart Stores, Inc.'s Motion for Summary Judgment, with Exhibits 1 and 2, Affidavit of Charles W. Ray, Jr., and Affidavit of Valerie Rountree, was served electronically on:

Daniel T. Quinn
Richmond & Quinn
dquinn@richmondquinn.com
cesary@richmondquinn.com

William A. Earnhart
Lane Powell, P.C.
earnhartw@lanepowell.com
preej@lanepowell.com
heckj@lanepowell.com
wagnerf@lanepowell.com

Donald C. Thomas
Delaney, Wiles, Hayes, Gerety, Ellis & Young
DCT@delaneywiles.com
jaf@delaneywiles.com
usdcuser@delaneywiles.com

and was served electronically and the via the U.S. Postal Service on the following:

Michael Weiss
King & Spalding LLP
191 Peachtree St.
Atlanta, GA 30303
Mweiss@KSLAW.com

Don C. Bauermeister
Burke & Bauermeister
921 W. 6th Ave., Suite 250
Anchorage, AK 99501
dcblaw@alaska.com

By: s/Charles W. Ray, Jr.

Opposition to Wal-Mart Motion for Summary Judgment
Rountree v. Ching Feng, et al   A04-0112 CV (JWS)
Page 7 of 7   Rountree 311.1 WalMart SJ Opp