Donald C. Thomas, Esq.
Delaney Wiles, Inc.
1007 W. Third Avenue, Suite 400
Anchorage, AK  99501
phone: (907) 279-3581
fax:     (907) 277-1331
dct@delaneywiles.com

Jameson B. Carroll, Esq.
Michael Weiss, Esq.
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA  30309
phone: (404) 572-2804
fax:     (404) 572-5137
jcarroll@kslaw.com
mweiss@kslaw.com

Attorneys for Defendant
Window Covering Manufacturers Association

IN THE UNITED STATES COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| VALERIE ROUNTREE, individually and as Personal Representative of THE ESTATE OF APRIL LYNNE COX; et al. | ) ) ) | Case No. A04-0112 CV (JWS) |
| Plaintiffs, | ) ) ) | WINDOW COVERING MANUFACTURERS |
| vs. | ) ) ) | ASSOCIATION'S BRIEF IN SUPPORT |
| WINDOW COVERING MANUFACTURERS ASSOCIATION, | ) ) ) | OF ITS MOTION IN LIMINE TO EXCLUDE THE TESTIMONY |
| Defendant. | ) ) ) | OF JON JACOBSON |

Window Covering Manufacturers Association ("WCMA"), named as a defendant in the

above-styled action, files this Brief in Support of its Motion in Limine to Exclude the Testimony

of Dr. Jon Jacobson, respectfully showing the Court as follows:

# I.
# INTRODUCTION

In the 15 years since the Supreme Court set forth the *Daubert* standard for the admission of opinion testimony, courts have set forth what is required of an expert witness in federal court: His testimony must be relevant, it must be reliable, and it must be helpful to the jury. Most importantly, an expert's opinion must be based on sufficient facts and data and the product of a reliable methodology applied to those facts.

Regardless of how the standard is stated, Dr. Jon Jacobson's testimony fails to meet it. He did absolutely no independent research in forming his opinions. Although he is a professional engineer, Dr. Jacobson revealed that he conducted no independent study of the issues in this litigation before committing his opinions to the record. He did not review the police report or autopsy report. He has never examined – or even seen – the blinds at issue. Indeed, his opinions are based in their entirety on a single deposition transcript and a small stack of documents provided him by Plaintiffs' counsel – a tiny subset of the thousands of relevant documents WCMA made available in this litigation.

It should go without saying that opinions based on only a fraction of the relevant information – information not discovered by the expert but cherry-picked by the attorneys paying for his testimony – is not relevant or reliable. And it should further go without saying that a disclosure intended to set forth the opinions of an expert witness should do so in a way that those opinions can be understood. Finally, it is indisputable that a trained engineer who forms a professional opinion about the safety of a product without taking a look at the product itself is not using the "intellectual rigor" one would expect from a member of his profession.

Under *Daubert*, an expert's opinion must be reliable. But there is nothing reliable about opinions based on documents hand-selected by one side in litigation and unsupported by even the most elemental independent research. Dr. Jacobson's opinions do not meet the standard set forth in the Federal Rules of Evidence, interpreted by the Supreme Court, and applied by this and other Courts for 15 years. His testimony should be excluded.

## II.
## FACTUAL BACKGROUND

Defendant Window Covering Manufacturers Association ("WCMA") is a trade association of North American window covering manufacturers that, since 1996, has been the sponsor of safety standards for corded window coverings developed in conjunction with the U.S, Consumer Products Safety Commission ("CPSC"). Plaintiffs are the family of April Lynne Cox, a child who died May 27, 2002 from strangulation on the inner cord of a set of window blinds.[1] Although Plaintiffs have no evidence of the identity of the manufacturer, importer, or retailer of the blinds, they have filed negligence claims against WCMA under Restatement (Second) of Torts § 324A in connection with its development of safety standards. For further background, WCMA incorporates its Statement of Undisputed Material Facts in the Brief in Support of its Motion for Summary Judgment, filed contemporaneously herewith.

