## STUART M. STATLER

_esms@comcast.net_

2369 NORTH NELSON STREET
ARLINGTON, VIRGINIA 22207
703.524.8990 [ofc]   703.524.8418 [fax]
703.304.5090 [cell]

## Expert Disclosure

re: **Selden v. Matrixx Initiatives**

Stuart M. Statler served for seven years as Commissioner of the U.S. Consumer Product Safety Commission [CPSC], as Vice President for Risk Assessment and Product Liability for a major international consulting firm, and as a product safety consultant and expert witness in litigation for almost 20 years. He was appointed to the CPSC by the President and unanimously confirmed by the United States Senate, serving as Commissioner from August 1979 through the end of May 1986. He also was acting-Chairman and Vice-Chair of the agency for extended periods. During his tenure in office, and afterwards as a product safety consultant, the need for clear and concise product warnings and accompanying cautionary materials has consistently arisen. While at the CPSC, Mr. Statler regularly took the lead role amongst Commissioners to ensure adequate disclosure of public health and safety risks. Both then and in the intervening years, he has taken an active role in working with companies and entire industries, where appropriate, to remedy or correct any needless or unreasonable product risks, or to otherwise assist in recalling a defective product.

During, and after serving at the helm of the federal agency, in public meetings, private sessions with affected companies and industries, and in authoring various articles for publication, Mr. Statler has explicitly addressed the critical responsibilities of manufacturers and distributors of products intended for use by consumers. As a consultant and expert witness ever since, he has consistently stressed the prime importance of companies actively investigating instances of serious injury, illness or death occurring from their products to find out why, and to fix the problem. He has repeatedly emphasized the pressing need on their part to focus upon improving a product's safety through changes to its design as a first principle. He also has urged firms to fully comprehend a product's risk before bringing it onto market, to maintain adequate records and files of hazard investigations and assessments, and to timely report safety

EXHIBIT
D
page 1 of 8

risks to responsible health and safety agencies, at both the federal and state levels, pursuant to the reporting requirements of applicable law.

At a previous point in time, almost a decade before being appointed as CPSC Commissioner, Mr. Statler served as Special Assistant to the Chairman of the precursor panel to the CPSC, the National Commission on Product Safety [NCPS]. The panel conducted a comprehensive two-year study [1968-70], at the direction of the U.S. Congress. It recommended to the Congress and the President a broad-based statutory scheme to provide for better protection of Americans from unreasonable risk of injury from products found in and around the home, and in recreation. The panel identified a series of risk concerns which warranted action by manufacturers, importers and retailers, by industry at large, and, as might be necessary, by regulatory or enforcement action on the part of the federal government whenever voluntary industry remedial efforts proved unsatisfactory or inadequate. He served as editor–in–chief of the NCPS *Final Report*, helping to draft the basic outline for the later-enacted Consumer Product Safety Act. Subsequently, Mr. Statler served as a principal staff member on one of two U.S. Senate committees responsible for recommending enactment of this landmark product safety legislation to the full Senate.

Upon completing his term as CPSC Commissioner, Mr. Statler became vice-president and partner with the international management consulting firm of A.T. Kearney [1986-89], heading up their risk management and product liability practice. He advised companies, and their law firms, how best to anticipate and avoid health, safety and environmental risks. He regularly shared with them his analysis and recommendations on how best to manage those risks so as to limit possible downstream damage and costs. And he counseled these companies -primarily manufacturers of consumer products- as to their potential liability and how best to avert costly litigation, principally by factoring safe product design, appropriate warnings, and responsible manufacturing practices into every facet of developing and marketing safer products.

Mr. Statler has continued consulting in the areas of product liability, risk management, product warnings, recalls, and corporate responsibility ever since, up to the present. A current copy of his CV is attached, along with a list of cases in which he testified at trial or in deposition in recent years, and a current fee schedule.

