Donald C. Thomas, Esq.
Delaney Wiles, Inc.
1007 W. Third Avenue, Suite 400
Anchorage, AK  99501
phone: (907) 279-3581
fax:     (907) 277-1331
dct@delaneywiles.com

Jameson B. Carroll, Esq.
Michael Weiss, Esq.
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA  30309
phone: (404) 572-2804
fax:     (404) 572-5137
mweiss@kslaw.com
jcarroll@kslaw.com

Attorneys for Defendant
Window Covering Manufacturers Association

IN THE UNITED STATES COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| VALERIE ROUNTREE, individually and as Personal Representative of THE ESTATE OF APRIL LYNNE COX; et al. | ) ) ) | Case No. A04-0112 CV (JWS) |
| Plaintiffs, | ) ) ) | WINDOW COVERING MANUFACTURERS |
| vs. | ) ) ) | ASSOCIATION'S BRIEF IN SUPPORT |
| WINDOW COVERING MANUFACTURERS ASSOCIATION, et al., | ) ) ) | OF ITS MOTION FOR SUMMARY JUDGMENT |
| Defendants. | ) ) ) | |

Window Covering Manufacturers Association ("WCMA"), named as a defendant in

the above-styled action, files this Brief in Support of its Motion for Summary Judgment,

respectfully showing the Court as follows:

**I.**

**<u>INTRODUCTION</u>**

At the outset of this case, this Court considered the question of whether Plaintiffs could state a claim against WCMA, a nonprofit trade association that did not make, distribute, sell, inspect, certify, or otherwise control the window blinds that caused their injuries. At that initial juncture, with only a *prima facie* showing required, this Court found Plaintiffs had sufficiently stated such a claim. But the Court noted that the Plaintiffs would face a much higher burden when it must prove that WCMA had assumed the manufacturer's duty as a matter of law.

Today, after two years of discovery, the Plaintiffs are even further away from meeting their burden then they were at the pleadings stage. They have presented no evidence that WCMA's sponsorship of a safety standard for the pull cords of window blinds increased the risk of strangulation, or that WCMA exercised any control over the manufacture or sale of the blinds. They have produced no evidence that WCMA undertook to ensure the safety of all window coverings. Indeed, because Plaintiffs now have *no* evidence as to who manufactured the blinds, they can *never* offer evidence that the manufacturer relied on WCMA in any fashion or that WCMA usurped its duty.

Plaintiffs cannot meet this burden for at least seven reasons:

1.    There is no evidence the WCMA safety standard increased the risk of harm to Plaintiffs.

2.    It is undisputed that WCMA never inspected, certified, or otherwise exercised any influence or control over the manufacture of the window blinds.

3.    There is no evidence the unknown manufacturer relied on WCMA.

4.    It is undisputed that the Plaintiffs never relied on WCMA.

5.    It is undisputed that WCMA never undertook to address the hazard at issue in this case.

6.    There is no evidence the manufacturer ever delegated any duty to WCMA.

7.    The standards for imposing a common law duty on WCMA are not met.

In this case, Plaintiffs' experts spend pages and pages of their disclosures and hours of deposition testimony criticizing WCMA for falling short of what they believe a trade association should do.  But their beliefs do not matter.  Alaska law sets forth specific factors for Good Samaritan liability, one of which *must* be proven for a duty to attach: the defendants' actions must either *increase* the risk, *supplant* another party's duty, or be relied upon by the Plaintiff or another party.  And even if one of those criteria are met, the law is clear that a defendant is not liable for all of its purported failings – it is liable only for failing to do what it undertook to do.   A defendant who undertakes to repair one machine is not liable when a different machine causes an injury, and a defendant who undertakes to inspect a building for fire hazards is not liable when the plumbing bursts.

There is no evidence – absolutely none – to prove that WCMA intended to address anything beyond the hazards of pull cord strangulation in the safety standard at issue.  There is no evidence – absolutely none – to prove that the manufacturer relied on WCMA to ensure the safety of its products.  There is no evidence – absolutely none – to prove that Plaintiffs relied on WCMA at all, or that Plaintiffs were at any greater risk because of WCMA's actions.  And even if the Court applies common law factors rather than the § 324A elements, those factors too support a finding of no liability on the part of WCMA.

