Charles W. Ray, Jr.
CHARLES W. RAY, JR.
205 E. Dimond Blvd., #531
Anchorage, AK 99515
(907) 274-4839

Co-Counsel for Plaintiffs

IN THE UNITED STATES COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| VALERIE ROUNTREE, individually and as Personal Representative of THE ESTATE OF APRIL LYNNE COX, et al., | ) ) ) | Case No. 3:04-cv-00112-JWS |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHING FENG BLINDS INDUSTRY CO., LTD., et al., | ) ) | PLAINTIFFS' OPPOSITION TO WINDOW COVERING |
| | ) | MANUFACTURERS |
| Defendants. | ) | ASSOCIATION'S MOTION |
| _____ | ) | FOR SUMMARY JUDGMENT |

INTRODUCTION

Window Covering Manufacturers Association (WCMA) has moved for summary judgment (again) as to all claims against it. Yogi Berra would say, "This feels like *dejá vu* all over again."

WCMA developed and promulgated a national standard governing the design of window coverings. Its standard applied to the basic design characteristics of the vinyl horizontal blinds in which April Cox died, and also governed the content and placement of

Opposition to WCMA Motion for Summary Judgment
Rountree v. Ching Feng, et al    A04-0112 CV (JWS)
Page 1 of 11                    Rountree 311.1 Oppos WCMA MtnSJ

warning labels and tags on those blinds.  Since WCMA concedes that a particular window

blind could not be sold into the United States market absent compliance with its standard,

it is apparent that WCMA's motion must fail.  The standard did not address the precise

defect that led to April's death, even though it is clear WCMA knew or should have known

of the defect and the "next generation" standard specifically addressed the defect.

FACTS

In its memorandum, Dkt. No. 158 (hereafter WCMA Memo.), WCMA sets out

"undisputed material facts."  *See* Id. at 4 - 6.  The ostensible facts are not all correct and not

all are undisputed.  For example, although there is scant information regarding the condition

of the blinds at the time of installation, Peter Rush, at pertinent times WCMA's executive

director and president, and the individual proffered as its 30(b)(6) deponent, testified that

products for sale in the United States are required to comply with the voluntary standard

developed and promulgated by WCMA.  Peter Rush depo. at 66-67, 254-55, and 258-59[1];

*see* Plaintiffs' Response to Motion for Reconsideration of 28 February 2005.  Of course, the

language of the 1996 standard as well as its 2002 successor speak in mandatory terms with

respect to compliance  with the standards.  Hence, WCMA's paragraph 4 of its memo at 4

is incorrect, perhaps most especially because the blinds at issue carried the permanent

"WCMA" warning label affixed to the underside of the bottom rail – a most obscure

---

[1]

Relevant portions of Mr. Rush's deposition are attached to Plaintiffs' Opposition to WCMA's Motion for
Summary Judgment at Dkt. No. 104, Exhibit 3; counsel will not further clutter the Court's files.

Opposition to WCMA Motion for Summary Judgment
Rountree v. Ching Feng, et al     A04-0112 CV (JWS)
Page 2 of 11                       Rountree 311.1 Oppos WCMA MtnSJ

location. WCMA also conceded in responding to a request for admission that the referenced sticker derives from and is in accordance with the 1996 standard.

The extent of involvement by the Consumer Product Safety Commission (CPSC) in the WCMA's development and promulgation of the 1996 also is questionable. For example, minutes of WCMA's technical committee do always reflect attendance or involvement by CPSC personnel. Exhibits 1, 2 and 3 (sampling of WCMA technical committee minutes). Moreover, it is clear in WCMA's own materials that the CPSC played little or no role in the standards process. Setting a standard was key to WCMA's ultimate goal of avoiding the dreaded prospect of the federal government interceding to regulate window blind safety. *See* WCMA's Memo, Exhibit L, especially at pp. 16 - 19.

_____WCMA's recitation of undisputed facts also characterizes them as "material." Why it is material whether or not the CPSC and WCMA had contact before 1985 is not explained. Moreover, given that all window coverings sold in the United States that fell within the description set out in the standards were required to comply with the standard, the membership of WCMA is not material to the Court's inquiry.

