**UNITED STATES DISTRICT COURT**

**DISCTRICT OF ALASKA**

| | | |
|---|---|---|
| **THE ESTATE OF APRIL LYNN COX, Et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **3:04-cv-00112 CV (JWS)** |
| **WINDOW COVERING MANUFACUTERERS ASSOCIATION,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S OPPOSITION TO WCMA'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DR. JON JACOBSON**

## I. Introduction

The WCMA motion to exclude the testimony of Dr. Jacobson primarily hinges on the claim that he has simply not viewed enough material (of the thousands of documents available in this case) in order to give an opinion that would be helpful to the jury. The WCMA claims "it should go without saying that opinions based on only a fraction of the relevant information-information not discovered by the expert but cherry-picked by the attorney paying for his testimony-is not relevant or reliable." See, Defendants' Motion Memorandum at p. 2. The odd thing about this attack, is that it appears to suggest that only a witness as comprehensively prepared as Stuart Statler was for this litigation could ever offer helpful testimony to the jury. This is not what Federal Evidence law holds. In fact, Federal Rule of Evidence 703 states:

> The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. (underline added).

See, Federal Rule of Evidence 703. This rule is flexible enough to allow an expert to testify from the stand based on a small amount of in-court evidence made known to him at that time. This flexibility must also permit a witness who has a relatively small role in a case to review a smaller percentage of the available documents, so long as he reviews those reasonably necessary to substantiate the opinion he intends to give.

Obviously, Mr. Jacobson has reviewed a much larger amount of evidence than that which would normally be made available to an expert at a hearing. His report shows a complete list of documents reviewed to which must be added the entire Peter Rush deposition. This is admittedly far less than the thousands of pages of evidence and testimony in this case. However, there is nothing wrong with that so long as he has seen the evidence necessary to render the opinions he intends to give. As shown below, that is what has been done here.

Dr. Jacobson's opinions are narrowly drawn because his role to assist in educating the jury in this matter is a relatively narrow one. To understand this point, it is helpful to review his opinions as he set them out in his report.

## II. Dr. Jacobson's Opinions

Dr. Jacobson's opinions are set out in summary form in his report which is shown at Exhibit 54. They can be summarized on a single page:

- The WCMA undertook the development of the ANSI standard without the inclusion of safety engineering personnel or the conduct of studies of the specific overall hazardous design factors that window coverings presented to young children;

- The hazards addressed in the initial standard were not analyzed with the safety assessment form known as the safety hierarchy;

- The initial stop in the assessment of a hazard related to a product is to specify the hazard and address the ability to design the hazard out of the product;

- The presence of cord like devices associated with window coverings was identified by the CPSC as the principal focus of the reporting data on the strangulation of young children;
- In developing the standard, there was no reference to any form of thorough product testing or a formal product evaluation in relation to the existence of (or the elimination of) the hazard of inner cord strangulations;
- The code developed represented only the minimum standard;
- The lack of industry studies to develop standard A100.1 indicates that the response was not in concert with safety design procedures;
- The standard did not include in the 1996 form a mention of the strangulation hazard presented by the interior cord;
- Data available from strangulation deaths did include interior cord involvement, but such was not included until the 2002 revision;
- Even in the warnings area, the lowest level of effectiveness to prevent product injuries, there was no mention of the interior cord hazard in the initial 1996 standard;
- The 2002 standard acknowledges the inner cord problem;
- Preventing strangulation deaths by hang-tag warnings or other warnings is the least certain of measures that can be utilized;
- Warnings should not be used to prevent deaths until it has first been determined that the design cannot be changed to eliminate the hazard;
- The 2002 revision of more detailed warnings demonstrates that the hazard of strangulation deaths is still present in the 1996 standard (and products made to that standard.)

## III. Law

The present Federal Rule of Evidence 702 has been amended in response to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and to the many cases applying Daubert, including Kumho Tire v. Carmichael, 526 U.S. 137 (1999). In Daubert the court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert

testimony. In Kumho Tire the court clarified that this gatekeeping function applies to all expert testimony, not just that based on science.

The admissibility of all expert testimony is governed by the principles of Federal Evidence Rule 104(a). Under that rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. Bourjaily v. U.S., 483 U.S. 171 (1987).

The Kumho Court determined that the trial judge must have considerable leeway in deciding how to go about determining whether particular expert testimony is admissible. However, the Court states that no single factor is necessarily dispositive of this question. The principal issues are whether the testimony is relevant and reliable. See, Hangarter v. Provident Life and Accident Insurance Co., 373 F.3d 998 (9th Cir. 2004) at p. 1017.

