Restatement (Second) of Torts § 323 (1965)

Restatement of the Law — Torts
Restatement (Second) of Torts
Current through June 2007

Copyright © 1965-2008 by the American Law Institute

Division 2. Negligence
Chapter 12. General Principles
Topic 7. Duties Of Affirmative Action
Title B. Duty To Aid Others And Services Gratuitously Rendered Or Undertaken

§ 323. Negligent Performance Of Undertaking To Render Services

Link to Case Citations

**One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if**
 **(a) his failure to exercise such care increases the risk of such harm, or**
 **(b) the harm is suffered because of the other's reliance upon the undertaking.**

See Reporter's Notes.

**Caveat:**
 The Institute expresses no opinion as to whether:
 (1) the making of a contract, or a gratuitous promise, without in any way entering upon performance, is a sufficient undertaking to result in liability under the rule stated in this Section, or
 (2) there may not be other situations in which one may be liable where he has entered upon performance, and cannot withdraw from his undertaking without leaving an unreasonable risk of serious harm to the other.

**Comment:**
 *a.* This Section applies to any undertaking to render services to another which the defendant should recognize as necessary for the protection of the other's person or things. It applies whether the harm to the other or his things results from the defendant's negligent conduct in the manner of his performance of the undertaking, or from his failure to exercise reasonable care to complete it or to protect the other when he discontinues it. It applies both to undertakings for a consideration, and to those which are gratuitous. As to whether a mere promise, without entering upon performance, is a sufficient undertaking within the rule stated in this Section, see Comment *d* below.
 A special application of the rule stated, to one who takes charge of another who is helpless at the time, is stated in § 324. See also, as to undertakings by a servant, Restatement of Agency, Second, §§ 354 and 378.
 *b. Skill and competence.* One who gratuitously gives transportation to another, or otherwise renders gratuitous services to him, is not subject to liability to him for his failure to have the competence or to exercise the skill normally required of persons doing such acts, if the other who accepts the services is aware, through information given by the actor or otherwise, of his incompetence. However, a contract to render services, or a gratuitous offer to render them, or even merely giving them at the other's request, may carry with it a profession or representation of some skill and competence; and if the actor realizes or should realize that his competence and skill are subnormal, he must exercise reasonable care to inform the other. If he does not do so, he is subject to liability for physical harm resulting from his deficiencies. There are situations in which it is socially desirable, and so legally permissible, to give gratuitous aid even though the person who gives it realizes that his lack of competence and skill creates some degree of risk, and the person receiving the aid is unconscious or otherwise incapable of deciding whether to accept or to reject the

**EXHIBIT 43**

assistance. Thus one who finds another in some lonely place severely wounded, unconscious, and in urgent need of first aid treatment may, without fear of liability, do the best he can although he realizes that he has not that knowledge of the technique of first aid which is necessary to make it certain that his efforts will be beneficial rather than harmful. On the other hand, the actor's incompetence to deal with the situation may be so extreme as to make it unreasonable for him to attempt to give assistance.

*c. Termination of services.* The fact that the actor gratuitously starts in to aid another does not necessarily require him to continue his services. He is not required to continue them indefinitely, or even until he has done everything in his power to aid and protect the other. The actor may normally abandon his efforts at any time unless, by giving the aid, he has put the other in a worse position than he was in before the actor attempted to aid him. His motives in discontinuing the services are immaterial. It is not necessary for him to justify his failure to continue the services by proving a privilege to do so, based upon his private concerns which would suffer from the continuance of the service. He may without liability discontinue the services through mere caprice, or because of personal dislike or enmity toward the other.

Where, however, the actor's assistance has put the other in a worse position than he was in before, either because the actual danger of harm to the other has been increased by the partial performance, or because the other, in reliance upon the undertaking, has been induced to forego other opportunities of obtaining assistance, the actor is not free to discontinue his services where a reasonable man would not do so. He will then be required to exercise reasonable care to terminate his services in such a manner that there is no unreasonable risk of harm to the other, or to continue them until they can be so terminated.

**Illustration:**

    1. A, an employee of B Company, complains to the manager of the Company that she is ill, and asks that she be sent home. She is sent home in one of the Company's delivery wagons. The street leading to A's house is rough and unpaved, and although it is raining, the driver refuses to go further, and tells A to get out and walk the rest of the distance, as a result of which her illness is increased. B Company is subject to liability for the increase in A's illness caused by her exertion and her exposure to the rainy weather.

**Comment on Caveat:**

*d. Promise as an undertaking.* The Caveat leaves open the question whether a mere promise, without in any way entering upon performance, is an undertaking sufficient to make the promisor liable under the rule stated in this Section.

The early development of the law, and particularly of the forms of action of case and assumpsit, led to a distinction, as to tort liability, between "misfeasance" and "non-feasance." A defendant who actually entered upon the performance of his undertaking became liable, in an action on the case, for harm to the plaintiff which resulted from his negligent performance, whereas one who never commenced performance at all was not liable in such an action for his failure to do so. The mere breach of a promise, without more, was regarded as "non-feasance," for which any action must be in assumpsit, upon the contract and upon proof of a consideration for the promise, rather than on the case under any theory of tort liability.

This distinction has persisted to the present day, largely in cases involving questions of pleading. Decisions in a number of jurisdictions, holding that the breach of a promise can give rise only to a contract action, and does not result in liability in tort, have not been overruled. The modern law has, however, witnessed a considerable weakening and blurring of the distinction, in situations where the plaintiff's reliance upon the defendant's promise has resulted in harm to him. Through the development of the doctrine of "promissory estoppel" the contract rule itself has been considerably modified to permit, in many situations, the enforcement of a promise made without consideration. See Restatement of Contracts, § 90.

Where the plaintiff's reliance has led to his harm, the courts have tended to seize upon almost any trivial and technical conduct of the defendant, to find that he has commenced performance of his promise, and so has "entered upon" his undertaking. Thus the defendant is held liable where he has merely received a document, written a letter, appeared on the first day of a long employment, or accepted a general agency, although such acts themselves have played no part in inducing the plaintiff's reliance or in causing the harm to him.

There is no essential reason why the breach of a promise which has induced reliance and so caused harm should not be actionable in tort. This is true particularly where the harm is physical

harm, to the person, land, or chattels of the plaintiff. The technicalities to which the courts have resorted in finding some commencement of performance indicate a development of the law toward such liability. In the absence of sufficient decisions, however, the question is left open.

*e. Other situations.* The Caveat also leaves open the question whether there may not be cases in which one who has entered on performance of his undertaking, and cannot withdraw from it without leaving an unreasonable risk of serious harm to another, may be subject to liability even though his conduct has induced no reliance and he has in no way increased the risk. Clear authority is lacking, but it is possible that a court may hold that one who has thrown rope to a drowning man, pulled him half way to shore, and then unreasonably abandoned the effort and left him to drown, is liable even though there were no other possible sources of aid, and the situation is made no worse than it was.