Westlaw.

921 P.2d 632
921 P.2d 632
(Cite as: 921 P.2d 632)

Page 1

Smith v. State
Alaska,1996.

Supreme Court of Alaska.
Janet SMITH, Personal Representative of the Estate of Dominic Smith, Deceased, Appellant,
v.
STATE of Alaska, Appellee.
No. S-7347.

Aug. 9, 1996.

Estate of individual who died of fluoride poisoning from excessive levels of fluoride in township water brought negligence action against state. The Superior Court, Fourth Judicial District, Bethel, Jane F. Kauvar, J. pro tem., granted summary judgment for state. Estate appealed. The Supreme Court, Compton, C.J., held that fact issue as to whether state's repair of fluoride pump at township wellhouse was undertaking in and of itself, such that state only assumed duty to repair pump, or was initiation of broader undertaking to resolve problem of excessive fluoride in township water system, precluded summary judgment.

Reversed and remanded.

West Headnotes

[1] Appeal and Error 30 893(1)

30 Appeal and Error
    30XVI Review
        30XVI(F) Trial De Novo
            30k892 Trial De Novo
                30k893 Cases Triable in Appellate Court
                    30k893(1) k. In General. Most Cited Cases
State Supreme Court reviews summary judgments de novo.

[2] Appeal and Error 30 863

30 Appeal and Error
    30XVI Review
        30XVI(A) Scope, Standards, and Extent, in General
            30k862 Extent of Review Dependent on Nature of Decision Appealed from
                30k863 k. In General. Most Cited Cases

Appeal and Error 30 934(1)

30 Appeal and Error
    30XVI Review
        30XVI(G) Presumptions
            30k934 Judgment
                30k934(1) k. In General. Most Cited Cases
In reviewing grant of summary judgment, state Supreme Court must determine whether genuine issue of material fact exists and whether moving party is entitled to judgment on law applicable to established facts; in making determination, all reasonable inferences of fact must be drawn in favor of nonmoving party.

[3] Negligence 272 233

272 Negligence
    272III Standard of Care
        272k233 k. Reasonable Care. Most Cited Cases
        (Formerly 272k4)

Negligence 272 234

272 Negligence
    272III Standard of Care
        272k234 k. Voluntarily Assumed Duties. Most Cited Cases
        (Formerly 272k2)
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for protection of third person or his things, is subject to liability to third person for physical harm resulting from his failure to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 45

921 P.2d 632
921 P.2d 632
(Cite as: 921 P.2d 632)

Page 2

exercise reasonable care to protect his undertaking, if he has undertaken to perform duty owed by other to third person. Restatement (Second) of Torts § 324A.

[4] Judgment 228 ⇌181(33)

228 Judgment
    228V On Motion or Summary Proceeding
        228k181 Grounds for Summary Judgment
            228k181(15) Particular Cases
                228k181(33) k. Tort Cases in General. Most Cited Cases

Negligence 272 ⇌1692

272 Negligence
    272XVIII Actions
        272XVIII(D) Questions for Jury and Directed Verdicts
            272k1692 k. Duty as Question of Fact or Law Generally. Most Cited Cases
        (Formerly 272k136(14))
Precise nature and extent of duty is question of law which can be decided at summary judgment stage.

[5] Trial 388 ⇌136(1)

388 Trial
    388VI Taking Case or Question from Jury
        388VI(A) Questions of Law or of Fact in General
            388k136 Questions of Law or Fact in General
                388k136(1) k. In General. Most Cited Cases
Question of law is question for court, and not jury, to answer.

[6] Negligence 272 ⇌1696

272 Negligence
    272XVIII Actions
        272XVIII(D) Questions for Jury and Directed Verdicts
            272k1696 k. Miscellaneous Particular Cases. Most Cited Cases

(Formerly 272k136(14))
Although precise nature and extent of duty to third person assumed by undertaking to render services necessary for protection of third person is question of law, it depends on nature and extent of act undertaken, which is question of fact.

