Westlaw.

174 P.3d 757
174 P.3d 757
**(Cite as: 174 P.3d 757)**

Parnell v. Peak Oilfield Service Co.
Alaska,2007.

Supreme Court of Alaska.
Shannon PARNELL, Appellant/Cross-Appellee,
v.
PEAK OILFIELD SERVICE CO.; Peak Alaska
Ventures, Inc.; and Nabors Alaska Services Corp.,
Appellees/Cross-Appellants.
**Nos. S-11880, S-11896.**

Nov. 9, 2007.
As Modified on Rehearing Jan. 29, 2008.

**Background:** Vehicle passenger, injured when car in which she was riding struck a dead moose in the road, brought action against the employer of the driver of one of two other vehicles that had initially struck the moose nearly simultaneously. The Superior Court, Third Judicial District, Kenai, Charles T. Huguelet, J., entered judgment on jury verdict in favor of employer. Passenger appealed and employer cross-appealed.

**Holdings:** The Supreme Court, Bryner, J., held that:
(1) imposition of duty to protect others from a hazard did not require determination of which driver was the but-for cause of moose's death;
(2) trial court's failure to properly instruct jury was prejudicial error;
(3) violation of hit and run statute did not give rise to claim for negligence per se; and
(4) employer was vicariously liable for its employee's conduct in the course and scope of employment.

Affirmed in part, reversed in part, and remanded.

West Headnotes

**[1] Negligence 272 ☞220**

272 Negligence

272II Necessity and Existence of Duty
272k220 k. Protection Against Acts of Third Persons. Most Cited Cases
Generally, the law of torts imposes no duty on a person to protect others from harm by a third party.

**[2] Negligence 272 ☞220**

272 Negligence
272II Necessity and Existence of Duty
272k220 k. Protection Against Acts of Third Persons. Most Cited Cases

**Negligence 272 ☞421**

272 Negligence
272XIII Proximate Cause
272k420 Concurrent Causes
272k421 k. In General. Most Cited Cases
In the case of multiple actors, the duty of care arising when an actor does an act and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another is not limited to the actor who can be proved to be the but-for cause of the hazard; hazard is "created" by multiple actors when each actor's conduct substantially contributed to the resulting hazard and each actor realizes the resulting danger of serious harm to others. Restatement (Second) of Torts § 321.

**[3] Automobiles 48A ☞290**

48A Automobiles
48AVI Injuries from Defects or Obstructions in Highways and Other Public Places
48AVI(A) Nature and Grounds of Liability
48Ak290 k. Liabilities of Contractors, Public Utilities, and Others. Most Cited Cases
Duty of care arising when an actor does an act and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another applied to both of two drivers who jointly created a roadway hazard by hitting a moose almost simultaneously, causing moose carcass to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 48–A

174 P.3d 757
174 P.3d 757
**(Cite as: 174 P.3d 757)**

Page 2

come to rest in the middle of the roadway; imposition of duty did not require determination of which driver was the but-for cause of moose's death. Restatement (Second) of Torts § 321.

**[4] Appeal and Error 30 ☜1064.1(4)**

30 Appeal and Error
  30XVI Review
    30XVI(J) Harmless Error
      30XVI(J)18 Instructions
        30k1064 Prejudicial Effect
          30k1064.1 In General
            30k1064.1(2) Particular Cases
              30k1064.1(4) k. Passengers, Pedestrians, Children and Cyclists, Automobiles. Most Cited Cases
Trial court's failure to properly instruct jury, that duty of care arising when an actor does an act and subsequently realizes that it has created an unreasonable risk of causing physical harm to another was not limited to the actor who can be proved to be the but-for cause of the hazard, was prejudicial error in vehicle passenger's action, against the employer of the driver of one of two other vehicles that had initially struck a moose nearly simultaneously, to recover for injuries sustained when car in which she was riding subsequently struck the dead moose in the road; instructions as given could have permitted jury to improperly conclude that vehicle passenger could recover only if it found that moose's death was actually caused by the employer's employee, rather than by the unknown second driver. Restatement (Second) of Torts § 321.

