

# U.S. CONSUMER PRODUCT SAFETY COMMISSION
## WASHINGTON, DC 20207

February 6, 2002

Mr. Peter Rush
Executive Director
Window Covering Manufacturers Association, Inc.
355 Lexington Avenue
New York, NY 10017-6603

Dear Mr. Rush:

I am writing to express my concern about the limited progress that has been made by the Window Covering Manufacturers Association (WCMA) Technical Committee in revising the American National Standard for Safety of Corded Window Covering Products (ANSI/WCMA A100.1). The staff of the U.S. Consumer Product Safety Commission (CPSC) is pleased that the latest proposed revision of the voluntary standard includes provisions that address inner cord strangulations. However, the staff believes that the standard does not adequately address other potential sources of strangulation from window covering cords. For example, children can strangle in the loop above a stop ball and in the looped cords that raise and lower roll-up blinds, yet the revised standard continues to permit products with these features.

In a letter to WCMA dated January 19, 2001, Ron Medford provided the WCMA with CPSC staff recommendations for revisions to the existing voluntary industry standard. The staff recommendations included a proposed requirement that would limit all exposed free-hanging cords to no more than 7.25 inches in length when the window-covering product is in any position (raised or lowered). Children can and do strangle on individual cords that wrap around their necks, and the CPSC staff believes that a 7.25-inch maximum-length requirement on exposed cords could substantially reduce the potential for these incidents. During the January 23, 2001 meeting of the WCMA Technical Committee, the Committee agreed to address this revision to the standard within the year and to present the CPSC staff with new designs based on this proposed requirement within four months of the meeting. Now, more than one year later, the standard still does not include this proposed requirement and we have yet to receive any information on new designs or prototypes based on it.

The January 19, 2001 letter included a table that summarized incidents from 1997 through January 2000 that involved exposed cords. Listed in this table were two deaths and four near-strangulations. Since that time, we have received three additional deaths and two additional near-strangulations associated with blinds that meet the 1996 voluntary standard, as shown in the following table.

0018867

February 6, 2002

Recent Incidents Associated With Blind Cords That Meet The 1996 Voluntary Standard:

| Report Number | Incident Date | Victim Age & Sex | Window-Covering Type | Incident Summary |
|---|---|---|---|---|
| 000714CNE5665 | 3/17/00 | 2 yr., Male | Venetian with four cords above stop | Found with neck in loop above stop ball; death |
| 020107CCN0223 | 1/5/01 | 3 yr., Male | Mini with two separate cords and inner cord stops | Cords tangled together at inner cord stops and formed loop; near-strangulation |
| 010614CBB2575 | 4/22/01 | 1 yr., Female | Mini with two separate cords | Single cord wrapped around neck; death |
| 010625CCN0689 | 6/7/01 | 4 yr., Male | Mini with two separate cords | Cords wrapped around neck six times; passerby saw child and called fire department; near-strangulation |
| 010815CNE6651 | 8/10/01 | 6 yr., Female | Mini with two separate cords | Cords knotted together to form loop; death |

The WCMA Technical Committee's proposed 2001 revision to the standard, which includes provisions to reduce the incidence of inner cord strangulations, would not have prevented these incidents. However, it is the belief of CPSC staff that products meeting the 7.25-inch maximum-length recommendation would prevent such incidents.

In 2001, at least four deaths and one near-strangulation occurred in continuous loop cords or chains. During the June 26, 2001 meeting with the WCMA Technical Committee, CPSC staff requested that manufacturers develop continuous cord products (i.e., those that make use of a tension device) that will not function unless the tension device is attached to a wall. Such a design would ensure that most consumers install the device properly, thereby reducing the likelihood of strangulation. Despite assurances from industry representatives during the meeting that such a design is possible, should be simple to implement, and would be investigated further, we have seen no designs or prototypes that are based on this concept.

CPSC staff also reaffirms its opposition to the use of a generic hang tag, which is currently permitted in the 2001 revision to the standard, in place of an operational hang tag. At the request of the Technical Committee, CPSC staff developed revised operational hang tags to reduce the amount of redundant and extraneous information presented to consumers. The goal was to replace the multiple hang tags that are currently attached to each product with a single hang tag that includes hazard information associated with those features, and only those features, present in the window covering product in question. A generic hang tag is inconsistent with this goal since it discusses hazards associated with features that may or may not be present on the product to which it is attached. Consumers who are warned about nonexistent or irrelevant hazards may disregard other, potentially relevant information presented in the label.

The WCMA Technical Committee asserts that permitting the use of a generic hang tag was done for practicality since smaller manufacturers would be unable to stock all alternative hang tags. However, manufacturers are currently required to attach multiple hang tags to each product. It seems unlikely that the use of a single operational hang tag for each product would require

February 6, 2002

manufacturers to stock a greater number of alternative hang tags than is currently the case. The Committee also claimed that a generic hang tag would help prevent companies from accidentally attaching the wrong hang tag to the product. Yet the substitution of an incorrect hang tag seems no more likely with the revised operational hang tags than is currently the case with the use of multiple hang tags. Once again, CPSC staff recommends that the option of using a generic hang tag be removed from the revised standard.

CPSC staff believes the voluntary standard must contain provisions that will reasonably attempt to eliminate all strangulation hazards from window covering products. While the proposed revision to the voluntary standard is a step in the right direction, it still permits certain conditions that present a strangulation hazard. These are conditions the staff believes could reasonably be eliminated. I would appreciate hearing from you by February 22nd regarding the issues raised in this letter. Please note that these comments represent the views of the CPSC staff, and have not been reviewed or approved by the Commission.

Sincerely,

*Jacqueline Elder*

Jacqueline Elder
Acting Assistant Executive Director