Donald C. Thomas, Esq.
Delaney Wiles, Inc.
1007 W. Third Avenue, Suite 400
Anchorage, AK 99501
phone: (907) 279-3581
fax:    (907) 277-1331
dct@delaneywiles.com

Jameson B. Carroll, Esq.
Michael Weiss, Esq.
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA 30309
phone: (404) 572-2804
fax:    (404) 572-5137
mweiss@kslaw.com
jcarroll@kslaw.com

Attorneys for Defendant
Window Covering Manufacturers Association

IN THE UNITED STATES COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| VALERIE ROUNTREE, individually and as Personal Representative of THE ESTATE OF APRIL LYNNE COX; et al. | ) ) ) Case No. 3:04-cv-0112-JWS ) |
| Plaintiffs, | ) <u>WINDOW COVERING</u> ) <u>MANUFACTURERS</u> |
| vs. | ) <u>ASSOCIATION'S</u> ) <u>REPLY IN SUPPORT</u> |
| WINDOW COVERING MANUFACTURERS ASSOCIATION, | ) <u>OF ITS MOTION FOR</u> ) <u>SUMMARY JUDGMENT</u> ) |
| Defendant. | ) ) |

   Window Covering Manufacturers Association ("WCMA"), named as a defendant in the above-styled action, files this Reply in Support of its Motion for Summary Judgment, respectfully showing the Court as follows:

## **INTRODUCTION**

WCMA moved for summary judgment in this action after two years of discovery uncovered no evidence that would support imposing a duty on WCMA for a product it did not manufacture or sell. In their response, Plaintiffs do not dispute a single one of the facts in WCMA's brief. Instead, they offer 15 pages of *additional* facts, none of which WCMA disputes for purposes of this motion and none of which are relevant to the question of whether WCMA had a legal duty that could make it liable to Plaintiffs.

Alaska law is clear that to recover on a negligent undertaking theory, a plaintiff first must prove one of three circumstances was the proximate cause of her injuries:

1. The defendant's voluntary undertaking *increased the risk* to the plaintiff;

2. The defendant's voluntary undertaking *supplanted the existing duty of another*; or

3. Either the plaintiff or another entity *relied upon* the defendant's voluntary undertaking.

Restatment (Second) of Torts § 324A (quoted in *Kotzebue v. McLean*, 702 P.2d 1309, 1313 n.4 (Alaska 1985)).

Plaintiffs' lengthy recitation of the facts gleaned from the extensive discovery in this case go to the issue of whether WCMA was negligent. But that is not at issue in this motion. What is at issue is whether any alleged negligence by WCMA placed Plaintiffs in a worse position that they would have been had the defendant never acted. That means that Plaintiffs must show that *but for* WCMA's undertaking, the manufacturer of the blinds would have installed some device

to prevent access to the inner cords.[1]  That is what is required in order to establish a duty, and that is precisely the evidence that is missing in this case.

Plaintiffs' own response brief underscores this point.  Their list of facts takes up nearly half of their 33-page brief.[2]  But their argument section makes almost no use of those facts.  For example, on Page 27 of their Response, Plaintiffs do not offer any evidence to support their conclusory statement that WCMA's 1996 safety standard somehow increased the risk to April Cox.  Instead, they write that "the jury will hear substantial evidence" of that.  But if that evidence exists, the time to present it is now.

Plaintiffs are correct that there may be a sufficient dispute of fact as to whether WCMA acted negligently.  But the issue in this motion is not whether WCMA breached a duty to April Cox, it is whether WCMA had a duty to April Cox at all.  In Alaska, the nature and extent of a duty "is a question of law which can be decided at the summary judgment stage." *Mulvilhill v. Union Oil Co.*, 859 P.2d 1310, 1313 n.4 (Alaska 1985).  Having failed to produce any facts supportive of a duty on behalf of WCMA – even after a 33 page response – Plaintiffs' claims must be dismissed as a matter of law.

---

[1]  The core of Plaintiffs' allegations is that WCMA was negligent because the 1996 safety standard addressing strangulations on window blind cords did not include "cord stops," which prevent a child from pulling out the cord that runs through the slats of horizontal miniblinds to form a loop.  Those cord stops were included in the 2002 revision to safety standard.

[2]  Plaintiffs' response is eight pages longer than the 25 pages allotted by Local Rule 10.1(m).  Indeed, Plaintiffs' "Argument" section does not begin until Page 24.  Should the Court strike the remainder of Plaintiffs' response in conformance to the Rule, the brief would barely begin to address WCMA's arguments.

