DEPOSITION OF STUART M. STATLER
CONDUCTED ON THURSDAY, JANUARY 24, 2008

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| VALERIE ROUNTREE, individually ) and as Personal Representative ) of THE ESTATE OF APRIL LYNNE ) COX; MORGAN SCHEDIWY, a minor, ) through her natural mother and ) guardian VALERIE ROUNTREE; and ) CHRISTOPHER COX, ) ) Plaintiffs, ) ) vs. ) ) WINDOW COVERING MANUFACTURERS ) ASSOCIATION, ) ) Defendant. ) | Case Number: A04-0112 CV (JWS) |

DEPOSITION OF

STUART M. STATLER

Washington, D.C.

Thursday, January 24, 2008

9:58 a.m.

Job No.: 1-121137
Pages 1 through 263
Reported by: John L. Harmonson, RPR

EXHIBIT
H supp
1 of 6

L.A.D. REPORTING & DIGITAL VIDEOGRAPHY
(202)861-3410 (800)292-4789 (301)762-8282 (703)288-0026 (410)539-3664

f7cdbd99-e668-4efd-a6b8-1be95a488f45

DEPOSITION OF STUART M. STATLER
CONDUCTED ON THURSDAY, JANUARY 24, 2008

Page 37

1      After 1981, with the reauthorization and
2 the changes in the enabling legislation, the
3 commission could no longer do that.  We had to defer
4 to any standards activity taking place within an
5 industry and could only consider a mandatory federal
6 safety standard if we made a finding, if the CPSC made
7 a finding that the industry voluntary effort was
8 deficient or not adequate.  Which is a very difficult
9 thing to do because basically you have to prove a
10 negative.  That continues to be a problem to this day.
11      Q.   But I want to go back to the original
12 question.  From my understanding of your testimony --
13 I don't want to misstate it, so I'm trying to be
14 sure -- you don't have any documents that show any
15 contacts with the WCMA or anyone in the industry prior
16 to -- well, I guess in 1981?
17      A.   No, I -- Prior to 1981, or you mean
18 after --
19      Q.   Let's start with 1981.
20      A.   No, I don't -- whatever documents exist
21 would be in the form of -- that I can recall, would be
22 in the form of what's called voluntary standards

EXHIBIT H supp 2 of 6

L.A.D. REPORTING & DIGITAL VIDEOGRAPHY
(202)861-3410  (800)292-4789  (301)762-8282  (703)288-0026  (410)539-3664

f7cdbd99-e668-4efd-a6b8-1be95a488f45

DEPOSITION OF STUART M. STATLER
CONDUCTED ON THURSDAY, JANUARY 24, 2008

Page 113

1  confidential documents because they are -- they may
2  well be available to the association, but CPSC
3  typically would not make them available.
4         MR. WEISS:  Let's go off the record for
5  just one moment, please, Don.
6         (Off-the-record discussion.)
7  BY MR. WEISS:
8     Q.   You've seen documents from that time frame?
9     A.   I've seen documents from that time frame.
10 I haven't seen the -- any negotiating strategies or
11 discussions or reflecting negotiating strategies and
12 discussions.  I've seen the voluntary corrective
13 action plan itself.
14    Q.   You haven't seen any correspondence back
15 and forth between the WCMA and the CPSC about what
16 that plan might entail and what efforts might be
17 taken?
18    A.   Not that I can recall at this point.
19    Q.   Okay.  But regardless of that, you have not
20 seen anything to suggest that happened?  I understand
21 you think that you don't know that it hasn't.
22    A.   No, I'm not even suggesting that it could

EXHIBIT H supp 3 of 6

DEPOSITION OF STUART M. STATLER
CONDUCTED ON THURSDAY, JANUARY 24, 2008

Page 114

1   happen.
2       Q.   I just want to make sure that we're not --
3       A.   I'm saying that it could have happened.
4       Q.   Okay. But you don't --
5       A.   I'm not suggesting -- what I am -- I do
6   know the way the Section 15 group, the enforcement
7   group has typically operated, and particularly where
8   they're dealing with a generic industrywide hazard,
9   they try and keep that as narrow as possible because
10  they're on -- they're on slimmer legal grounds when
11  they're dealing with an industry at large than when
12  they're dealing with a specific either production or
13  design defect associated with one manufacturer's
14  product.
15      Q.   You had said that the CPSC was prepared
16  to -- and I hope I've got the phrasing right, I know
17  it's a term of art -- declare window blinds a
18  substantial product hazard and go to formal rulemaking
19  if the industry did not comply. Did I say that wrong?
20      A.   Yes.
21      Q.   Okay. Please correct me.
22      A.   There's a -- It's two different animals.

EXHIBIT
H sup
4 of 6

L.A.D. REPORTING & DIGITAL VIDEOGRAPHY
(202)861-3410 (800)292-4789 (301)762-8282 (703)288-0026 (410)539-3664

f7cdbd99-e668-4efd-a6b8-1be95a488f45

DEPOSITION OF STUART M. STATLER
CONDUCTED ON THURSDAY, JANUARY 24, 2008

Page 115

1   Formal rulemaking has nothing to do with Section 15.
2   Formal rulemaking is prospective in its nature.  They
3   could have been willing to do that, but --
4       Q.   What were they willing to do in 1983?
5       A.   Let me just clarify for the record.  To the
6   extent you're dealing with the prospective, the future
7   correction of a problem, that is a problem of new
8   product being produced as of that date, you're dealing
9   with rulemaking.
10           To the extent you're dealing with product
11  already on the market or in people's homes, you're
12  dealing with product correction.  Product correction
13  can only be accomplished through the Section 15
14  process.
15           Future production can only be accomplished
16  through the rulemaking process.
17      Q.   What was it that when CPSC drafted a
18  voluntary corrective action plan and approached the
19  industry, and again I hope I'm saying this right, that
20  they essentially said you take action or we're going
21  to take action --
22      A.   That's right.

EXHIBIT
H supp
5 of 6
Blumberg No. 5119

L.A.D. REPORTING & DIGITAL VIDEOGRAPHY
(202)861-3410 (800)292-4789 (301)762-8282 (703)288-0026 (410)539-3664

f7cdbd99-e668-4efd-a6b8-1be95a488f45

DEPOSITION OF STUART M. STATLER
CONDUCTED ON THURSDAY, JANUARY 24, 2008

Page 228

1  indicate otherwise.
2       Q.    Is there anything that prevented the
3  manufacturer of these blinds from putting cord stops
4  in the blinds?
5       A.    On their own?
6       Q.    Yes.
7       A.    No.
8       Q.    Does this standard stop them from doing
9  that?
10      A.    No, it doesn't stop them from doing it.  It
11 doesn't tell them anything about it.
12      Q.    But it doesn't prevent the manufacturer
13 from taking a step to --
14      A.    No.  And I'm not saying that the fact
15 that -- and I think we already discussed this.  The
16 fact that WCMA, by virtue of its sponsoring this
17 standard and putting itself in the lead role to ensure
18 the adequacy of a safety standard for window blind
19 safety, the fact that they did that does not excuse or
20 in any way immunize individual manufacturers in suits
21 of common law, whether it be a pull cord or an inner
22 cord problem.  Irrespective of anything done in

EXHIBIT
H supp
6 of 6