On October 31, 1997, Plaintiffs disclosed three expert witnesses, including Dr. Jon Jacobson, an engineer in Seattle. Dr. Jacobson intends to testify at trial about the adequacy of

---

[1] The inner cord is the cord that runs through the slats of the blinds, allowing the blinds to be lifted or lowered by the pull cord.

the safety standard and WCMA's efforts related to the standard.  (Exhibit A - Jacobson Dep. at 24-25.[2])

## III.
## ARGUMENT AND CITATION OF AUTHORITY

**A.    THE FEDERAL RULES OF EVIDENCE REQUIRE OPINION TESTIMONY TO BE RELEVANT AND RELIABLE.**

Before Dr. Jacobson can opine about any of the subjects addressed in his report, the Court must ensure that his opinions meet the prerequisites set forth in Federal Rule of Evidence 702, as interpreted by the Supreme Court in *Daubert v. Merrill Dow Pharm.*, 509 U.S. 579 (1993), and its progeny.  In *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999)*,* the Supreme Court extended the trial court's "gatekeeping" role to include non-scientific expert testimony, thereby requiring courts to make a threshold determination of relevance and reliability for all expert witnesses.

Federal Rule of Evidence 702 sets forth the standard for admissibility of expert opinions:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The *Daubert* Court distilled the standard of admissibility presented by Rule 702 into two lines of inquiry: relevance and reliability.  *Daubert,* 509 U.S. at 597 (1993).  The trial court's scrutiny of both the reliability and relevance of expert testimony "is vital to ensure accurate and unbiased decision-making by the trier of fact." *Elsayed Mukhtar v. Calif. State Univ.,* 299 F.3d 1053, 1063

---

[2] For consistency in briefing, the page references to Dr. Jacobson's deposition transcripts are to the pages of the transcript itself, not to the pages of the exhibit.

(9th Cir. 2002).  If expert testimony lacks either reliability or relevance, "it *must* be excluded." *Cooper v. Brown,* 510 F.3d 870, 942 (9th Cir. 2007) (emphasis added).

### B.    DR. JACOBSON'S TESTIMONY IS UNRELIABLE BECAUSE IT IS NOT GROUNDED IN THE EVIDENCE.

In discharging the "gatekeeping" responsibility to examine an expert's reliability, a district court may consider a variety of factors.[3]  But at bottom, the court's responsibility is "to make certain that an expert … employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

Expert opinions lack the requisite "intellectual rigor" if they do not have a basis in the underlying facts.  *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 830-32 (9th Cir. 2001).  Indeed, the requirement that an expert base his opinion on the relevant evidence is central to any analysis under Rule 702, which explicitly requires expert testimony to be "based upon sufficient facts or data."  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *General Electric Co. v. Joiner,* 522 U.S. 136, 146 (1997).

When evaluating the reliability of expert testimony, courts also consider whether the expert's opinions were prepared solely for litigation.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1317 n.4 (9th Cir. 1995) ("One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying."); *see also* F.R.E. 702 Advisory

---

[3] The *Daubert* factors are (1) whether a theory or technique can be tested; (2) whether it has been subject to peer review; (3) whether a technique has a high error rate and whether its operation is governed by known standards; and (4) whether the theory or technique has achieved "general acceptance" within the "relevant scientific community," 509 U.S. at 592-94.

Notes (quoting *Daubert* for this proposition).  Because such testimony is less likely to be the product of an objective, reliable methodology, the party propounding the expert must submit additional indicia of reliability before the testimony can be admitted.

Dr. Jacobson's opinions fail to meet either standard of reliability outlined above.  His opinions lack a sufficient factual basis, and they were prepared solely for litigation.  For both of these reasons, his testimony must be excluded from evidence.

**1.    Dr. Jacobson has not done the basic work
sufficient to offer opinions in federal court.**

To prepare for his testimony in this case, Dr. Jacobson apparently read a single deposition and a small set of documents provided by Plaintiffs' counsel – and nothing else.  *See* Section III(B)(2), *infra*.   Though hired as an engineer to testify about the allegedly defective nature of the window blinds involved in this incident,[4] *he has never looked at those blinds*.  That means that, although liability in this case hinges on the premise that the window blinds at issue complied with a safety standard sponsored by WCMA – and Dr. Jacobson's own testimony hinges on the adequacy of that standard – he does not know if the blinds actually complied with the standard:

> Q.    I'll ask this sort of again.  Are you -- can you say one way
>        or another whether the blinds, as a whole, comply with that
>        standard?
>
> A.    I haven't seen the blinds, and I haven't seen a report, so I
>        can't say.