As to the case at hand, in the context of Matrixx Initiatives' manufacture and marketing of Zicam over-the-counter nasal spray, Mr. Statler will address what the company knew, and when it knew about the risks of total or partial loss of smell and taste in a segment of users taking the medication, and the attendant loss of quality of life. It is anticipated that he will assess the accountability of Matrixx Initiatives in failing to timely alert the public generally and, in particular, those -like Philip Salden- exposed to the medication, of its tendencies to bring about that sensory deprivation and its



EXHIBIT
D
page 2 of 8

2

consequences. He will deal with the sufficiency of the warnings on Zicam's labeling and on the package insert accompanying it. Mr. Statler is expected to examine the overall adequacy of the testing conducted by Matrixx prior to release of the over-the-counter spray and/or of the sprayer design used to administer the medication, and of the company's ongoing responsibility to share with the federal Food and Drug Administration and the public what it came to know about the medication's adverse and serious impact on certain users' sense of taste and smell. He will also address whether Matrixx Initiatives exhibited responsible manufacturing and marketing practices in its overall handling of the information it came to possess as to the likelihood of impairing the taste and smell capabilities of users of the Zicam nasal spray, and the extent to which the conduct of Matrixx, in the face of a known hazard, may be deemed to be reckless and wanton.

Any other testimony of Mr. Statler will depend upon the receipt of additional materials relating to the case as they become available -including discovery documents, depositions and the like- which may reflect new information.

June 15, 2006


EXHIBIT
D
page 3 of 8

**STUART M. STATLER**
2369 N. Nelson Street
Arlington, Virginia 22207
*esms@comcast.net*

*703.524.8990*

*703.524.8418*

*[fax]*

---

## PRODUCT SAFETY and REGULATORY CONSULTANT   *[1987-current]*

Perform strategic consulting services with respect to risks from consumer products, how they are dealt with, and the impact of federal regulation. The products typically are those subject to the jurisdiction of the U.S. **Consumer Product Safety Commission**, on which I served a seven-year term as Commissioner (and acting-Chairman for eight months). Consulting assignments commonly involve assessment of the risk involved, product recall analysis, regulatory options, or litigation support. I have presented expert testimony in deposition and at trial on more than 100 occasions in both federal and state court actions. Areas covered include product marketing, labeling, design flaws and safer design considerations, manufacturer and supplier responsibilities, product testing and warnings. I have counseled major manufacturers on product recalls and have regularly assessed risks from foreseeable, even if unintended, uses of consumer products. Also advise as to —

> conformance with responsible manufacturing practice, and with statutory
         hazard reporting obligations under the Consumer Product Safety Act;
> management and efficacy of product recalls;
> impact of federal safety regulation;
> product defect and liability considerations;
> adequacy of industry safety standards and fairness of standards procedures;
> compliance with applicable regulations and policies.

The CPSC, on which I served from 1979-86, is an independent federal regulatory agency empowered to address unreasonable product risks by encouraging industry to correct hazards and develop voluntary safety standards; mandating federal standards; disclosing risk information; or ordering a ban, seizure, or recall, to remove unsafe products from the market. Appointed by President Carter and unanimously confirmed by the U.S. Senate, I actively oversaw inquiries into a host of product dangers including *-gas valves, electric heaters, wood stoves, kerosene heaters, appliances, extension cords, flammable sprays & adhesives, chain saws, riding and walk-behind power mowers, power tools, ATVs, fireworks, tap water scalds ,lead paint, infant gates, cribs & walkers, toys & small parts, automatic garage doors, ladders, bunk beds, hot water heaters, amusement rides, furniture fires, window blind cords, tv carts, televisions, swimming pools & spas,* and more. Also helped to formulate indoor air pollution policies, and dealt with such longer-term risks as methylene chloride in paint removers, toxic emissions from kerosene heaters, and formaldehyde in manufactured housing, furnishings and insulation.

Previously, I served as **Special Assistant to the Chairman of the National Commission on Product Safety** [1968-70], precursor agency to the CPSC, which examined the adequacy of measures to protect the American public against unreasonable risks from consumer products used about the home and in recreation. The panel's final report led Congress to enact the Consumer Product Safety Act. I advised the NCPS Chairman on all substantive matters, prepared testimony to Congress, organized hearings around specific product risks, coordinated analysis of the adequacy of the common law in addressing product hazards, and drafted proposed legislation which later became the Child Protection and Toy Safety Act of 1969. Also served as Editor-in-Chief of the Commission's *Final Report to Congress and the President,* which set forth the basic outline of the later-enacted Consumer Product Safety Act.