In short, there is no evidence to support a finding that WCMA owed a duty to Plaintiffs in this case.  There simply is no question of fact for a jury to decide.  As a matter

of law, WCMA cannot be liable for something it did not undertake to do.  It is entitled to summary judgment.

## II.
## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    April Lynne Cox strangled on the inner cord of a window blind on May 27, 2002.  She was in her crib at the time.  (Exhibit A - Compl. at ¶ 3.)

2.    The blinds were purchased by April Cox's grandparents, Paul and Ilene Rountree.  Neither Mr. or Mrs. Rountree can recall when or where the blinds were purchased.  None of the Plaintiffs were present at the time they were purchased or installed.  (Exhibit: B - C. Cox Dep. at 115; Exhibit C - I. Rountree Dep. at 7-8; Exhibit D - P. Rountree Dep. at 7.)

3.    Paul Rountree installed the blinds.  He remembers nothing about the packaging of the blinds, if any.  He also does not recall any warnings, labels, instructions, or anything else accompanying the blinds at the time. (Exhibit D - P. Rountree Dep. at 10-11.)

4.    Plaintiffs have no information about any warnings, labels, instructions, or anything else accompanying the blinds at the time.  (Exhibit D - P. Rountree Dep. at 10-11.)  Exhibit E - Response to WCMA's First Request for Admission No. 4; Exhibit F - V. Cox Dep. at 43-44.)

5.    When they were examined after the incident, the blinds had a label on the bottom rail that reads: "Young children can become entangled and strangle

in cord or bead loops.  Use safety devices to reduce access or eliminate

loops." (Exhibit: E – Resp. to WCMA's First Request for Admission No. 3.)

6.    There is no evidence of the identity of the manufacturer of the window

blinds, and no evidence of where the blinds were purchased.  (*See* Order

Dismissing Ching Feng Blinds Industry Co., Ltd., July 27, 2007; Order

7.    WCMA is a nonprofit corporation, incorporated in the state of New Jersey.

Prior to 1985, WCMA was known as the American Window Covering

Manufacturers Association ("AWCMA").  (Exhibit G - Rush Dep. at 14.)

8.    WCMA is an organization of North American window covering

manufacturers.  Membership is not open to entities that do not manufacture

window blinds, nor is it open to manufacturers based outside the United

States or Canada.  (Exhibit G - Rush Dep. at 14.)

9.    There are no documents reflecting or relating to any contact between the

United States Consumer Products Safety Commission ("CPSC") and

WCMA until 1985.  (Exhibit H - Statler Dep. at 64.)

10.    As part of a corrective action plan explicitly approved in 1994 by CPSC,

WCMA agreed to sponsor a voluntary product safety standard ("the 1996

standard") to address the strangulation hazard associated with the pull cords

of window blinds.  (Exhibit G - Rush Dep. at 70; 214.)

11.    The technical committee formed to create the 1996 standard consisted of

representatives from various window blind manufacturers as well as CPSC

staff members.  (Exhibit I - WCMA's Response to Plaintiffs' Interrogatory No. 7; Exhibit H - Statler Dep. at 183.)

12. The objective of the 1996 standard reads as follows:

> The objective of this Standard is to provide requirements for covered products in 1.3 that reduce the possibility of injury, including strangulation, to young children from the bead chain, cord, or any type of flexible loop device used to operate the product.

(Exhibit J - Jacobson Dep. at 77; Exhibit H - Statler Dep. at 221.)

13. The 1996 standard adequately addresses the risk of strangulation on pull cords.  (Exhibit H - Statler Dep. at 231; Exhibit J - Jacobson Dep. at 59-60.)

14. Compliance with the 1996 standard is voluntary.  (Exhibit K - ANSI/WCMA 100.1-1996 standard; Exhibit H - Statler Dep. at 53.)

15. WCMA does not inspect any manufacturers to determine if they are complying with any safety standard, nor does it inspect any products. (Exhibit H - Statler Dep. at 249.)

16. WCMA also does not certify compliance with any safety standard, nor does it in any way enforce any safety standard.  (Exhibit H - Statler Dep. at 249-50.)