It is agreed and undisputed that WCMA adopted, and promulgated and published an American National Standard for safety of corded window covering products. WCMA Memo, Exhibit K. That document begins:

> 1.1 The members of the Window Covering Manufacturers Association, Inc. (WCMA), recognizing that unfortunate accidents, including strangulation, have occurred among young children using certain products having flexible loops made or imported by members of the industry, have prepared this Standard in cooperation with the U.S. Consumer Product Safety Commission (CPSC).

Opposition to WCMA Motion for Summary Judgment
Rountree v. Ching Feng, et al    A04-0112 CV (JWS)
Page 3 of 11                      Rountree 311.1 Oppos WCMA MtnSJ

. . ..

1.2 This Standard applies to all interior drapery hardware and window covering products that incorporate bead chains, cords, or any type of flexible looped device in their operation. . . .

2.1 The objective of this standard is to provide requirements for covered products in 1.3 that reduce the possibility of injury, including strangulation, to young children from the bead chain, cord, *or any type of flexible loop device used to operate the product.*

*Id* at 4. It is conceded and agreed that the 1996 standard just referred to makes no mention whatsoever of inner loop cords such as Amber encountered in her death struggle.

In 2002, WCMA issued revised standards, and therein for the first time mentions "Accessible Inner Cords," defined as "a cord and[/]or blind member, [which] can be accessed and pulled, to create a free standing cord loop (i.e. . . . Horizontal Blinds)." *See* Dkt. No. 104, Exhibit 2. Like its predecessor, the 2002 standard included a hang tag warning label requirement. Like the bottom rail sticker affixed to the particular blinds at issue in this case, the hang tags on new blinds are in the precise language demanded by the standard, and carry an attribution to the WCMA.

Mr. Rush agreed that the inner cord loop without the warning and "fix" described in the 2002 standard was defective, a view he held from at least late 1999. *See* footnote 1, *supra*. Mr. Rush nevertheless testified that standards published by the WCMA "are acceptable products" and provide "a certain level of confidence that a product has been manufactured to an acceptable level of performance." *Id.* Mr. Rush testified that had he or WCMA been aware of a problem with inner cord strangulation deaths during development of the 1996 standard, that issue would have been addressed in that standard. *Id.*

Opposition to WCMA Motion for Summary Judgment
Rountree v. Ching Feng, et al     A04-0112 CV (JWS)
Page 4 of 11                        Rountree 311.1 Oppos WCMA MtnSJ

The problem for WCMA here is that there is absolutely no doubt but that Mr. Rush and WCMA were aware of the strangulation risk posed by inner cords not later than 1990. *See id*. (especially Mr. Rush's testimony at 208-214. *See also* Exhibit 5 (letter from Toni Griesbach to Mr. Rush dated 9/5/90, with attachment from WCMA's files). On these undisputed facts, WCMA's motion must fail.

<u>ARGUMENT</u>

<u>Restatement of Torts (Second) §324A</u>

The provision of the Restatement at issue here is as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

        (a) his failure to exercise reasonable care increases the risk of such harm, or

        (b) he has undertaken to perform a duty owed by the other to the third person, or

        (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Restatement (Second) of Torts*, § 324A.

Here WCMA undertook to provide to the window blind industry, as described in its 1996 standard, minimum guidelines for design and warnings. Although WCMA asserts its failure to address the inner cord risk did not increase the risk of April's death, indeed it did. WCMA's argument is, truly, simply an effort to turn the Restatement provision on its head. Had WCMA actually discharged its obligation with reasonable care,

Opposition to WCMA Motion for Summary Judgment
Rountree v. Ching Feng, et al    A04-0112 CV (JWS)
Page 5 of 11                    Rountree 311.1 Oppos WCMA MtnSJ

the risk at issue would have been eliminated, as was done by the 2002 standard. However, having failed to act with reasonable care by including provisions in the 1996 standard that were contained in the 2002 standard, WCMA in point of fact created the risk which killed April.

In addition, WCMA did undertake to perform a duty owed to consumers by manufacturers, which is to place a product on the United States market that meets a minimum threshold of consumer safety. In today's global markets, it is important for manufacturers to know what is expected of them as they deliver into a particular country's stream of commerce. WCMA provided the framework for whomever manufactured the blinds at issue. The manufacturer did include the requisite, though inadequate and hidden, warning. As reflected in the photos that are part of the record, there were tassels on the ends of the pull cord as opposed to the loop that predated the 1996 standard. No doubt had adequate warnings been provided and the 2002 standard included regarding cord stops, those, too, would have been part of the blinds at issue and April would not have died. WCMA, having failed to set a safe standard as it undertook to do, and manufacturers understandably believing the standard was truly one of safety, cannot escape responsibility for its actions.