The Federal Advisory Committee note to the 2000 amendment is shown in the Federal Civil Judicial Procedure and Rules book, 2008 Edition, Thomson West, at p. 450 and following. It notes:

> A review of the caselaw after Daubert shows that the rejection of expert testimony is the exception rather than the rule. Daubert did not work a "sea change over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." [citation omitted] As the court in Daubert stated: "Vigorous cross-examination, presentation of a contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595. Likewise, this amendment is not intended to provide an excuse for an automatic challenge for the testimony of every expert. . . . [P]roponents "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable . . . The evidentiary requirement of reliability is lower than the merits standard of correctness." (underline added).

See, Advisory Committee Note to 2000 amendment of Federal Rule of Evidence 702. Ninth Circuit caselaw is in accord with the above principles. See, Hangarter v. Provident Life and Accident Insurance Co., 373 F.3d 998 (9th Cir. 2004); and U.S. v. Hankey, 203 F.3d 1160 (9th Cir. 2000). These cases are shown, respectively, at Exhibit 61 and Exhibit 58 to this brief.

## IV. Discussion of the Presentation of This Testimony

The information reviewed by Dr. Jacobson was more than sufficient to provide the basis for the opinions he intends to give. They are opinions that virtually any engineer with safety expertise would be prepared to give based on the lack of safety analysis used by the WCMA in promulgating its standard. Normal safety analysis protocol would have required at least some analysis of risk presented by a product before attempting to write a standard to eliminate the basic risks presented by a product. Dr. Jacobson's testimony should not be faulted because he has not reviewed evidence that does not exist—WCMA safety professionals' analysis of the risks this product presents and the methodologies available to eliminate the risks that should be included in the proposed safety standard. That is the point of Dr. Jacobson's testimony: the WCMA didn't do an even minimal safety hierarchy analysis before promulgating its standard to the public. It will be for the jury to determine if this failure to do minimum safety hierarchical analysis is one reason the WCMA missed the obvious inner cord hazard when it wrote a safety standard attempting to control cord hazards.

### A. Dr. Jacobson's testimony is relevant and reliable (responding to defendants' arguments A and B at pages 4-5 of defendants' memorandum).

Dr. Jacobson's qualifications to testify as an engineer are set out in his expert report shown at Exhibit 54. Education and licensing as a professional engineer and experience with the

safety assessment hierarchy are prerequisites to the opinions that Dr. Jacobson intends to provide. He has both. (A more significant discussion of that background experience is shown throughout his deposition which is Exhibit 55.) With that background and training, Dr. Jacobson is prepared to provide relevant and reliable testimony about the safety hierarchy and its use in engineering design for identifying product hazards and finding ways to abate them.

Nothing in the motion by the WCMA demonstrates there is anything irrelevant or unreliable about the proposed opinions that Dr. Jacobson intends to offer. The fact that they are primarily observations on a process as opposed to an analysis of a product does not make them less useful to the jury. In a case of this type, it is the failure in process that is important because the WCMA produced a safety standard that flat out failed to address the second most death-causing attribute of the very product it was supposed to be providing a safety standard for. It certainly will be helpful for the jury to hear the testimony of Dr. Jacobson to gain an understanding of how a safety standard could have been issued that would have recognized the child death risk that inner cords pose. Dr. Jacobson's testimony will be helpful to the jury's understanding of the simple engineering analytical steps that could have been done by the WCMA that would have led to the production of a standard that would have addressed completely the strangulation hazards threatening children from corded window coverings. How can such testimony not be helpful to the jury?

**B. Dr. Jacobson's methodology does not controvert the NSPE Code of Ethics for Engineers (responding to WCMA argument B shown at p. 10).**

Dr. Jacobson's report covers what he was requested to cover based on the information he was requested to review. The fact that defense counsel believes some other information is relevant will provide him a basis upon which to make cross-exanimation. However, the law of the Ninth Circuit is clear that a review of a smaller (as to opposed to a larger selection of

documents) is not grounds for an attack upon the methodology of the expert but simply is evidence that goes to the weight of his testimony. This issue is properly explored during direct and cross-examination. See, Hangarter, *supra*, at p. 1017, footnote 14 (The factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination). The limited opinions identified in Dr. Jacobson's report and discussed at his deposition are those that he is expected to give at trial. They're primarily based on his education and experience as an engineer with substantial knowledge of the safety hierarchy and its application. It is wrong for the WCMA to attack Dr. Jacobson's ethics simply because he has a prepared a far more limited opinion than that requested of Dr. Statler.