[7] Judgment 228 ⇌181(33)

228 Judgment
    228V On Motion or Summary Proceeding
        228k181 Grounds for Summary Judgment
            228k181(15) Particular Cases
                228k181(33) k. Tort Cases in General. Most Cited Cases
Where reasonable people could differ over nature and extent of act undertaken, summary judgment is inappropriate in action premised on negligence in performing such act; scope of assumed duty will vary depending on inferences drawn from facts.

[8] Judgment 228 ⇌181(33)

228 Judgment
    228V On Motion or Summary Proceeding
        228k181 Grounds for Summary Judgment
            228k181(15) Particular Cases
                228k181(33) k. Tort Cases in General. Most Cited Cases
Where reasonable people could not differ over nature and extent of act undertaken, summary judgment is appropriate in action premised on negligence in performing act, insofar as there is no question as to whether duty undertaking gave rise to was fully discharged.

[9] Judgment 228 ⇌181(33)

228 Judgment
    228V On Motion or Summary Proceeding
        228k181 Grounds for Summary Judgment
            228k181(15) Particular Cases
                228k181(33) k. Tort Cases in General. Most Cited Cases
Fact issue as to whether state's repair of fluoride pump at township wellhouse was undertaking in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

921 P.2d 632
921 P.2d 632
(Cite as: 921 P.2d 632)

Page 3

and of itself, such that state only assumed duty to repair pump, or was initiation of broader undertaking to resolve problem of excessive fluoride in township water system, precluded summary judgment in negligence action against state, in which estate of individual who died of fluoride poisoning subsequent to repair of pump alleged that state's negligence in resolving fluoride problem caused individual's death.

*633 Susan Orlansky, Jeffrey M. Feldman, and Eric T. Sanders, Young, Sanders & Feldman, Anchorage, for Appellant.
David H. Knapp, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

OPINION

COMPTON, Chief Justice.
This appeal presents the sole question of whether a genuine issue of material fact precludes summary judgment on the scope of the duty assumed by the State of Alaska (State). The superior court concluded that the State owed the decedent Dominic Smith no duty and granted summary judgment in favor of the State. We reverse.

I. BACKGROUND

Most of the facts underlying this appeal are not in dispute. A May 1992 fluoride poisoning incident in Hooper Bay resulted in widespread illness and the death of Dominic Smith. The cause of this poisoning was ultimately traced to excessive fluoride in the townsite water system. The water system was owned and operated by Hooper Bay, not the State. In April 1992, however, the State had installed new parts in the fluoride pump at the townsite wellhouse. The State installed these parts in response to excessive levels of fluoride found in water samples.

Prior to installing the new parts, the State had made plans to "rehabilitate" the aging townsite water system in its entirety, a project which would involve completely replacing all of the equipment at the site, including the fluoride pump. The rehabilitation work was scheduled to begin within a couple of weeks *634 of the date on which the fluoride poisoning occurred.

Janet Smith, the personal representative of Dominic Smith's estate (Smith), brought suit against the State, alleging that the State's negligence in resolving the fluoride problem in the Hooper Bay water system was a cause of Smith's death. The superior court granted summary judgment to the State, based on its conclusion that the State did not have an affirmative duty to fix the water system.

The parties agree that the State, by its voluntary actions, assumed a duty of care to the residents of Hooper Bay. They also agree that, absent a voluntary undertaking, the State would have owed no duty of care to the residents in connection to the distribution of water from the townsite water system. The parties disagree, however, as to the precise nature of the duty the State did assume regarding the Hooper Bay water system.

The State concedes that by working on the fluoride pump, it assumed a duty to use reasonable care in performing this work. This narrow duty is the only duty the State admits to having assumed. Because there was no evidence that the work was negligently performed by the State, the State contends that summary judgment was appropriate.