**[5] Appeal and Error 30 ☜893(1)**

30 Appeal and Error
  30XVI Review
    30XVI(F) Trial De Novo
      30k892 Trial De Novo
        30k893 Cases Triable in Appellate Court
          30k893(1) k. In General. Most Cited Cases
In determining whether the jury was properly in-

structed on the applicable law, appellate court reviews the trial court's rulings de novo.

**[6] Appeal and Error 30 ☜1064.1(1)**

30 Appeal and Error
  30XVI Review
    30XVI(J) Harmless Error
      30XVI(J)18 Instructions
        30k1064 Prejudicial Effect
          30k1064.1 In General
            30k1064.1(1) k. In General.
Most Cited Cases
An instruction that sets out an incorrect or incomplete statement of the applicable law amounts to reversible error only if it causes substantial prejudice to a party; that is, only if it can be said that the verdict may have been different had the erroneous instruction not been given.

**[7] Appeal and Error 30 ☜1064.1(1)**

30 Appeal and Error
  30XVI Review
    30XVI(J) Harmless Error
      30XVI(J)18 Instructions
        30k1064 Prejudicial Effect
          30k1064.1 In General
            30k1064.1(1) k. In General.
Most Cited Cases
When evaluating whether there has been prejudicial error with regard to jury instructions, the reviewing court must put itself in the position of the jurors and determine whether the error probably affected their judgment.

**[8] Negligence 272 ☜259**

272 Negligence
  272IV Breach of Duty
    272k259 k. Violations of Statutes and Other Regulations. Most Cited Cases
Negligence per se cannot apply in a particular case unless the trial court first determines that the conduct at issue lies within the ambit of the statute or regulation in question.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

174 P.3d 757
174 P.3d 757
**(Cite as: 174 P.3d 757)**

Page 3

**[9] Automobiles 48A ⟲253**

48A Automobiles
  48AVI Injuries from Defects or Obstructions in Highways and Other Public Places
    48AVI(A) Nature and Grounds of Liability
      48Ak253 k. Requirements of Statutes and Ordinances. Most Cited Cases

**Automobiles 48A ⟲290**

48A Automobiles
  48AVI Injuries from Defects or Obstructions in Highways and Other Public Places
    48AVI(A) Nature and Grounds of Liability
      48Ak290 k. Liabilities of Contractors, Public Utilities, and Others. Most Cited Cases

**Automobiles 48A ⟲336**

48A Automobiles
  48AVII Offenses
    48AVII(A) In General
      48Ak336 k. Neglect of Duty After Accident. Most Cited Cases
Driver's alleged violation of hit and run statute, by failing to report collision with moose that resulted in property damage to an apparent extent of $2000 or more, did not give rise to claim for negligence per se in action brought by a vehicle passenger who was injured when the car in which she was riding subsequently struck the dead moose in the road; purpose of statute was to prohibit hit-and-run driving in order to prevent drivers from escaping liability and to ensure the availability of prompt assistance to motorists in distress, not to protect the motoring public from any hazards associated with the accident. AS 28.35.080.

**[10] Automobiles 48A ⟲253**

48A Automobiles
  48AVI Injuries from Defects or Obstructions in Highways and Other Public Places
    48AVI(A) Nature and Grounds of Liability
      48Ak253 k. Requirements of Statutes and Ordinances. Most Cited Cases

**Automobiles 48A ⟲336**

48A Automobiles
  48AVII Offenses
    48AVII(A) In General
      48Ak336 k. Neglect of Duty After Accident. Most Cited Cases
Purpose of hit-and-run statute, requiring any driver involved in an accident that results in death, personal injury, or total property damage to an apparent extent of $2000 or more to notify the police or the Department of Public Safety immediately by the quickest means of communication, is to prohibit hit-and-run driving in order to prevent drivers from escaping liability and to ensure the availability of prompt assistance to motorists in distress, not to protect the motoring public from any hazards associated with the accident. AS 28.35.080.

**[11] Automobiles 48A ⟲306(2)**

48A Automobiles
  48AVI Injuries from Defects or Obstructions in Highways and Other Public Places
    48AVI(B) Actions
      48Ak306 Weight and Sufficiency of Evidence
        48Ak306(2) k. Negligence in General. Most Cited Cases
Even if hit-and-run statute provided basis for negligence per se liability on part of driver to passenger in another vehicle that hit dead moose, evidence that total value of repairs on driver's truck following initial collision that killed moose exceeded $2000 was insufficient to support finding that driver violated hit-and-run statute by failing to report the accident, where some repair items appeared unrelated to collision, and damage to underside of truck was not "apparent" within meaning of hit and run statute. AS 28.35.080.