## ARGUMENT AND CITATION TO AUTHORITY

**A.  The facts cited in Plaintiffs' "Argument" section fail to establish any of the required elements of liability for a negligent undertaking.**

    **1.  There is no evidence WCMA increased the risk to April Cox.**

Plaintiffs' argument in this section states that "the fundamental question in this case is why weren't cord stops incorporated into the 1996 WCMA standard." Regardless of this characterization of the case, it clearly is *not* the fundamental question in analyzing whether the law imposes a duty on WCMA to Plaintiffs. That question is whether WCMA's actions increased the risk to April Cox.

    **a.  There is no evidence that the blinds would have been safer had there been no safety standard.**

In this case, there simply is no evidence to support that position that WCMA's actions increased the risk to April Cox.. Plaintiffs' contention is that if the 1996 safety standard required cord stops, the blinds at issue would have included cord stops, and April Cox could not have pulled out the inner cord. (Plfs' Resp. at 26.) In short, they argue that if WCMA had performed its undertaking to create the safety standard differently, the accident would not have occurred.

But there is a fundamental error in Plaintiffs' analysis. When a defendant had no preexisting duty to act, this element is not satisfied with evidence showing an increase in risk between what a defendant did and what the plaintiff contends it should have done. This element requires an increase in risk caused by the defendant's undertaking *as opposed to if the defendant had not acted at all*. *County of Maricopa v. Maberry*, 555 F.2d 207, 225 (9th Cir. Ariz. 1977) ("if the injury would have occurred notwithstanding [the defendant's] faulty assistance, that assistance cannot be deemed the proximate cause of the injury). Plaintiffs concede that any duty

of WCMA arose from a gratuitous undertaking. (Plfs' Response at 15.) Thus, they must show that it was the fact of the undertaking itself that created the increased risk. They must show that if WCMA had never developed the safety standard, the blinds would have included cord stops.

Here, there is no such evidence. The blinds at issue did not contain cord stops. As Plaintiffs repeatedly state, the 1996 safety standard did not mention cord stops. It did not require them, nor did it prohibit them. Regardless of whether the blinds complied with that standard – indeed, regardless of the existence of that standard – the blinds would not have contained cord stops. Plaintiffs have offered *no* evidence to counter that simple statement. There is no evidence that, absent the safety standard, the unknown manufacturer of the blinds would have taken additional safety measures and installed cord stops – an action it was entirely free to do at any time, standard or no standard, as Plaintiffs' expert agrees. (Statler Dep. at 228[3] (Exhibit H to WCMA's Motion).) Without the identity of the manufacturer, there can never be such evidence

### b. There is no evidence the unknown manufacturer did not use cord stops because of WCMA.

Despite four pages of argument on this issue, Plaintiffs offer only one guess why the risk of strangulation was somehow greater with a safety standard than it would have been otherwise. On Page 27, Plaintiffs write that there are "questions of fact" whether the existence of the standard "actually caused [the risk] by encouraging the manufacturer to believe its product was safe because it had followed the standard produced by the WCMA."[4] This line of reasoning fails

---

[3]   For consistency in briefing, the page references to Mr. Statler's deposition transcripts are to the pages of the transcript itself, not to the pages of the exhibit.

[4]   In an entirely different section of their brief, Plaintiffs suggest that WCMA increased the risk of strangulation by preventing the U.S. Consumer Products Safety Commission ("CPSC")

for several reasons. First, there are no "questions of fact" regarding this issue: There is no evidence that the manufacturer believed its product was safe, because there is no evidence from the manufacturer. Second, there is no evidence that the unknown manufacturer (or any manufacturer) used cord stops prior to the existence of the 1996 standard or in the years Plaintiffs contend these blinds were manufactured or sold; thus, there can be no inference that but for the safety standard, the blinds would have included cord stops. Third, Plaintiffs' own experts have stated that whoever manufactured the blinds had an obligation to address the risks of inner cord strangulation irrespective of any action by WCMA. Statler Dep. at 216-17 (Exhibit H to WCMA's Motion)), (Jacobson Dep. at 33-34 (Exhibit J to WCMA's Motion)). If no manufacturer would be relieved of its duty to include cord stops because it complied with the safety standard, it follows that the existence of the standard did not prevent the manufacturer from doing so. While all reasonable inferences are drawn in favor of the plaintiff, it is a plaintiff's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

---

from ordering a recall of blinds or setting its own standard. At best, this theory is pure speculation, and none of plaintiff's experts even came close to offering this opinion. In fact, Plaintiffs' own expert, former CPSC Commissioner Stuart Statler, testified that it would be very difficult for CPSC to take such an action. (Statler Dep. at 37, 113-15 (Supplemental Exhibit H to WCMA's Motion, pages not included in original Exhibit H and are supplemented herein).) But even accepting Plaintiffs' contention, there is no evidence in the record that any recall or imposed standard would have included cord stops. Even though CPSC worked closely with WCMA and the window covering industry in developing the standard – including providing staff members to serve on the committee that wrote the standard, there are no documents in evidence that suggest that CPSC ever raised the issue of cord stops. Plaintiffs' statement is nothing but speculation: There is absolutely no factual predicate for an inference that a recall would have occurred, and if so, that it would have resulted in the change Plaintiffs claim would have prevented their injuries.