(Exhibit A - Jacobson Dep. at 57.)  Dr. Jacobson also cannot rely on the findings of others: Aside from the fact that he never examined the blinds at issue, he has also never even read any report memorializing an inspection of the blinds. (Exhibit A - Jacobson Dep. at 56.)  Nor has he

---

[4] The blinds have been in the possession of Plaintiffs or their attorneys since prior to the filing of this lawsuit.

has reviewed the medical examiner's report, the police report, or *any report at all* regarding the

death of April Cox. (Exhibit A - Jacobson Dep. at 89.)  In short, Dr. Jacobson is an engineering

and design expert hired in a product liability case who has never bothered to look at the product

about which he plans to testify.

**2.    Dr. Jacobson's opinions are based on nothing more than a
        small stack of documents cherry-picked by Plaintiffs' counsel.**

The failure of Dr. Jacobson to examine the window blinds is endemic of the work he has

done in this case.  To say that Dr. Jacobson based his opinions in this case on insufficient data

would be an enormous understatement.  When asked in his deposition to identify the material he

relied on in forming his opinions, Dr. Jacobson placed on the table a small pile of documents and

a CD containing the deposition of WCMA senior advisor Peter Rush.  Dr. Jacobson made it clear

that he considered no other material when forming his opinions:

> Q.    … Dr. Jacobson, is this the sum of your reliance material in
>       this case?
>
> A.    Yes.

(Exhibit A - Jacobson Dep. at 9; *see also* Jacobson Dep. at 13.)  He then explained that the stack

of papers contained every document counsel for Plaintiffs sent him during the four years since he

was retained in this case.  (Exhibit A - Jacobson Dep. at 87.)

It might be permissible for an expert to form an opinion based only on a small set of

documents, if that small set contains all of the evidence relevant to his opinion.  But the inch-

high stack of papers Plaintiffs' counsel handpicked for Dr. Jacobson are barely a fraction of the

more than 30,000 documents WCMA made available to Plaintiffs in this case, all of which relate

directly to the hazards of cords in window coverings.[5]  (*See* Exhibit  B - e-mail from Mr. Ray to Mr. Weiss.)  Perhaps Dr. Jacobson simply did not know there were additional documents, but regardless, he certainly never asked.  (Exhibit A - Jacobson Dep. at 87-88.)

### a.     Dr. Jacobson never saw the majority of the evidence relating to his opinions.

Because he never asked Plaintiffs' counsel if there were additional documents, Dr. Jacobson apparently has no idea what the scope of evidence relevant to his opinions may be.  It is not merely that he does not know facts that are in evidence; because of his limited review of documents, he does not even know what evidence is available.  This was readily apparent during his deposition:

- Dr. Jacobson was not aware of when the blinds were manufactured, or the identity of the manufacturer or retailer, but it appears he does not know that these facts are unknown to *all* parties. (Exhibit A - Jacobson Dep. at 46-47).

- He testified that there was no record of WCMA having any information about window blind strangulation hazards until approximately 1994, though the record reflects CPSC informing WCMA of the hazard in 1985.  (Exhibit A - Jacobson Dep. at 26.)

- He does not know if CPSC *ever* presented data about strangulations to WCMA, despite the record disclosing in detail that this occurred.  (Exhibit A - Jacobson Dep. at 49, 67-68.)

- He does not know who the members of WCMA were at any relevant time period, although that information was provided to Plaintiffs in discovery responses and document production.  (Exhibit A - Jacobson Dep. at 30)

- He does not know whether WCMA made changes to the safety standard that he believes are appropriate, though that information is in the record and publicly available.  (Exhibit A - Jacobson Dep. at 81.)

- He does not know whether WCMA inspects or certifies any blinds, though the evidence is undisputed that they do not.  (Exhibit A - Jacobson Dep. at 86-87.)

---

[5] After Plaintiffs' counsel examined the full set of documents provided by WCMA, the Window Covering Safety Council, and from responses to Freedom of Information Act requests to the CPSC, they requested and were provided copies of 2,333 individual documents.

- Although he relies on a letter discussing a strangulation incident WCMA received from an attorney, he does not know what product is identified in the letter or whether any WCMA member manufactures such a product. (Exhibit A - Jacobson Dep. at 84-85.)