**EXHIBIT**
D
*page 4of 8*

*STATLER*                                                                 *STUART        M.*

*Two*                                                                                    *Page*

By way of further background, I also served as **Vice President and Partner** with the international management consulting firm of A.T. Kearney [1986-89], heading up their risk management and product liability practice. I advised companies, and their law firms, how best to anticipate and avoid health, safety, and environmental risks, or to manage them so as to limit possible damage and costs. I also assisted land developers and property management firms to forge regulatory strategies for dealing with risk concerns on sites they planned to acquire, develop, or finance. In the consumer product area, I counseled firms as to their potential liability and how best to avert costly litigation, and provided litigation support, expert witness testimony, and assistance with regulatory concerns. Also worked with product manufacturers and distributors to develop practical measures to:

> Evaluate design, production, and sales efforts so as to promote higher standards of quality assurance.
> Promote market entry of new products by anticipating safety concerns.
> Implement risk management plans for firms facing significant liability exposure.
> Devise advertising, packaging, and warnings to reduce likelihood of legal claims & adverse judgments.
> Gauge the advisability of a recall or other corrective action, and formulate planning for crisis control.


## OTHER PROFESSIONAL EXPERIENCE


**NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS,** Executive Director    *[1995-2000]*
*(NACDL is the preeminent organization in America helping to ensure justice and due process for persons accused of crime or wrongdoing, to foster the integrity, independence, and expertise of the criminal defense profession, and to promote the proper and fair administration of criminal justice.)*

As chief executive officer, have guided all operations and strategic direction of this specialized bar association, comprised of 10,000 direct members and 80+ state and local affiliates with 28,000 additional criminal defense lawyers, public defenders, law professors, active-U.S. military defense counsel, & judges. Supervised staff of 20, budget of $3 million, and long-term investments. Implemented policies of governing Executive Committee and 45-member Board. Steered activities involving Congress, state legislative and regulatory bodies, law enforcement agencies and judicial conferences. Oversaw accredited seminars offering continuing legal education on criminal justice issues, advocacy trial skills and legal ethics. Published *The Champion*, NACDL's renowned monthly legal journal, and guided operation of its highly-acclaimed Internet website *(www.criminaljustice.org).* Supervised membership recruitment and retention efforts, creation of value-laden member benefits, and development of programs to serve members' practice needs. Helped direct indigent defense and *amicus curiae* efforts. Also, organized a new, non-profit arm, the Foundation for Criminal Justice.


**ASSOCIATION OF TRIAL LAWYERS OF AMERICA,**    Deputy Executive Director    *[1989-93]*

For this 60,000 member organization, managed all Association activities involving publications (*TRIAL* magazine, the *Law Reporter*, three specialty law reporters, and the *ATLA Advocate*); continuing legal education through the *National College of Advocacy*; member services, including *The Exchange* — a fully-computerized research network; *ATLA Press* — which published books, audio & video tapes, and *ATLASearch* — a research service; marketing (including copy design, convention exhibits, and list sales); and production. Supervised 100+ staff and budgeted activities of $10 million, emphasizing value-added quality member services and top-down commitment to excellence.

> Guided cultural shift within ATLA, and more positive public image, by highlighting concern of trial lawyers for securing safer products and for preserving fundamental human rights.


EXHIBIT
D
page 5 of 8

> Developed *ATLA Alert* program to inform regulatory agencies, the media, & the public about emerging hazards affecting consumer health and safety, or the environment.



Ramona Howard - Updated SMS.gov.doc SEC-DAS   Document 20-6   Filed 09/26/2006   Page 7 of 8   Page 4

*STUART M. STATLER*
*Page Three*

## U.S. SENATE PERMANENT SUBCOMMITTEE ON INVESTIGATIONS
*(Panel was the main investigating arm of the U.S. Senate, with personnel and budget greater than most full Committees. Inquiries focused on organized crime, racketeering, energy, health care and government contracting.)*

**Staff Director/Chief Counsel to the Minority**
**Counsel to U.S. Senator Charles Percy**

Counseled Senators and supervised staff of 25, directed investigations; prepared hearings; questioned witnesses; and briefed the press. Led major investigations into:

| | | |
|---|---|---|
| securities frauds | labor/management racketeering | pension fund abuses |
| energy oversight | high tech exports to Soviets | drug trafficking |
| Russian grain sales | abuses in pre-paid health plans | military club frauds |
| organized crime | auto theft "chop shops" | arson-for-profit |

Advised Senator Percy (R-IL) on legal and political matters, business/regulatory concerns, law enforcement and environmental issues. Heavily involved in Committee markups, Senate Floor debates, House-Senate Conferences.