## III.
## STANDARD OF REVIEW

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate when

it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Because the plaintiffs bear the burden of proof at trial, WCMA can meet this summary judgment standard by pointing to the absence of evidence sufficient to prove required elements of the plaintiffs' case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Alaska law is clear that the nature and extent of a duty "is a question of law which can be decided at the summary judgment stage." *Smith v. State of Alaska*, 921 P.2d 632, 634 (Alaska 1996) (quoting *Mulvilhill v. Union Oil Co.*, 859 P.2d 1310, 1313 n.4 (Alaska 1985)). It is only when there is conflicting evidence about the scope of the undertaking that there is a question of fact that must go to a jury. *Id.* (citing *Estate of Breitenfeld v. Air-Tek, Inc.*, 755 P.2d 1099, 1102 (Alaska 1988)). While all reasonable inferences are drawn in favor of the plaintiff, it is the plaintiff's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

## IV.
## ARGUMENT AND CITATION OF AUTHORITY

With discovery closed and all the evidence before the Court, it is clear that there is no evidence that supports the notion that WCMA assumed such a duty. First, Plaintiffs can produce no evidence to support the imposition of liability under Restatement (Second) of Torts § 324A. Second, Plaintiffs can produce no evidence that WCMA undertook to address the hazard of inner cord strangulation. Third, as demonstrated by cases throughout the country, public policy does not support holding trade associations liable based on the safety standards they sponsor.

A.    **PLAINTIFFS CAN PRODUCE NO EVIDENCE TO MEET THEIR BURDEN OF PROOF ON ANY ELEMENT OF RESTATEMENT (SECOND) OF TORTS § 324A.**

It is undisputed that WCMA did not manufacture, import, distribute, or sell the window blinds at issue in this case.  Thus, any duty WCMA may have as to Plaintiffs must by definition be of its own voluntary undertaking.  Plaintiffs contend that WCMA's liability hinges on § 324A, which states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a)  his failure to exercise reasonable care increases the risk of harm, or
>
> (b)  he had undertaken to perform a duty owed by the other to the third person, or
>
> (c)  the harm is suffered because of reliance of the other or the third person upon the undertaking.

Section 324A provides three separate avenues by which a party who voluntarily acts on behalf of another can be held liable for harm to a third party – increased risk, assumption of a preexisting duty, or reliance.  *Figueroa v. Evangelical Covenant Church*, 879 F.2d 1427, 1434 (7th Cir. 1989).[1]  Courts around the nation make it clear that § 324A requires much more than evidence that a defendant undertook to perform a duty of another.  For liability to attach, the defendant's actions in undertaking another's duty must have somehow *increased* the risk to the plaintiff relative to the risk that would have existed if the defendant had done nothing, either by escalating the danger or by encouraging others to

---

[1] While Alaska courts have discussed § 324A, there are so few cases that the contours of the duty are not clearly defined.  Courts in other jurisdictions, however, have considered the issues in this case, and their reasoning may be instructive.

relax their guard in reliance of the defendant's undertaking.  *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 432 (3d Cir. 1991).  "The defendant's negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun the performance."  *Id.*

At the outset of this case, Plaintiffs stated that WCMA could be liable under subpart (a) or (b), "and arguably" (c).  (Plfs' Brf. Regarding Cause of Action Against WCMA, Docket 28, at 6.)  Despite those initial allegations, however, more than three years of discovery have failed to provide evidence to support liability under any subpart.  First, there is no evidence that WCMA's sponsorship of a safety standard "increases the risk of harm."  Second, because the undisputed evidence shows that WCMA had no ability to inspect the window blinds or control the manufacturer, it could not and did not supplant the manufacturer's obligation to sell a safe product.  Third, because Plaintiffs can produce no evidence of what company manufactured the blinds, there can be no evidence that the manufacturer relied on WCMA to address safety issues.

**1.     There is no evidence that the WCMA safety
        standard increased the risk of harm to Plaintiffs.**

The safety standard at issue, ANSI/WCMA 100.1 (1996), specifically addresses the hazard of strangulation in the pull cords of window blinds. (Exhibit K - ANSI/WCMA A100.1-1996, at 4, 6-8.)  As Plaintiffs' own experts concede, strangulation on pull cords was far and away the predominant cause of injury from window blinds.  (Exhibit H - Statler Dep. at 97-98 ("by far the bulk of the incidents had to do with the pull cord"); Exhibit J - Jacobson Dep. at 60.)  The standard addresses that hazard properly.  (Exhibit H - Statler

Dep. at 231 ("It's adequate in terms of pull cords."); Exhibit J - Jacobson Dep. at 59-60 ("It would appear to be effective."))