Finally as to §324A, all consumers rely on the safety of products that come into their homes or the reach of their children in every day activities. April's mother is not different; there was no visible warning on the blinds that would have alerted her to the impending tragedy and she justifiably relied on the lack of any such warning when she

Opposition to WCMA Motion for Summary Judgment
Rountree v. Ching Feng, et al     A04-0112 CV (JWS)
Page 6 of 11                        Rountree 311.1 Oppos WCMA MtnSJ

placed her child's crib in the room, tied up the pull cord, and put her child down for sleep. Here WCMA undertook to design and describe in detail required warnings, which did not include any permanent, visible warning that would alert April's mom to the latent danger of the inner cord. On any of the foregoing bases, a jury could find WCMA liable for April's death.[2]

### The *D.S.W.* Factors

In addition, WCMA's liability to plaintiffs could easily be found by a jury to arise under the duty analysis set out in *D.S.W. v. Fairbanks Northstar Borough School District,* 628 P.2d 554, 555-56 (Alaska 1981) when considered in the context of the facts here. Under Alaska common law, to determine whether a person owes a duty of care to one claimed to be injured by the other's actions, the courts[3] examine the following factors: (1) foreseeability of harm; (2) degree of certainty that the plaintiff suffered injury; (3) the closeness of the connection between the defendant's conduct and the injury suffered; (4) the moral blame attached to the defendant's conduct; (5) the policy of preventing future harm; (6) the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach; and (7) the availability, cost and prevalence of insurance for the risk involved.

---

[2]

WCMA asserts that the scope of its duty cannot be defined by the testimony of experts. However, as the Alaska Supreme Court described in *Smith v. State,*921 P.2d 632, 634-45 (Alaska 1996), whether a duty attaches is often circumscribed by the facts of the case and thereby becomes an issue for the jury.

[3]*But see* footnote 2, *supra*.

Opposition to WCMA Motion for Summary Judgment
Rountree v. Ching Feng, et al     A04-0112 CV (JWS)
Page 7 of 11                     Rountree 311.1 Oppos WCMA MtnSJ

Here there is no doubt but that April's death was foreseeable – WCMA had learned of a similar strangulation in a letter it received twelve years before this incident. In addition, many children had strangled in the inner cords of window blinds from 1981 until April's death in 2002. Of course, there is no doubt as to the certainty of April's death. Had WCMA done in 1996 what it did in 2002, given that in 1996 all of the information and rudimentary technology was available to do so in 1996, April would not have died. The moral blame prong weighs strongly in plaintiffs' favor. WCMA knew what the risks were to young children but that risk was hidden to even the parents, let alone youngsters. The relative burden analysis also weighs strongly in plaintiffs' favor. If an industry group sets out to avoid government regulation for that industry, and in doing so does a slipshod job that does nothing to reduce or eliminate risk of death to children from the industry's product, why should not the industry's shill be saddled with the consequences? WCMA could have told the CPSC to set standards but did not. WCMA could have told the individual manufacturers to set standards but did not. An industry association whose members sell a gazillion sets of window blinds should have, and must be found subject to the duty, to act reasonably in the setting of "safety" standards. Finally, although counsel has no specific information on insurability of the risk for WCMA, it seems likely the cost would not be too great and, indeed, the association might even be an insured under its members' CGL policies.

Since, as the Alaska Supreme Court has observed, foreseeability is the most important of the foregoing factors, WCMA can be found to have had the duty to act

Opposition to WCMA Motion for Summary Judgment
Rountree v. Ching Feng, et al    A04-0112 CV (JWS)
Page 8 of 11                    Rountree 311.1 Oppos WCMA MtnSJ

reasonable. *Cf. Division of Corrections v. Neakok*, 721 P.2d 1121, 1125 (Alaska 1986).