**C. Dr. Jacobson's testimony will be helpful to the jury.**

The WCMA claims that Dr. Jacobson's testimony is difficult to understand and therefore will be unhelpful to the jury. Plaintiffs obviously dispute that point by offering Dr. Jacobson's limited report. This appears not to be an issue directed at either relevancy or reliability. The fact is that Dr. Jacobson was asked 259 pages of questions at his deposition, much of which will have nothing to do with his testimony at trial. Certainly defense counsel is permitted to ask questions and prepare for cross-examination as thoroughly as he wishes. However, most of those questions will be irrelevant to the focus of Dr. Jacobson's testimony as described above and shown directly in his report.

In any respect, the legal issue is whether or not the court finds under Rule 104 that the proposed testimony will be helpful to the jury. This question legally becomes whether or not the proposed testimony will assist the jury. To answer that question, the court may assume the expert testimony satisfies the "assist" requirement if it advances the jury's understanding to any

degree. This liberal standard is consistent with the liberal thrust of the rules concerning opinion testimony. See, Wright & Gold, Federal Practice and Procedure Section 6264 at pp. 207-209.[1]

**D. Federal Rule of Evidence 403 will not permit the exclusion of Dr. Jacobson's proposed testimony on any claim that its confusing nature outweighs its probative value (responding to defendants' argument number 2 at p. 15).**

In a two paragraph argument, defendant WCMA asks this court to strike Dr. Jacobson's testimony under evidence rule 403 which allows the exclusion of even relevant evidence on the basis it may confuse the jury. The federal rule requires any such evidentiary exclusion only where "its probative value is substantially outweighed by the danger of . . . confusion of the issues". See, Federal Rule of Evidence 403.

Dr. Jacobson's proposed opinions are shown above at section II. There is nothing confusing about them. Even if there were, the claim that the asserted confusion "substantially" outweighs the probative value is far-fetched.

Dr. Jacobson is an expert witness with a far smaller proposed role in the trial of this matter than that of consumer products and regulation expert Stuart Statler. Inherently, the reduced evidentiary role of Dr. Jacobson must mean its potential for confusion of the issues is substantially reduced. Nothing in the proposed report, or the trial evidentiary role proposed for the witness, suggests evidence rule 403 excludability could be reasonably applied to the proposed testimony. See, U.S. v. Hankey, 203 F.3d 1160 (9th Cir. 2000) (relevant evidence may be excluded under FRE 403 only if its probative value is substantially outweighed by one or more of the articulated dangers or considerations. This requires that the probative value of the evidence be compared to the articulated reasons for exclusion and permits exclusion only if one or more of those reasons "substantially outweigh" the probative value).

[1] Some courts describe the standard as "appreciably assist". In either form of the test, Dr. Jacobson's proposed testimony is admissible.

The fact that the Federal Rule favors admissibility is underscored when a comparison is made with the Alaska State Court Rule 403. That rule excludes the word "substantially" and makes the judge's ruling a pure balancing test. See, Alaska Court Rule 403 and Alaska Evidence Rules Commentary 403.

Given the Federal Rules "substantially outweigh" standard, the shortness and directness of the proposed testimony, and the general liberal admissibility of relevant evidence standards within the Federal Rules, defendant WCMA's 403 strike request must be denied.

**VI. Conclusion**

The fact that an expert has been consulted to provide a limited piece of testimony in no way makes that testimony assailable as irrelevant or unreliable. In fact, as expert testimony narrows it sometimes becomes more reliable. It certainly seemed to be that way in the days (which this lawyer can remember) when experts were presented brief hypotheticals and provided opinions on the spot from the witness stand. Federal Rule of Evidence 703 still allows this practice, so it must not offend Daubert. Therefore, a short testimony by a clearly qualified expert, properly prepared for that short testimony, cannot offend Daubert either. WCMA's attack on this witness is ungrounded. The motion in limine should be denied.

DATED this 19th day of April, 2008, at Anchorage, Alaska.

/s/Don C. Bauermeister

Burke & Bauermeister, P.L.L.C.
921 W. 6th Ave., Ste. 250
Anchorage, AK 99501
Phone: (907) 277-6177
Fax: (907) 277-6111
E-mail: bblaw@alaska.com
dcblaw@alaska.com
ABA# 82060005

I hereby certify that on 19 April 2008, a copy of the foregoing document
Was served electronically on:

Donald C. Thomas
Delaney, Wiles, Hayes, Gerety, Ellis & Young
DCT@delaneywiles.com
jaf@delaneywiles.com
usdcuser@delaneywiles.com

Charles W. Ray, Jr.
Law Offices of Charles W. Ray, Jr., P.C.
Craylaw@aol.com
dlcraylaw@acs.alaska.net

Michael Weiss
King & Spalding LLP
191 Peachtree St.
Atlanta, GA 30303
Mweiss@KSLAW.com

Dan Quinn
Richmond & Quinn
dquinn@richmondquinn.com
cesary@richmondquinn.com

By: s/Don C. Bauermeister