Smith, however, argues that the State assumed a broader duty, for it "undertook to resolve the fluoride problem." Smith contends that the State should be held liable if it negligently failed to complete this undertaking and if this failure was a cause of Smith's death. Smith claims that evidence in the record supports both "the inference that the State undertook to perform the duty Hooper Bay owed its citizens to protect them from overfluoridation" and "the inference that the State undertook only to re-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

921 P.2d 632
921 P.2d 632
(Cite as: 921 P.2d 632)

Page 4

place parts in the fluoride pump." According to Smith, this uncertainty precludes summary judgment, since the nature and extent of the State's duty would differ depending upon which inference is drawn.

II. DISCUSSION

A. Standard of Review

[1][2] We review summary judgments *de novo*. *Dayhoff v. Temsco Helicopters, Inc.*, 848 P.2d 1367, 1369 (Alaska 1993). In reviewing a grant of summary judgment, we must determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts. *Cozzen v. Municipality of Anchorage*, 907 P.2d 473, 475 (Alaska 1995); *Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211, 1215 (Alaska 1991). All reasonable inferences of fact must be drawn in favor of the non-moving party. *Dayhoff*, 848 P.2d at 1369.

B. Nature of the Duty

[3] As the owner and operator of the townsite water system, Hooper Bay is responsible for this system. *See* 18 AAC 80.005. By voluntarily taking action on the Hooper Bay water system, however, the State could have assumed certain duties towards third persons who rely on the system. "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if ... he has undertaken to perform a duty owed by the other to the third person[.]" *City of Kotzebue v. McLean*, 702 P.2d 1309, 1313 n. 4 (Alaska 1985) (quoting Restatement (Second) of Torts § 324A (1965)).

[4][5][6] The "precise nature and extent" of a duty "is a question of law which can be decided at the summary judgment stage." *Mulvihill v. Union Oil Co.*, 859 P.2d 1310, 1314 n. 4 (Alaska 1993). As a question of law, it is a question for the court and not the jury to answer. "Although the precise nature and extent of that duty is a question of law," however, "it depends on the nature and extent of the act undertaken, a question of fact." *Estate of Breitenfeld v. Air-Tek, Inc.*, 755 P.2d 1099, 1102 (Alaska 1988).

[7][8] Where reasonable people could differ over the nature and extent of the act undertaken, summary judgment is inappropriate,* since the scope of the assumed duty will vary depending on the inferences drawn from the facts. *See Saddler v. Alaska Marine Lines, Inc.*, 856 P.2d 784, 789 (Alaska 1993) (reasonable inference could be drawn that common carrier had undertaken performance of services necessary for protection of workers; inference created material issue of fact concerning carrier's assumed duty, requiring reversal of summary judgment). Where reasonable people could not differ over the nature and extent of the act undertaken, summary judgment is appropriate, insofar as there is no question as to whether the duty the undertaking gave rise to was fully discharged. *See Mulvihill*, 859 P.2d at 1314 (reasonable people could not differ on nature and extent of voluntary undertaking when defendant "only agreed to drive [co-employee] home;" summary judgment properly granted because duty assumed through this undertaking was fully discharged); *Breitenfeld*, 755 P.2d at 1103 ("reasonable minds could not reach divergent conclusions concerning the nature of the acts undertaken" by electrical repair contractor; contractor undertook only to order replacement part, which it did).

[9] The superior court concluded that "[t]he facts regarding the State's limited involvement with the water system are not in dispute, as the parties agree there was only the repair of the pump;" therefore "[t]he legal duty which would flow from that is a question of law and public policy, not fact." This conclusion is mistaken, because the appropriateness

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

921 P.2d 632
921 P.2d 632
(Cite as: 921 P.2d 632)

Page 5

of the grant of summary judgment in this case cannot be decided simply as a question of law but is instead dependent on the nature and extent of the undertaking, a question of fact. The repair of the pump may have been a complete undertaking in and of itself, or it may have been the initiation of a broader undertaking to resolve the fluoride problem. While it may be true that the underlying facts of the case-what was said and what was done-are not in dispute, these underlying facts may be capable of supporting different inferences as to the nature and extent of the State's undertaking in working on the Hooper Bay water system. If the record can support these competing inferences, a genuine issue of material fact concerning the nature and extent of the duty assumed by the State would exist, precluding summary judgment.