**[12] Automobiles 48A ⟲336**

48A Automobiles
  48AVII Offenses
    48AVII(A) In General

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

174 P.3d 757
174 P.3d 757
(Cite as: 174 P.3d 757)

Page 4

48Ak336 k. Neglect of Duty After Accident. Most Cited Cases
Requirement that value of damage be "apparent," in hit-and-run statute requiring that a driver report an accident that results in total property damage to an apparent extent of $2000 or more, refers to property damage that can be readily detected and evaluated by motorists at an accident scene. AS 28.35.080.

[13] Negligence 272 ⬅⟹210

272 Negligence
    272II Necessity and Existence of Duty
        272k210 k. In General. Most Cited Cases
Analysis to determine whether a common law duty should be recognized where none otherwise exists is appropriate only in the absence of any other source of a duty of care, imposed, for example, by statute, contract, or doctrine of law.

[14] Labor and Employment 231H ⬅⟹3045

231H Labor and Employment
    231HXVIII Rights and Liabilities as to Third Parties
        231HXVIII(B) Acts of Employee
            231HXVIII(B)1 In General
                231Hk3044 Scope of Employment
                    231Hk3045 k. In General. Most Cited Cases
Under the doctrine of "respondeat superior," an employer is liable for the negligent acts or omissions of an employee only if the acts or omissions occur within the course and scope of employment.

[15] Automobiles 48A ⬅⟹290

48A Automobiles
    48AVI Injuries from Defects or Obstructions in Highways and Other Public Places
        48AVI(A) Nature and Grounds of Liability
            48Ak290 k. Liabilities of Contractors, Public Utilities, and Others. Most Cited Cases
Employee driving employer-owned truck was acting in the course and scope of employment when he struck a moose on roadway while en route to pick up other workers and drive them to the jobsite, thus making employer vicariously liable for employee's negligence in failing to protect other motorists from a roadway hazard that he created; although employer did not pay employee to drive other workers, employer allowed employee to have truck with the understanding that he would use it to commute to the jobsite with his co-workers, and employer authorized employee to perform such task on a regular basis and derived a significant benefit from employee's willingness to do so. Restatement (Second) of Agency §§ 228, 229; Restatement (Second) of Torts § 321.

*759 Michael W. Flanigan, Walther & Flanigan, Anchorage, for Appellant/Cross-Appellee.
Gary A. Zipkin and Susan M. West, Guess & Rudd, Anchorage, for Appellees/Cross-Appellants.

Before: FABE, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

I. INTRODUCTION

Two vehicles traveling in opposite directions at a curve on the Kenai Spur Highway hit a moose at nearly the same time; the impact killed the moose and left its carcass straddling the centerline. Both drivers left the scene. Soon after, another car rounded the curve, struck the carcass, and ran off the road, seriously injuring one of its occupants. Section 321 of the Restatement (Second) of Torts recognizes that a person whose actions have "created" a hazard owes a duty of due care to protect others from the danger. The main question raised here is whether each of the drivers who initially struck the moose owed a duty of due care on account of creating the hazard, even though only one of them might have actually caused the moose's death. Because the language of section 321 and the public policy underlying that provision favor imposing the duty on both drivers so long as each act-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

174 P.3d 757
174 P.3d 757
**(Cite as: 174 P.3d 757)**

Page 5

ively participated in the incident that created the hazard and realized that a substantial danger to others resulted, we conclude that the duty should not be restricted to the driver whose vehicle actually killed the moose.

## II. FACTS AND PROCEEDINGS

### A. Facts

On the morning of April 21, 2002, at about 4:30 a.m., Marvin Dougherty left his home near Nikiski on the Kenai Peninsula for his job at the Swanson River oilfield. The jobsite is about twenty-five miles off the Spur Highway and is accessible only by a rough gravel road. Dougherty, a pipe welder, was driving a 3/4 ton pickup owned by his employer, Peak Oilfield Service Co. Dougherty planned to stop at the Fred Meyer store in Soldotna on his way to the jobsite to pick up several Peak co-workers-a task he performed regularly as a condition of being allowed to use Peak's truck.