Perhaps most telling is Plaintiffs' statement in their Response that "the jury will hear substantial evidence that the wrong standard written by WCMA increased and probably caused the death of April Cox." (Plfs' Resp. at 27.)  Plaintiffs do not identify that evidence, and *none* of the abundant evidence included in their brief supports a claim that the blinds were less safe because of the safety standard.  WCMA has moved for summary judgment.  If Plaintiffs have such evidence, the time to produce it has passed.

  **2. There is no evidence WCMA assumed a duty to the unknown blinds manufacturer or to April Cox.**

Plaintiffs' next argument in their Response is that WCMA assumed duties to the unknown manufacturer of the blinds and to April Cox.  For the first time in this litigation, Plaintiffs allege liability under § 323 of the Restatement (Second) of Torts.  (*See* Plfs' Brf. Regarding Cause of Action Against WCMA at 6 (stating WCMA may be liable under subparts (a), (b), and "arguably (c) of § 324A).)  Regardless of which section is cited, there remains no evidence WCMA assumed another's duty.

  **a. There is no evidence WCMA undertook to supplant the unknown manufacturer's existing duty.**

First, there is no evidence WCMA undertook to supplant, as opposed to supplement, the manufacturer's inherent duty.  *See Blessing v. U.S.*, 447 F. Supp. 1160, 1195 (E.D. Pa. 1978) (duty does not attach when the defendants' undertaking "only parallels the activities required by a duty of another without being an undertaking in substitution for it").  Nor is there evidence the manufacturer delegated this duty to WCMA – and there can never be such evidence, because Plaintiffs have failed to identify the manufacturer.  Plaintiffs' own experts agree that WCMA did not supplant the manufacturers' duty.  (Statler Dep. at 249-50 (Exhibit H to WCMA's Motion);

Jacobson Dep. at 65, 76 (Exhibit J to WCMA's Motion).)  There is no question of fact as to this issue.

Indeed, WCMA could not have supplanted any manufacturer's duty, because it is undisputed it had no control over the manufacturer's actions and no ability to inspect or mandate compliance with the safety standard – a fact also admitted by Plaintiffs' experts.  (Statler Dep. at 249-50 (Exhibit H to WCMA's Motion); Jacobson Dep. at 65, 76 (Exhibit J to WCMA's Motion).)  WCMA presented six Alaska Supreme Court cases in support of this position in its prior summary judgment briefing.  Yet Plaintiffs dispute this authority only by claiming that the defendant in one case, *Smith v. State*, 921 P.2d 632 (Alaska 1996), did not have control over the town water system that caused the plaintiff's fluoride poisoning.  This is flatly wrong:  In *Smith*, not only had the defendant state agency scheduled to begin its repair of the town's water system prior to the incident, and not only had the state already repaired part of the system, but a state engineer instructed the town to turn off the fluoride pump shut off while the state prepared to fix the system.  *Id.* at 633-34, 636.  As stated above, Plaintiffs simply ignore the remaining cases cited by WCMA.

Other cases relied upon by Plaintiffs likewise evidence control of the instrumentality of injury by the defendant.  In *Parnell v. Peak Oilfield Service Co.*, 174 P.3d 757 (Alaska 2008), the plaintiff sued the employer of a driver who struck and killed a moose in the road because the driver left the scene instead of staying to warn other drivers about the hazard; that driver was clearly able to do so.[5]  *Id.* at 759-60.  In *Anderson v. PPCT Management Systems, Inc.*, 145 P.3d

---

[5]     *Parnell* was decided on an entirely different section of the Restatement (Second) of Torts, § 321, which deals with a duty that arises when a defendant "creates" a hazard.  In *Parnell*, there

503, 505-06 (Alaska 2006), the defendant developed the training program at issue, personally trained the instructors and certified the results, and required the instructors to sign an agreement to follow all its procedures without modification.  These cases support WCMA's argument, as do the five cases from around the county WCMA offered to show courts' unwillingness to impose liability on a standards-writing organization – an argument Plaintiffs also do not address.