Indeed, like any opinion he might have about the blinds themselves, Dr. Jacobson's opinion that WCMA took no action to address inner cord strangulations until pressed by the CPSC is also entirely lacking in factual basis. In his deposition, he flatly stated that "all of the work that went into the development of the standards was motivated by interaction with the CPSC." (Exhibit A - Jacobson Dep. at 67.) But when questioned further about this statement, Dr. Jacobson admitted that he was not aware of *any* communications by the CPSC requesting that the WCMA address inner cords in any safety standard. (Exhibit A - Jacobson Dep. at 67-68.) In fact, Dr. Jacobson eventually conceded that he did not know the "overall motivation" for the revisions to the safety standard to specifically address inner cords: "I can't say exactly how that did come about." (Exhibit A - Jacobson Dep. at 68.)

It is unbelievable that a scientist like Dr. Jacobson would reach a professional conclusion based solely on documents cherry-picked by one party in an adversarial dispute. (Exhibit A - Jacobson Dep. at 88:1-6.) It is even more inconceivable that a scientist would offer, under oath, a conclusion he reached after admittedly conducting absolutely no independent research – not even asking Plaintiff's counsel if there were any more documents:

> Q.    Just to make sure I'm clear on something – you still have it in front of you, the pile of documents you relied on for your report?
>
> A.    Yes.
>
> Q.    And those were sent to you by the attorneys for the plaintiff?
>
> A.    Yes.
>
> Q.    And you didn't seek out documents aside from those?

A.    Yes.

Q.    No, you didn't, right?  Bad question.  Is it correct to say
       that you did not seek out documents aside from those
       provided to you by plaintiffs' counsel?

A.    Yes.

Q.    Did you request any additional documents?

A.    No.

(Exhibit A - Jacobson Dep. at 87-88.)  Clearly, Dr. Jacobson has failed to employ "the same

level of intellectual rigor that characterizes the practice of an expert in the relevant field."

*Kumho Tire,* 526 U.S. at 152.

### b.    Dr. Jacobson's methodology falls short of the standards of his profession.

One need not merely suppose that Dr. Jacobson's opinions in this matter are not up to his

professional standards.  The Code of Ethics for Engineers supplied by the National Society of

Professional Engineers (NPSE) – of which Dr. Jacobson is a member – states the following as a

rule of practice:

3.    Engineers shall issue public statements only in an objective
       and truthful manner.

a.    Engineers shall be objective and truthful in
       professional reports, statements, or
       testimony. They *shall include all relevant and
       pertinent information in such reports*, statements, or
       testimony, which should bear the date indicating
       when it was current.

(Exhibit C (emphasis added).)  Information about the blinds at issue in this case is both "relevant

and pertinent" to the formation of a reliable expert opinion.  Not only did he fail to examine the

blinds or seek out any information regarding them, Dr. Jacobson failed to seek out *any*

information which discussed the accident involved in this case.  *See Guidroz-Brault*, 254 F.3d at

830-32 (upholding the trial court's exclusion of expert testimony due to the testimony's lack of a factual basis).

### 3.   Dr. Jacobson's opinions are unreliable because they were prepared solely for litigation.

As Dr. Jacobson bases all of his opinions in this case on a small set of documents selected for him by Plaintiffs' counsel, it follows that those opinions were created solely in the context of this litigation.  As Dr. Jacobson himself concedes, he failed to conduct any independent research or investigation in this matter.  (Exhibit A - Jacobson Dep. at 87-88.)

The Ninth Circuit has repeatedly held that whether an expert prepared his opinions solely for litigation is a critical factor in assessing the reliability of his testimony. *See Daubert,* 43 F.3d at 1317 n.4.  Because an expert who begins his study of a topic only *after* he has been hired is likely to be biased towards the outcome desired by the party hiring him, a party offering an expert whose opinion has been developed solely for litigation must submit additional indicia of reliability, such as a showing that the expert's conclusions have been subjected to peer review, or that they reference an objective source such as a learned treatise, policy statement, or a published article.  *Id.* at 1317-19 (citing *United States v. Rincon,* 28 F.3d 921, 924 (9th Cir. 1994)).  Unless the expert can "explain precisely how they went about reaching their conclusions," the testimony must be excluded.  *Id.* at 1319.