## U.S. SENATE SUBCOMMITTEE ON EXECUTIVE REORGANIZATION

**Minority Chief Counsel**

Advised senators on subcommittee inquiries into food additives, auto safety, environmental and health issues. Promoted bipartisan consensus in: devising strategy for numerous reorganization plans of the President, including merger of the Peace Corps and Vista into ACTION; guiding landmark legislation through Committee approval and Senate passage to coordinate federal drug treatment and rehabilitation programs; and revamping legislation on representing consumer interests before federal agencies and courts.

## PRESIDENT'S ADVISORY COUNCIL ON EXECUTIVE ORGANIZATION
*(Blue-ribbon White House Council appointed by President Nixon to help reorganize the Executive branch. Prepared private memoranda for President on social programs, natural resources, trade, drug abuse, and regulation)*

**Senior Staff Associate**

Member of Task Force on Independent Regulatory Commissions which assessed deficiencies in such agencies as the ICC, CAB, FTC, SEC, and FCC. Principal Editor of the Council's final report, *"A New Regulatory Framework,"* which proposed restructured agencies, substituting single administrators for commissions and revamping their functions & appeals process.

## EDUCATION

J.D., honors, Harvard Law School, Cambridge, MA.
*John Woodruff Simpson Fellow*
B.A., Magna Cum Laude, Phi Beta Kappa, Amherst College, Amherst, MA.

Have been admitted to practice in New York, the District of Columbia, and Virginia, as well as before both the Federal District Court and the U.S. Court of Appeals for the District of Columbia; the Court of Customs and Patent Appeals; and the U.S. Supreme Court.



EXHIBIT
**D**
*page 7of8*

Ramona Howard - Updated SMS cv.doc SEC-DAS    Document 20-6    Filed 09/26/2006    Page 8 of 8    Page 5

*STUART M. STATLER*
*Page Four*

## PUBLICATIONS

*Partial listing includes:*

"Preventing 'Accidental' Injury:  Accountability for Safer Products by Anticipating Product Risks and User Behaviors,"
in *Handbook of Human Factors Litigation* (CRC Press, December 2004)

"Nobody Does It Better," *Association Management* (March 1987).

"A Safety Agenda for the States," *Newsletter* of the National Association of Attorneys General (July 1986).

"The Butt Stops Here," *TRIAL* (January 1985).

"Toys Can Be Dangerous," *San Diego Union* (December 1984).

"Thrills, Injuries and Death -- Federal Role in Amusement Ride Safety," *St. Louis Post-Dispatch* (August 1984); related article     syndicated nationally by *UPI* (June 1984).

"Reporting Guidelines Under Section 15, Consumer Product Safety Act," *Journal of Products Liability* (June 1984).

"Some Advice to Manufacturers:  Build a Better Microchip," *Sacramento Bee* (May 1984).

"After The Legislative Veto," *Wall Street Journal* (April 1984).

"Consumer Products' New Technology Tends To Let Chips Fall Where They May," *Houston Post* (April 1984).

"Doing a Slow Burn Over Cigarette-Fire Deaths," *Los Angeles Times* (December 1982) (syndicated nationally).

"Gagging the Product Whistle-Blowers," *Los Angeles Times* (April 1982) (syndicated nationally).

"How Not to Rein in the Regulators," *Washington Post* (January 1982).

"Regulatory Reform:  Structure of Regulatory Commissions," *Legal Times* (May 1981).

"One Regulator Can Do the Job Better," *Business Week* (May 1981).

"Let the Sunshine In?" *American Bar Association Journal* (May 1981).  Excerpt in "Too Much Sunshine in Government Can        Hurt," *Washington Post* (May 1981).

"The Case for Continuing Watch on Health-Endangering Products," *Seattle Times* (April 1981).

"Consumers, Please Squawk," *Parade* (nationally-syndicated Sunday supplement), (April 1980).

# # #



EXHIBIT
D
page 8 of 8