The best that Plaintiffs can say about any purported failings of the 1996 standard is that it did not address inner cords.[2]  But the failure to warn about a hazard does not *increase* the risk of that hazard.  *Meyers v. Donnatacci*, 531 A.2d 398, 406 (N.J. Super. L. 1987) (at most, the lack of warning allowed the continuation of an existing risk – one that existed independently of any action or inaction by trade association).  Nor can Plaintiffs argue that the safety standard increased the risk of inner cord strangulation by lulling Plaintiffs into a false sense of security:  Plaintiffs testified that they never saw the warnings on the blinds they allege was inadequate, or otherwise knew anything about the safety standard or knew anything else about WCMA or the safety standard.  (Exhibit F - Dep. of V. Cox at 43-44, 113; Exhibit B - Dep. of C. Cox at 114.)  Thus, any belief that there were no hazards associated with the blinds could not be based on any action by WCMA.

Regardless, this is a paradoxical argument:  It implies that *any* safety feature on a product makes that product more dangerous instead of safer.  By this logic, an auto manufacturer would automatically be liable for any injury arising from a car crash simply because it installed seat belts.  A safety standard – even one that does not address every possible hazard – in fact reduces the danger to the public; as Dr. Jacobson agreed, it is "better than not having a standard."  (Exhibit J - Jacobson Dep. at 75.)

---

[2]     That position, however, is disputed.  (*See* ANSI/WCMA A100.1-1996, Exhibit K - at 6.)

**2.     WCMA did not – and could not – assume the**
**<u>inherent duties of the manufacturer of the blinds.</u>**

The undisputed evidence in this case demonstrates that WCMA did not and could

not supplant the duties of the blinds manufacturer to make and sell a safe product, for two

reasons:  First, WCMA had no ability to control, let alone inspect, the manufacture of the

blinds at issue.  Second, there is no evidence – and with the identity of the manufacturer

unknown, there can be no evidence – that the manufacturer delegated its obligations to

WCMA.

**a.     No Alaska court has ever applied § 324A to a**
**defendant lacking control over the person or**
**object responsible for the injury.**

Absent an express statement that it is doing so, a defendant cannot assume the duty

of another unless it has some ability to perform that duty.  Accordingly, in the handful of

times Alaska courts have relied on § 324A, they have assigned liability *only* where the

defendant had some level of control over the instrumentality of injury or the entity that

itself controlled that instrumentality.  *See Smith v. State*, 921 P.2d 632, 635 (Alaska 1996)

(state had begun work on town's water system when plaintiff died of fluoride poisoning);

*Mulvihill v. Union Oil Co.*, 859 P.2d 1310 (Alaska 1993) (couple drove intoxicated person

home); *Saddler v. Alaska Marine Lines*, 856 P.2d 784 (Alaska 1993) (carrier placed wrong

product in tank).  At the very least, Alaska courts have required that for liability to attach

under § 324A, the defendant must have had the *ability* to control the behavior of the one

who more directly caused the injury.  *See Van Biene v. Era Helicopters*, 779 P.2d 315, 321-

22 (Alaska 1989) (insurer could be liable if evidence showed it inspected and approved

conditions); *Kotzebue v. McLean*, 702 P.2d 1309 (Alaska 1985) (police, with power of

arrest, failed to respond to threatening phone call); *LaMoureaux v. Totem Ocean Trailer*

*Express, Inc.*, 651 P.2d 839, 840-41 (union that dispatched drivers could be liable for failing to check whether those drivers were properly licensed).

Here, there is no question that WCMA did not exercise any authority over the manufacturer of the blinds at issue – a point conceded by Plaintiffs' experts.[3] (Exhibit H - Statler Dep. at 249-50; Exhibit J - Jacobson Dep. at 65, 76.) Unlike the insurer in *Van Biene*, it is undisputed that WCMA had no ability to inspect the blinds or otherwise certify the manufacturers' compliance with the voluntary safety standard. (Exhibit H - Statler Dep. at 249.) And unlike the police officer in *Kotzebue*, WCMA had no authority to enforce compliance with any safety guidelines.[4] (Exhibit H - Statler Dep. at 250 ("if [WCMA] did, they would be in violation of the law").) There is no evidence that the voluntary safety standard sponsored by WCMA was anything more than that: a voluntary standard, to be followed – or exceeded – at the manufacturer's discretion.