That it failed to discharge the duty may be found from WCMA's own pleadings, for it has

noted a warning is not adequate if it does not:

> (1)   Clearly indicate the scope of the risk or danger posed by
>        the product;
>
> (2)   Reasonably communicate the extent or seriousness of
>        harm that could result from the risk or danger; and
>
> (3)   Convey the scope, extent and seriousness of the risk in
>        such a manner as to alert the reasonably prudent person.

*Shanks v. Upjohn Co.*, 835 P.2d 1189, 1200 (Alaska 1992).

The pictogram and generic language on the bottom rail label required by

WCMA does not "clearly indicate" any risk with respect to the inner cord.  The location of

the label is not in a place that would "reasonably communicate" any risk whatsoever, let

alone the inner cord risk.  Thus, it fails to be of the sort that would convey an appropriate

warning to a reasonably prudent person.

Moreover, the 1996 standard did not represent "an acceptable level of

performance."  WCMA should have, as it did in 2002, adopt a standard that would have led

to manufacture and distribution of products essentially incapable of strangling April Cox.

WCMA knew children were strangling in the inner cords of blinds.  It secured status as a

standards setting organization expressly to promulgate standards for window blinds that all

blinds sold in the United States would have to meet.  As described by Mr. Rush, these were

"performance standards regarding how to make the product," *see* footnote 1, *supra*, with

Opposition to WCMA Motion for Summary Judgment
Rountree v. Ching Feng, et al    A04-0112 CV (JWS)
Page 9 of 11                       Rountree 311.1 Oppos WCMA MtnSJ

which all products had to comply. *Id*. It then promulgated a standard that omitted consideration of an insidious, invisible risk that resulted in the continuing distribution and sale of a product that WCMA concedes was defective. Having assumed the duty to set standards for the minimum safety elements of corded window products, it cannot escape responsibility when it fails to discharge that duty and the consuming public, including Valerie Cox and her family, ends up with dangerously defective products.

Other issues

WCMA claims the scope of its undertaking did not extend to inner cord loop safety. Simply put, that is malarkey. The 1996 standard most certainly did not reduce the possibility of strangulation from any type of flexible loop device incorporated into the blinds, which was an expressed goal of the standard. WCMA's tortured reading of its own documents should not be countenanced by the Court; it set out to set a standard for window blind safety. Had it actually done so, we would not be here.

CONCLUSION

At minimum, there remain questions of fact whether WCMA owed a duty to plaintiffs and whether it discharged that duty. However, on the present record, which discloses that WCMA promised to set a safety standard but instead adopted a manufacturing standard that did not include any steps for elimination of inner cord strangulation deaths -- even though it knew such deaths were occurring and had been alerted to the notion that warning of the side pull cord risk was arguably misleading – the claims of plaintiffs must be submitted to a jury and WCMA's motion for summary judgment must be denied.

Opposition to WCMA Motion for Summary Judgment
Rountree v. Ching Feng, et al    A04-0112 CV (JWS)
Page 10 of 11                    Rountree 311.1 Oppos WCMA MtnSJ

DATED 18 April 2008
/s/Charles W. Ray, Jr.
Charles W. Ray, Jr., P.C.
205 E. Dimond Blvd., #531
Anchorage, AK 99515
Phone:  (907) 274-4839
Fax: (907) 277-9414
E-mail: dlcraylaw@acsalaska.net
        craylaw@aol.com
ABA# 8406048

CERTIFICATE OF SERVICE:
I hereby certify that on 18 April 2008, a copy of the foregoing document:

Was served electronically on:

Donald C. Thomas
Delaney, Wiles, Hayes, Gerety, Ellis & Young
DCT@delaneywiles.com
jaf@delaneywiles.com
usdcuser@delaneywiles.com

Daniel T. Quinn
Richmond & Quinn
dquinn@richmondquinn.com
cesary@richmondquinn.com

Don C. Bauermeister
Burke & Bauermeister
921 W. 6th Ave., Suite 250
Anchorage, AK 99501
dcblaw@alaska.com

Michael Weiss
King & Spalding LLP
191 Peachtree St.
Atlanta, GA 30303
Mweiss@KSLAW.com

By: s/Charles W. Ray, Jr.

Opposition to WCMA Motion for Summary Judgment
Rountree v. Ching Feng, et al    A04-0112 CV (JWS)
Page 11 of 11                Rountree 311.1 Oppos WCMA MtnSJ