We conclude that the record can support such competing inferences. A reasonable person could infer, from the evidence in the record, that the State had undertaken to resolve the fluoride problem, thereby assuming a duty towards Smith and other Hooper Bay water users to complete this undertaking in a non-negligent manner.

First, statements made by State employees prior to the work on the pump support the inference that, in sending its engineers to Hooper Bay, the State undertook to resolve the fluoride problem at a systemic level. Steve M. Weaver, an engineer with the Village Safe Water (VSW) section of the Alaska Department of Environmental Conservation (ADEC), testified that Lynn Cochran, another ADEC employee, had asked VSW to "check on the fluoridation system." VSW engineer Mac MacPhee also stated that "the sanitarian in Bethel had mentioned that the fluoride readings in the old watering point were erratic and had requested we look at the system."

Second, statements by MacPhee support the inference that, when he and fellow VSW engineer Doug Poage arrived in Hooper Bay, their undertaking was not limited to the specific task of installing parts to the pump but involved other actions intended to correct the fluoride problem generally. MacPhee stated that they conducted a general inspection of the system in addition to installing the pump parts. They took water samples, inspected the "well pump wiring and other wiring in the building," and "discussed the replacement of all the wiring and conduit." Finally, before leaving Hooper Bay they gave the lead operator at the townsite water system, Hooper Bay employee Adrian Lake, instructions to test the fluoride level twice a day and disconnect the fluoride pump if the level reached a certain point. They prepared a "sheet for Adrian to record water usage daily and [ ] showed Adrian how to read and record the totals from the water meter."

Third, statements made and actions taken by State employees during the weeks that followed the pump work support the inference that the State had undertaken to see to *636 it that the fluoride problem was kept under control. Poage made a follow-up call, a week after the work was performed on the pump, to see what the fluoride level was. Weaver testified that Poage had planned a meeting in Hooper Bay to "look at the fluoridator and resolve the problem" after high fluoride levels persisted. Weaver "said no" to this plan, not because of a belief that the State had already discharged the only duty it had assumed, but because "[w]e're going to gut that building in less than two weeks and throw all that stuff away; we don't need to waste time on it now." Weaver instead instructed that the fluoride pump should be shut off in the meantime, until the rehabilitation was underway.

Viewing this evidence in the light most favorable to Smith, as we must, it raises a genuine issue of material fact whether the State undertook to correct the fluoridation problem and thereby assumed the duty to complete this task non-negligently. A jury could infer from this evidence that the State had stepped in and taken on the responsibility of keeping fluoride levels under control during the time it would take to get the rehabilitated townsite water system up and running.[FN1] Summary judgment was inappropriate when the evidence could support this in-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

921 P.2d 632
921 P.2d 632
**(Cite as: 921 P.2d 632)**

Page 6

ference.

> FN1. This inference seems particularly plausible in light of VSW's perception that Hooper Bay was unable to manage the townsite water system effectively. Weaver testified that "Hooper Bay was at a point in their organizational structure where they were unable to operate their existing facilities correctly," and that there was need for "a training program and an education program" in addition to the physical rehabilitation of the plant. A reasonable person could infer that the State, having concluded that Hooper Bay was unable to manage its own water system, had undertaken the task of bringing the fluoride problem under control during the weeks prior to the full rehabilitation of the sys-tem.

Because reasonable jurors could differ over the inferences that should be drawn regarding the nature and extent of the State's undertaking, a material issue of fact existed as to the duty the State had assumed, one that should have precluded summary judgment.

III. *CONCLUSION*

We reverse the summary judgment and remand for a trial on the merits.

Alaska,1996.
Smith v. State
921 P.2d 632

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.