At about 4:45 a.m. Dougherty was near milepost six on the highway, driving toward Soldotna; conditions were icy. As Dougherty rounded an unlit curve, traveling about forty-five to fifty miles per hour, he hit a moose that had just been struck and knocked into his lane by an oncoming car. Upon impact, Dougherty's pickup pushed the moose-by then presumably dead-about twenty-five feet down the road and toward the centerline of the highway. Dougherty pulled over briefly to see if his pickup had any road flares or a tow strap but found neither in the truck. Dougherty did not have a cell phone and did not attempt to find a nearby phone to call the police. He decided to drive on to the Soldotna Fred Meyer and to return to the accident scene after telling his co-workers that they would have to make their own arrangements for getting to work. Dougherty later acknowledged that he "made a bad choice" by continuing on to Fred Meyer and that he thought that "the right thing to do ... after striking the moose" would have been to "go back there and put [his] four-ways on and put some flares out, if

[he] had some."

The driver of the oncoming car who initially struck the moose also failed to stop, and was never identified. In later proceedings *760 the parties referred to the unidentified driver as "John Doe."

The moose strike was witnessed by David Poulin, another Peak employee, who happened to be driving behind Dougherty when his truck hit the moose. Poulin saw the unidentified vehicle approaching from the opposite direction and then noticed a moose dart into the road directly in front of it. According to Poulin, the headlights of the unidentified vehicle "kind of went blurry." Poulin did not see the actual impact between the moose and the oncoming vehicle but recalled seeing the moose flying into Dougherty's lane "in a most unnatural position." Poulin also recalled seeing Dougherty's truck swerve, trying to avoid the moose. At the same time, Poulin slammed on his brakes. His vehicle skidded toward the right, almost onto the rumble-strip, but stayed in its lane. By the time he came to a stop, the moose's head lay on the ground slightly in front of his vehicle and just to the left. Poulin then saw Dougherty's truck continue on toward Soldotna.

About fifteen to twenty minutes after Dougherty left the scene, Shawn Moore and his passenger, Shannon Parnell, rounded the same curve on the Kenai Spur Highway; like Dougherty, they were headed toward Soldotna. Both had been drinking at the Rainbow Bar in Kenai, and Moore had offered Parnell a ride home. Moore suddenly saw a "white lump" in his lane of travel. A second or two later, he hit the moose. His truck swerved to the right and into a ditch, where it flipped over, crushing the cab. Parnell suffered serious injuries, which eventually left her quadriplegic. Moore, who was not seriously injured, then ran to a nearby business where a woman agreed to call 911.

Meanwhile, after reaching Soldotna, Dougherty told his co-workers that he needed to return to the accident scene. By the time he retraced his route

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

174 P.3d 757
174 P.3d 757
**(Cite as: 174 P.3d 757)**

Page 6

and returned to milepost six, Kenai Police officers had arrived at the accident scene. After Dougherty contacted them, the officers inspected his truck for damage and found moose flesh and debris hanging from the truck's undercarriage but detected little or no damage above the front bumper.

**B. Proceedings**

Parnell eventually sued Dougherty's employer, Peak Oilfield Service Co., and other related business entities (collectively "Peak"). She claimed that Dougherty had been negligent in failing to remove the moose from the highway or warn other drivers of the hazard and that Peak was vicariously liable for Dougherty's actions because Dougherty had been acting in the course of his employment at the time of the collision.

Both parties moved for summary judgment on the issue of Dougherty's alleged negligence; Parnell also moved for partial summary judgment declaring that Peak would be vicariously liable for Dougherty's conduct if he were found to have acted negligently. Peak conceded that if Dougherty created the hazard on the highway, he would have been negligent in failing to warn other drivers or remove the hazard. But Peak argued that the unknown driver who first struck the moose was solely responsible for creating the hazard because it was that vehicle that killed or mortally wounded the moose. Peak reasoned that, since Dougherty had not created the hazard, he had no duty to remove it from the highway or to warn other motorists of its presence.