### b.  There is no evidence WCMA owed a duty directly to Plaintiffs.

Second, Plaintiffs suggest for the first time that WCMA's development of the 1996 safety standard created a duty directly to Plaintiffs.  The only support cited for this proposition is language in the safety standard that states that standards generally are "intended as a guide to aid the manufacturer, the consumer, and the general public."  This statement alone cannot possibly support the imposition of a duty to prevent all injuries from window blinds cords.  First, Alaska cases decided under the direct liability provision of § 323 all require the ability of a defendant to actually prevent the injury.  *See Kotzebue v. McLean*, 702 P.2d 1309 (Alaska 1985) (police sued for failing to respond to threatening phone call knew identity and location of suspect and had power to arrest him); *Adams v. State*, 555 P.2d 235, 240-41 (Alaska 1976) (state fire inspectors had authority to order hazardous conditions corrected).  Second, if "a guide to aid … the general public" about an issue creates a duty to protect every person from harm related to that issue, it would impose liability on every third party who attempts to promote health or safety.  For instance, under this theory, the American Cancer Society could be liable to a plaintiff who believes his diet caused his cancer because its campaign addressed quitting smoking instead of

---

was a question about whether the defendant created the hazard by striking the moose.  There is no evidence that WCMA "created" the hazard in a product it did not manufacture, and this section simply does not apply.

eating right.  Plaintiffs have the burden of showing either an increased harm or their own reliance, something they simply cannot do.[6]

>   B.   **There is no question of fact as to the scope of WCMA's duty.**

WCMA stands foursquare behind its argument on this point in its prior summary judgment briefing.  Plaintiffs make only a half-hearted attempt to counter it, suggesting that there is a question of fact for two reasons:  (1) one sentence in a letter suggests that the staff of the U.S. Consumer Products Safety Commission believed there was a broader duty, and (2) the stated objective of both the 1996 standard and the 2002 standard – which included cord stops – are the same.  Even together, these two isolated statements do not comprise evidence that WCMA intended the 1996 standard to eliminate all strangulations on window blind cords, or to address anything more than strangulations on the loops of pull cords, a fact conceded by Plaintiffs' expert Jon Jacobson.  (Jacobson Dep. at 57-61 (Exhibit J to WCMA's Motion).)  *See In re TMJ Products Liability Litig.*, 113 F.3d 1484, 1493 (8th Cir. 1997) (company's testing of component in defendant manufacturer's products not sufficient to create a broad duty to ensure safety of those products).

First, even if one accepts the CPSC had a different view – a fact disputed by numerous other documents, including the letter in which CPSC accepted the 1996 standard as adequate to "quote" – that is not germane to this analysis.  What someone else believes about the scope of WCMA's undertaking is irrelevant.  Plaintiffs, for instance, also believe that the scope of WCMA's undertaking was broader, but that belief is not evidence.  What matters are WCMA's

---

[6]   Indeed, Plaintiffs' response does not even address WCMA's argument that there is no evidence of reliance on WCMA by either the unknown manufacturer or themselves, presumably because the lack of evidence to support that element is apparent.

intent and WCMA's actions, none of which support a finding of the broad undertaking Plaintiffs seek.

Second, the fact that the language in both standards is identical is meaningless, because both standards *do* have the same objective: to "reduce the possibility of injury." What changed is the means for accomplishing that end: The 1996 standard addressed the vast majority of incidents that involve loops in pull cords, and did so adequately, as Plaintiffs' experts concede. (Statler Dep. at 231 (Exhibit H to WCMA's Motion); Jacobson Dep. at 59-60 (Exhibit J to WCMA's Motion).)

    **C.**    **The common law does not support an imposition of a duty against WCMA.**

Plaintiffs offer no new arguments in this section of their response, and WCMA therefore relies on its prior briefing, except to note that Plaintiffs did not cite any authority to counter or distinguish the case law provided by WCMA in its brief.

### CONCLUSION

WCMA is entitled to summary judgment because there is no evidence that can support the imposition of a duty on WCMA. Accordingly, there can no finding of liability against WCMA as a matter of law.

Respectfully submitted, this 30th day of April, 2008.

                                            DELANEY WILES, INC.
                                            Attorneys for Defendant Window Covering
                                            Manufacturers Association

                                            _s/Donald C. Thomas_____
                                            Donald C. Thomas
                                            Delaney Wiles, Inc.
                                            1007 W. Third Avenue, Suite 400

        Anchorage, Alaska 99501
        phone: (907) 279-3581
        fax:    (907) 277-1331
        dct@delaneywiles.com

        Jameson B. Carroll
        Michael Weiss
        King & Spalding LLP
        1180 Peachtree Street
        Atlanta, GA  30309
        phone: (404) 572-2804
        fax:    (404) 572-5143
        jcarroll@kslaw.com
        mweiss@kslaw.com

### **CERTIFICATE OF SERVICE**

I hereby certify that on 30 April 2008, I caused to be electronically served a copy of the foregoing **WINDOW COVERING MANUFACTURERS ASSOCIATION'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** upon:

    Charles W. Ray, Jr.
    Law Offices of Charles W. Ray, Jr., P.C.
    205 E. Dimond Blvd., No. 531
    Anchorage, AK  99515

    Don C. Bauermeister
    Burke & Bauermeister, P.L.L.C.
    921 West 6th Avenue, Ste. 200
    Anchorage, Alaska 99501

        _s/Donald C. Thomas_____
        Donald C. Thomas