Here, there is no doubt Dr. Jacobson's opinions were formed only in the litigation context.  As discussed above, Dr. Jacobson admitted that he did not seek out any information other than the materials provided by Plaintiffs' counsel. (Exhibit A - Jacobson Dep. at 87-88.) Further, Dr. Jacobson has no experience with strangulation hazards outside of litigation, (Exhibit A - Jacobson Dep. at 17), and no experience with window blinds in particular. (Exhibit A - Jacobson Dep. at 15.)  Aside from a single project involving the Seattle monorail, his earnings

from expert testimony serve as "virtually [his] entire professional income," and have for years. (Exhibit A - Jacobson Dep. at 18.)

Plaintiffs thus have the burden of presenting some independent indicia of reliability. They cannot meet this burden. Dr. Jacobson's opinions have not been subjected to peer review or publication. And far from pointing to a "learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like," *Daubert,* 43 F.3d at 1319, Dr. Jacobson cannot point to *any* reliable, factual basis for either of his opinions, as made clear in the discussion above.[6] Dr. Jacobson's assurances of reliability are simply "not enough." *See id.* at 1319.

### B.   DR. JACOBSON'S TESTIMONY IS IRRELEVANT BECAUSE IT WOULD NOT HELP THE JURY.

Rule 702 of the Federal Rules of Evidence requires courts to ensure that expert testimony is relevant, stating that expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Aside from the general requirement of relevance set forth in Fed. R. Evid. 401, opinion evidence must be "helpful" to the jury. *Daubert,* 509 U.S. at 591-92. It is the burden of the party offering the testimony to ensure that this requirement is met. *Lust v. Merrell Dow Pharmaceuticals, Inc.,* 89 F.3d 594, 598 (9th Cir. 1996); *Lloyds, London v. Inlet Fisheries, Inc.,* 389 F. Supp. 2d 1145, 1152 (D. Alaska 2005).

Even when opinions are related to the facts at issue, those that do not help the jury understand and interpret the evidence do not "assist the trier of fact," and is therefore irrelevant. *See In re TMI Litigation,* 193 F.3d 613, 671 (3d Cir. 1999) (upholding exclusion of expert opinion because expert "testimony must assist the fact finder in understanding the evidence or

---

[6] Certainly the documents provided to him by Plaintiffs' counsel do not apply. Even if they were not handpicked out of a larger set by attorneys, none of the documents would fit into one of the Ninth Circuit's categories of acceptable proof.

determining a disputed issue of fact.  His cryptic explanation … does neither.").  Further,

allowing such testimony creates the risk that the testimony will confuse or mislead the jury,

running afoul of Fed. R. Evid. 403's prohibition of evidence whose probative value is

outweighed by the danger of confusing or misleading the jury.  This additional hurdle is

particularly important in the context of expert witnesses, who can "mesmerize" the jury with

their purported expertise.  *Rogers v. Raymark Industries, Inc.,* 922 F.2d 1426, 1431 (9th Cir.

1991); s*ee also In re Hanford Nuclear Reservation Litigation,* 497 F.3d 1005, 1034 (9th Cir.

2007) (citing *Daubert,* 509 U.S. at 595).

Dr. Jacobson is such a witness.  His opinions can be inscrutable and offer very little in

substance.  If his trial testimony is anything like his expert disclosure or his deposition, he cannot

help but confuse jurors who may infer that, because he is presented to them as an "expert," his

opinions must have more import than they actually do.  There is nothing "helpful" about his

testimony, and it should be excluded.

**1.      Dr. Jacobson's testimony fails to meet the "helpfulness"
standard of relevance because it is difficult to understand.**

In order for expert testimony to "assist the trier of fact," the trier of fact must be able to

understand the testimony.  Testimony that is confusing or difficult to comprehend does not

satisfy what the Supreme Court in *Daubert* described as a "helpfulness" standard of relevance.

509 U.S. at 591-92.  Dr. Jacobson's opinions tend to confuse matters rather than make them

more clear, an issue since he submitted his expert disclosure late last year.  Although the

disclosure is only six paragraphs, the meaning of many sentences is difficult to grasp, including

this one:

> The response of the code development has been to develop a code
> but did not include the reference that the code represented the

minimum standard and noted in the returned ballot of Donald
Vasos.