While no Alaska court has addressed the application of § 324A to trade associations who sponsor or develop safety standards, courts around the country have – and nearly all have held that these associations cannot be liable for injuries caused by products manufactured or sold by those in their industry represented by the trade association. *See*, *e.g.*, *N.N.V. v. American Association of Blood Banks*, 75 Cal. Rptr. 1358, 1392 (Cal. App. 4th 1999) (specifically considering § 324A). In reaching these decisions, courts have

---

[3]    Nor could WCMA act independently of the manufacturer – it could not, for example, physically place a new warning label on the blinds, or sneak into the factory and alter the blinds themselves.

[4]    As discussed *infra*, whether WCMA should have undertaken to inspect or enforce its safety standards (even though, by definition, voluntary standards are capable of being "enforced") is irrelevant. The boundaries of whatever duty has attached to WCMA in this case is limited to the scope of its undertaking. If WCMA never undertook to guarantee that window blinds conformed to its standard, it cannot be liable for failing to do so.

"focused on the amount, if any, of control a trade association wields over the behavior of its members."[5] *Commerce and Industry Insurance Co. v. Grinnell Corp.*, No. 97-803 C/W 97-775 Section "R"(2), 1999 U.S. Dist. LEXIS 11269 (E.D. La. July 14, 1999). When a trade association does not undertake to inspect or certify the products or services offered by its members, or lacks the authority to enforce compliance with its recommendations, it does not specifically undertake a duty to consumers. *See Bailey v. Edward Hines Lumber Co.*, 719 N.E.2d 178 (Ill. App. 1st 1999) (trade association not liable because recommendations not mandatory); *Meyers v. Donnatacci*, 531 A.2d 398 (N.J. Super. L. 1987) (pool industry group did not undertake duty to consumers because, *inter alia*, it could not enforce compliance); *Howard v. Poseidon Pools, Inc.*, 506 N.Y.S.2d 523 (N.Y. Sup. 1986) (trade association not liable absent showing of control over manufacturer). Likewise in this case, because WCMA did not and could not exert any control over the manufacturer of the blinds at issue, it could not have assumed the manufacturers duty to ensure the blinds are free of unreasonable hazards.

> **b.    There is no evidence the manufacturer delegated its duty to WCMA.**

Moreover, there is no evidence to support an inference that WCMA undertook to supplant the manufacturer's inherent duty. There can be no liability under § 324A(b) when the defendant undertook to *supplement* an entity's existing duty, only when it undertook to *supplant* that duty. *Blessing v. U.S.*, 447 F. Supp. 1160, 1194 (E.D. Pa. 1978). "Where the actor's undertaking only parallels the activities required by a duty of another without being an undertaking in substitution for it, § 324A(b) does not apply." *Id.* at 1195. In *Blessing*,

---

[5]    As explained *infra*, because there is no evidence as to the identity of the manufacturer, there is no evidence that the manufacturer is or ever was a member of WCMA.

the court decided not to impose liability under §324A(b) against a government agency that conducted safety inspections at a business because there was no evidence that the business had delegated its duty to inspect to the agency.  *Id.* at 1194-95.

Here, there likewise can be no such evidence.  Because it is unknown who manufactured the blinds, there can be no evidence that the manufacturer delegated its obligations to WCMA.  There can be no evidence that WCMA's actions were undertaken on behalf of, and in lieu of, the manufacturer's own safety efforts.  *See id.* at 1194.  Even if one could assume that a WCMA member delegated this duty to the organization, here there is no evidence the manufacturer was a member.  And even Plaintiffs' experts both agree that WCMA did not assume the manufacturer's duty in this case.  (Exhibit H -Statler Dep. at 216, Exhibit J - Jacobson Dep. at 65.)

### 3.    There is no evidence of reliance on WCMA by either the manufacturer or Plaintiffs.

There is no evidence in the record that the manufacturer of the blinds at issue relied on WCMA.  The reason is clear:  There is no evidence as to who that manufacturer is.  Plaintiffs will never be able to make that showing.