For her part, Parnell claimed that Dougherty was liable on a theory of negligence per se. Alleging that the evidence unequivocally established that Dougherty was on the job when he struck the moose, Parnell also claimed she was entitled to a judgment that, as Dougherty's employer, Peak was vicariously liable for his negligent conduct.

Superior Court Judge Charles T. Huguelet denied

both parties' motions for summary judgment on the issue of Dougherty's duty. Judge Huguelet ruled that if Dougherty created the hazard, he owed a duty of due care to protect other motorists from the danger as a matter of law, but that the issue of whether Dougherty actually created the hazard raised disputed questions of fact for the jury. But the judge did grant Parnell's motion for partial summary judgment on the issue of Peak's vicarious liability, ruling as a matter of law that Dougherty was acting within the *761 course of his employment when his pickup struck the moose.

After trial the jury returned a verdict in Peak's favor, finding that Dougherty had not been negligent. The superior court entered final judgment in Peak's favor, denying Parnell's motions for directed verdict and for judgment notwithstanding the verdict.

Parnell appeals. Peak cross-appeals.

**III. DISCUSSION**

**A. Parnell's Appeal**

**1. Failure to instruct on Parnell's theory that both drivers participated in creating the hazard**

As already mentioned, the superior court ruled before trial that if Dougherty created a hazardous condition on the highway, he owed a duty of due care to remove the hazard or warn other motorists of the danger but also ruled that whether Dougherty actually created the hazard raised disputed questions of fact for the jury. This ruling comports with section 321 of the Restatement (Second) of Torts, which states: "If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect." [FN1]

> FN1. RESTATEMENT (SECOND) OF TORTS § 321 (1965).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

174 P.3d 757
174 P.3d 757
**(Cite as: 174 P.3d 757)**

On appeal, Parnell argues that the superior court erred in refusing to instruct that Dougherty and the driver of the oncoming car-John Doe-both owed a duty of due care if they both participated in creating the hazard. Before considering this argument or Peak's response, we must briefly describe its factual and procedural background.

After the superior court ruled that the issue of duty was governed by a standard similar to the one set out in Restatement Section 321, Parnell submitted a proposed instruction seeking to inform the jury that a duty of due care arises "if a driver, *by his actions, or in combination with others, creates or participates in the creation of a hazard* in a roadway." (Emphasis added.) The court declined to give Parnell's proposed instruction, and instead simply instructed the jury that Dougherty owed a duty of due care if he "created a hazard or hazardous condition on the highway."

The issue of joint participation in creating a hazard surfaced again after the jury began its deliberations. The court received a note from the jury foreperson seeking to clarify the jury instructions defining negligence. The note specifically focused on the last paragraph of Instruction No. 23. That paragraph and the one immediately before it described the elements of duty and breach that the jury needed to find in order to hold Peak liable for Parnell's damages or, conversely, to absolve Peak of negligence:

If you find it is more likely true than not true that Marvin Dougherty created a hazard or hazardous condition on a highway, then Marvin Dougherty had a duty to take reasonable actions to remove the hazard or warn others of its presence. If you find that Marvin Dougherty created a hazard or hazardous condition on a highway and failed to take reasonable actions to remove the hazard or warn others of its presence, then you must find that Peak was negligent.

If, on the other hand, you find that Marvin Dougherty did not create a hazardous condition on a highway then you must find that Peak was

not negligent. **OR,** if you find that Marvin Dougherty created a hazardous condition **AND** took reasonable actions to remove the hazard or warn others, then you must find that Peak was not negligent.

In light of the jury note seeking to clarify the last of these two paragraphs, Parnell renewed her earlier request for a supplemental instruction to inform the jury that a hazard could be created by the combined actions of more than one driver; specifically, Parnell proposed to answer the jury's question with a supplemental instruction stating:

A person creates a hazard on the roadway if they strike a moose and either directly or in combination with another vehicle striking the moose cause the moose to become a hazard in the roadway, even if *762 the striking of the moose [occurred] due to no fault of the motorist.