(Exhibit D - Jacobson Rep. at 2.)

In his deposition, given the chance to explain further, he was unable or unwilling to do

so.  For example, he testified that a trade association should be aware of safety issues involving

products its members make:

> Q.     And how would a trade group go about finding this
>        information out?
>
> A.     The members should have that as part of their knowledge
>        base, and the overall organization should assist – it would
>        seem like assist in concert to have the product as presented
>        to the public for safe sale, merchantability.  If they can't do
>        it at home, they should be doing it in cooperative
>        organization.
>
> Q.     I'm not sure that answered the question.  How should a
>        trade association find out about possible safety risks?
>
> A.     I think their best function is to present a safe product to the
>        general public.  And if they're part of an overarching
>        organization, they should be aware of it and assisting the
>        members to reduce the risk, hazard, danger to the public.
>        So they should accumulate the information.
>
> Q.     I understand that, but my question is:  How should they go
>        about finding out about it?  If I'm involved in the national
>        widget society, how would I find out if there are any risks
>        with widgets?
>
> A.     They would take the data that comes to them or take the
>        data from their organizations and have essentially a
>        clearinghouse for that data and discuss that.
>
> Q.     Why would the data come to them?
>
> A.     Because it's going to be a universal problem to all the
>        manufacturers of the product.
>
> Q.     What if this data is not brought to them?

> A.    That's not a proper function on the part of the organization
>        or its members.

(Exhibit A - Jacobson Dep. at 27-28.)

There is no reason to expect that Dr. Jacobson's testimony would be any clearer or more forthright in trial than it was in deposition.  Testimony like this fails the "helpfulness" requirement of Rule 702 simply because it requires the jury to work harder, rather than aiding them in understanding the evidence.  An expert who is unwilling or unable to explain the evidence to the jury is not helpful, and his testimony should be excluded.  *In re TMI Litigation*, 193 F.3d at 671.

## 2.    The potential for confusion from Dr. Jacobson's testimony outweighs any probative value.

The same issues that make Dr. Jacobson's testimony irrelevant under Rule 702 also implicate Rule 403, which allows the court to exclude evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Because experts like Dr. Jacobson can exert a strong influence on juries, his testimony must be carefully scrutinized under Rule 403's balancing test. *See Daubert*, 590 U.S. at 595.

Dr. Jacobson's testimony fails that test.  Because the jurors would have work to understand Dr. Jacobson's testimony, it is likely that they would confuse the issues or become misled, especially if – like the townsfolk in the story of the emperor wearing no clothes – the jurors assume that because Dr. Jacobson is an "expert," any difficulty they have grasping his intended meaning must be their fault, not his.  Confused jurors may be misled into uncritically accepting what they believe he is saying, instead of evaluating its weight and probity as they should.  For this additional reason, his testimony should be excluded.

## CONCLUSION

For the reasons stated above, the WCMA respectfully requests that this Court exclude the

testimony of Dr. Jon Jacobson.

Respectfully submitted, this 3d day of March, 2008.

DELANEY WILES, INC.

Attorneys for Defendant Window Covering
Manufacturers Association

_s/Donald C. Thomas_____
Donald C. Thomas
Delaney Wiles, Inc.
1007 W. Third Avenue, Suite 400
Anchorage, Alaska 99501
phone: (907) 279-3581
fax:     (907) 277-1331
dct@delaneywiles.com


Jameson B. Carroll
Michael Weiss
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA  30309
phone: (404) 572-2804
fax:     (404) 572-5143
jcarroll@kslaw.com
mweiss@kslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on 3 March 2008, I caused to be electronically served a copy of the foregoing **WINDOW COVERING MANUFACTURERS ASSOCIATION'S BRIEF IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF JON JACOBSON** upon:

Charles W. Ray, Jr.
Law Offices of Charles W. Ray, Jr., P.C.
205 E. Dimond Blvd., No. 531
Anchorage, AK 99515

Don C. Bauermeister
Burke & Bauermeister, P.L.L.C.
921 West 6th Avenue, Ste. 200
Anchorage, Alaska 99501

This 3d day of March, 2008.

s/Donald C. Thomas