Reliance by the mysterious manufacturer cannot be inferred – and certainly not under the facts of this case.  There is more than sufficient evidence that the blinds in fact did *not* comply with the applicable safety standard.  First, there is no evidence that the blinds ever included the mandatory hang tag warning.  (Exhibit K - ANSI/WCMA A100.1-1996, at 7; Exhibit H - Statler Dep. at 187.)  In fact, Paul Rountree testified that he installed the blinds and did not see the hang tag.  (Exhibit D - P. Rountree Dep. at 11; *see also* Exhibit H - Statler Dep. at 187.)  Second, to comply with the safety standard, the blinds

must include a permanent label identifying the U.S. manufacturer, importer, distributor, or seller (Exhibit K - ANSI/WCMA A100.1-1996, at 8); it has been well-documented in this case that the blinds did not contain this identifying information. Third, while the substance of the warning is the same as that in the standard, there are technical differences between the warning label specified in the safety standard and the label on the blinds, including the presence of Spanish and French translations. Finally, with no evidence that the manufacturer was a WCMA member, one cannot even assume that as a member, the manufacturer conformed its products to the organization's guidelines. (*See generally* Exhibit J - Jacobson Dep. at 55, 57.)

There also is no evidence of reliance by Plaintiffs. As stated above, there is no evidence they ever heard of WCMA, saw the warnings on the blinds, or were aware of the existence of a safety standard. Thus, there can be no suggestion that they relied on WCMA for their safety.

## C.    THERE IS NO EVIDENCE TO SUGGEST THAT WCMA UNDERTOOK TO ENSURE THE SAFETY OF ALL WINDOW COVERING PRODUCTS.

Of course, it is axiomatic that the scope of one's duty is limited by the scope of its undertaking. If there is no undertaking – or if the undertaking is not sufficient in scope – there can be no duty. "An actor's specific undertaking of the services allegedly performed without reasonable care is a threshold requirement to section 324A liability. The scope of this undertaking defines and limits an actor's duty under section 324A." *In re TMJ Products Liability Litig.*, 113 F.3d 1484, 1493 (8th Cir. 1997) (affirming summary judgment on plaintiff's claim under § 324A).

A Good Samaritan who performs CPR on the victim of a car accident may undertake a duty to perform that CPR with care, but he does not assume the duty to drive the victim safely to the hospital, or to ensure that he is properly cared for when he gets there.  Likewise, the fact that an entity performs services necessary for the protection of a third party does not guarantee to protect that third party from all dangers, even if those dangers may be related to the undertaking.  *Id.* (company's testing of component in defendant manufacturer's products not sufficient to create a duty to ensure safety of those products); *see also Evans v. Liberty Mutual Ins. Co.*, 398 F.2d 665, 666-67 (3d Cir. 1968) (insurer who made safety inspections at plant – but did not inspect cutting machine that caused injury – was not liable because there was no evidence it undertook to inspect entire plant): *R.E. v. State of Alaska*, 878 P.2d 1341, 1347 (1994) (defendant's "duty is not, as [plaintiff] assumes, to prevent harm: it is only to take reasonable steps to prevent harm").

 **1.** **The scope of WCMA's undertaking is clearly<br>expressed in the text of the safety standard itself.**

 Here, there is no dispute of the scope of WCMA's undertaking.  It is spelled out clearly in the text of the safety standard that forms the basis of Plaintiffs' attempts to hold WCMA liable in this incident.  In the standard, the stated objective is:

> The objective of this Standard is to provide requirements for covered products in 1.3 that *reduce the possibility of injury*, including strangulation, to young children from the bead chain, cord, or any type of flexible loop device used to operate the product.

(Exhibit K - at 5 (emphasis added); *see also* Exhibit J - Jacobson Dep. at 78; Exhibit H - Statler Dep. at 221.)

 There is no document, no statement from WCMA, that suggests an undertaking of any broader duty.  *See In re TMJ*, 113 F.3d at 1495 (finding defendant's actions

"insufficient to establish an undertaking of such breadth and magnitude to create a duty on the part [of defendant] to ensure the safety of all of [manufacturer's] products"). At no time did WCMA – or anyone – state that in developing the safety standard, WCMA undertook to eliminate the risk of window blind strangulations, or to somehow ensure the safety of all window blind products. (*See* Exhibit J -Jacobson Dep. at 62-63 (a safety standard is not inadequate because it does not address every hazard).) It never undertook to assume the role of any manufacturer in designing window blinds. Instead, it sought to help reduce the danger by encouraging manufacturers to eliminate the loop at the pull cord – the most frequent cause of strangulation deaths. (Exhibit J - Jacobson Dep. at 60.)