The superior court declined to give the supplemental instruction, electing instead to respond to the jury's note by simply referring back to the original instructions defining "negligence" and "a hazard or hazardous condition on a highway." The court's response stated: "Marvin Dougherty had a duty to act with reasonable care as defined in Instruction 21 if he created the hazardous condition on the highway as defined in Instruction 25."

Parnell now asserts that an instruction on the issue of joint creation was crucial because undisputed evidence showed that Dougherty's truck and the John Doe vehicle were involved in "near simultaneous collisions with the moose." Parnell reasons that, although these circumstances make it clear that both vehicles substantially contributed to the moose's presence on the highway, the precise extent of each vehicle's contribution to the hazard remained unknowable, thus precluding any definitive determination as to which vehicle actually killed or disabled the moose. Parnell takes the position that the jury reasonably could have found that both drivers participated in creating the hazard and that both owed a duty of due care toward other motor-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

174 P.3d 757
174 P.3d 757
**(Cite as: 174 P.3d 757)**

ists. Parnell faults the trial court for declining to give the instruction she proposed before trial and the supplemental instruction she proposed in response to the jury's post-trial request for clarification of Instruction 23. She insists that, by failing to clarify the meaning of "created a hazard," the instructions became "highly misleading" because they left the jury with the false impression that it faced an "all or nothing" choice as to which driver actually killed or mortally wounded the moose. In Parnell's view, then, the court's failure to give her proposed supplemental instruction deprived her of the right to inform the jury of her theory of the case.

Peak responds that the court correctly instructed the jury that Dougherty had a legal duty to remove the moose or warn others of its presence only if Parnell proved that Dougherty "created the hazard" himself by actually killing or mortally wounding the moose. In effect, then, Peak insists that the jury was properly told that Dougherty owed no duty to protect Parnell from harm unless the jury found that he was the actual, or but-for, cause of the moose's presence on the highway. In Peak's view, a "joint participation" instruction like the one proposed by Parnell would unjustifiably expand the Restatement's duty by imposing potential liability on any driver who happened to run over an animal carcass, unless the driver stopped and proceeded to remove the hazard or warn other motorists of its presence.

[1][2] Peak's response to Parnell's argument mistakenly shifts the focus of the inquiry to whether the moose had already been sufficiently disabled so as to be an *existing* hazard when Dougherty struck it. But what is at issue here is not who caused the moose's carcass to be in the road, but rather who had the duty to warn the public of the hazard thus created. Generally, the law of torts imposes no duty on a person to protect others from harm by a third party.[FN2] But as we have recognized in earlier cases,[FN3] section 321 of the Restatement (Second) of Torts carves out an exception to this rule by imposing a duty of care when an "actor does an act,

and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another." [FN4]

> FN2. *See, e.g., Bryson v. Banner Health Sys.,* 89 P.3d 800, 804 (Alaska 2004); *Dore v. City of Fairbanks,* 31 P.3d 788, 793 (Alaska 2001).

> FN3. *See Bryson,* 89 P.3d at 804 n. 8 (noting that section 321 creates an exception to the usual rule that no duty exists to protect others from harm by third persons).

> FN4. RESTATEMENT (SECOND) OF TORTS § 321.

The controversy here turns on the precise meaning of section 321's language requiring that the actor's act must have "created" the ensuing danger. Because the proper interpretation of "created" raises a question of duty, we must answer this question by focusing on the protective policies underlying section 321, not by supporting an analysis designed to decide issues of proximate causation.*763 [FN5] On prior occasions we have emphasized that "duty is at heart a question of policy centering on the basic relationship between the parties rather than on the nature of their conduct on a given occasion. Particular conduct becomes important only when a duty is imposed [.]" [FN6]

> FN5. *See, e.g., Bolieu v. Sisters of Providence in Washington,* 953 P.2d 1233, 1241 (Alaska 1998) ("[F]act-intensive inquiries pertain to the issues of breach, causation, and damages, not the threshold legal question of whether a duty exists.").

> FN6. *Mesiar v. Heckman,* 964 P.2d 445, 448-49 (Alaska 1998); *see also City of Kotzebue v. McLean,* 702 P.2d 1309, 1313 (Alaska 1985) (quoting WILLIAM L. PROSSER, THE LAW OF TORTS § 53, at 325 (4th ed.1971), for the proposition that duty "is only an expression of the sum

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.