**2.    There is no evidence WCMA undertook to
    <u>address the specific risk at issue in this case.</u>**

Nor is there evidence WCMA undertook to address specifically the hazard at issue in this case. Prior to the enactment of the 1996 standard, there is no document generated by WCMA that references inner cord strangulation. Plaintiffs' own experts testified that the standard addressed only pull cord strangulation. (Exhibit G - Rush Dep. at 70, 214; Exhibit J - Jacobson Dep. at 57-61.) There is no evidence WCMA undertook to address inner cord hazards at all. *See Blessing v. U.S.*, 447 F. Supp. 1160, 1188 (E.D. Pa. 1978) (plaintiff can recover under § 324A only if defendant undertook either to inspect the instrumentality of injury itself or the entire facility that includes the instrumentality).

The only "evidence" Plaintiffs can offer to counter these undisputed facts is the opinion of its experts. But expert opinions that lack reasonable bases in the evidence are

inadmissible.[6] *U.S. v. Various Slot Machines on Guam,* 658 F.2d 697, 700 (9th Cir. 1981). So, too, are legal conclusions offered by experts. *See Aguilar v. Int'l Longshoremen's Union,* 966 F.2d 443, 447 (9th Cir. 1992) (holding that questions of reasonableness and foreseeability were questions of law, and therefore inappropriate subjects for expert testimony).

Indeed, Plaintiffs' liability experts have a view of WCMA's duty that not only has no grounding in the law, but also lacks any basis in common sense. Jon Jacobson, an engineer, testified that every trade association is responsible for ensuring the safety of all products manufactured by those in its industry – a premise that is wholly unsupported in the law.[7] (Exhibit J - Jacobson Dep. at 32 ("to not do so would be negligent").) Former CPSC commissioner Stuart Statler originally contended that WCMA had taken on the duties of all blinds manufacturers concerning every facet of window covering safety. (Exhibit L - Statler Rep. at 17.) He eventually conceded in his deposition, however, that WCMA's duty is limited to its sponsorship of the safety standard. (Exhibit H - Statler Dep. at 208-213.)

On that point, at least, Mr. Statler is correct. Plaintiffs' experts may have their own ideas about what obligations, moral or otherwise, a trade association may have regarding the safety of the products in its industry. But the law is much more precise. Under § 324A, a party who otherwise would have no duty to the plaintiff can have some only through a

---

[6] For this reason and others, WCMA has sought to limit or exclude the testimony of two of Plaintiffs' experts pursuant to Fed. R. Evid. 702 in motions in limine filed contemporaneously herewith.

[7] Interestingly, although Dr. Jacobson testified that he believes a trade association is responsible for its members' products, he testified that *his* organization – the American Society of Mechanical Engineers – is not responsible for unsafe products designed by its member engineers. (Exhibit J - Jacobson Dep. at 35, 39-40.)

voluntary undertaking – if it agrees to act, it must act properly. "The foundational requirement of the good Samaritan rule is that in order for liability to be imposed upon the actor, he must specifically have undertaken to perform the task that he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative legal duty to perform that undertaking carefully." *Blessing v. U.S.*, 447 F. Supp. at 1188-89 (citing § 324A).

## D.    EVEN UNDER A COMMON-LAW THEORY OF LIABILITY, POLICY FACTORS DO NOT FAVOR IMPOSING A DUTY ON WCMA.

In their briefing at the outset of this case, Plaintiffs suggested that the application of the state's common law would impose a duty on trade associations such as WCMA. (Plfs' Brf. Regarding Cause of Action Against WCMA, Docket 28, at 6.) (The Court did not reach this question in its Order on WCMA's motion.) When determining whether a defendant owes a duty to a plaintiff, Alaska courts consider the following factors: (1) the foreseeability of the harm; (2) the certainty that the plaintiff suffered an injury; (3) the closeness of the connection between the defendant's conduct and the injury; (4) the moral blame attached to the conduct; (5) the policy of preventing future harm; (6) the burden on the defendant and the consequences to the community of imposing a duty; and (7) the cost, availability and prevalence of insurance for the risk involved. *D.S.W. v. Fairbanks North Star Borough School Dist.*, 628 P.2d 554, 555 (Alaska 1981). Whether a duty arises out of these factors is a question of law. *Mestar v. Heckman*, 964 P.2d 445, 448 (Alaska 1998).

These so-called "*D.S.W.* factors" counsel against imposing a duty on WCMA based on the evidence in this case. In fact, a California appeals court applying the exact same duty factors adopted by the Alaska Supreme Court failed to extend liability to a trade association with much greater control over its members than WCMA has, and in a case in

which the manufacturer was a member of the association. *N.N.V.*, 75 Cal. Rptr. at 1392.

The first element, foreseeability, requires not just that *some* injury was foreseeable; it was that the specific injury itself was foreseeable, and thus possibly could be prevented. *Kotzebue,* 702 P.2d at 1314. In *Kotzebue*, in which a man was stabbed after a police officer ignored a telephone call threatening a murder, the Alaska Supreme Court determined that the injury was foreseeable not just because the officer received the call, but because the officer knew the identity and location of the caller and thus could have prevented the crime. *Id.* It is always foreseeable that someone could be murdered somewhere; what mattered under this duty analysis is whether the police could have acted to prevent it. As discussed more fully *supra*, WCMA did not have the ability to prevent this incident, because it exerted no control over the manufacture or sale of the blinds. Regardless, foreseeability alone does not end the analysis. *State Dep't of Health and Social Svc's v. Sandsness*, 72 P.3d 299, 306-07 (Alaska 2003) (listing cases in which court declined to impose duty despite presence of foreseeability).

The majority of the remaining factors weigh in favor of finding no duty on the part of a trade association like WCMA. While it is doubtless the Plaintiffs suffered harm, for the reasons described above there is no clear connection between WCMA's conduct and that harm. *See*, *e.g.*, *id.* (finding connection between conduct and harm "attenuated" when defendant lacked control over circumstances). There is no moral blame on WCMA here: It is undisputed that WCMA undertook an effort to reduce the incidence of window blind strangulation by developing safety standards when it had no obligation to do so. Similarly, the imposition of liability against trade associations who attempt to encourage safer products within their industry likely would not prevent future harm, and indeed is likely to

make consumer products less safe. *See*, *e.g.*, *Bailey*, 719 N.E.2d at 183; *N.N.V*, 75 Cal. Rptr. at 1386-87. The threat of liability could have a chilling effect on trade associations, which provide a valuable service by promoting standardization and safety in areas the government does not regulate – certainly a negative consequence for the community. *See*, *e.g.*, *Meyers*, 531 A.2d at 404 (describing societal benefits of trade associations). As for the final factor, there is nothing in the record to indicate whether a trade association can purchase liability insurance for its standards-development activities; in any case, requiring such insurance would create a financial burden for small nonprofit corporations such as WCMA.

## IV.

## <u>CONCLUSION</u>

WCMA is entitled to summary judgment because the facts, even when viewed in the light most favorable to Plaintiffs, cannot support a finding of liability against WCMA as a matter of law. Accordingly, WCMA respectfully requests this Court grant it summary judgment on all claims against it.

Respectfully submitted, this 3d day of March, 2008.

DELANEY WILES, INC.

Attorneys for Defendant Window
Covering Manufacturers Association

_s/ Donald C. Thomas_____
Donald C. Thomas
Delaney Wiles, Inc.
1007 W. Third Avenue, Suite 400
Anchorage, Alaska 99501
phone: (907) 279-3581
fax:     (907) 277-1331
dct@delaneywiles.com

Jameson B. Carroll
Michael Weiss
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA  30309
phone: (404) 572-2804
fax:     (404) 572-5143
jcarroll@kslaw.com
mweiss@kslaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on 3 March 2008, I caused to be electronically served a copy of the

foregoing **WINDOW COVERING MANUFACTURING ASSOCIATION'S BRIEF IN**

**SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** upon:

>  Charles W. Ray, Jr.
>  Law Offices of Charles W. Ray, Jr., P.C.
>  205 E. Dimond Blvd., No. 531
>  Anchorage, AK  99515
>
>  Don C. Bauermeister
>  Burke & Bauermeister, P.L.L.C.
>  921 West 6th Avenue, Ste. 200
>  Anchorage, Alaska 99501

This 3d day of March, 2008.

>  _s/ Donald C. Thomas_____
>  Donald C. Thomas