# UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| VALERIE ROUNTREE, individually and as Personal Representative of the ESTATE OF APRIL LYNNE COX; MORGAN SCHEDIWY, a minor through her natural mother and guardian VALERIE ROUNTREE; and CHRISTOPHER COX )))))))) | |
| Plaintiffs, ) | 3:04-cv-00112 JWS |
| vs. ) | ORDER FROM CHAMBERS |
| ) | [Re:  Motion at Docket 157 ] |
| CHING FENG BLINDS INDUSTRY CO., LTD., *et al.*, )))) | |
| Defendants. )) | |

## I. MOTION PRESENTED

At docket 157, defendant Window Covering Manufacturers Association ("WCMA") moves for summary judgment.  Plaintiffs Valerie Rountree, on behalf of the Estate of April Cox and Morgan Schediwy, and Christopher Cox ("Plaintiffs"), oppose the motion at dockets 163, 164, 168, and 169.  WCMA's reply is filed at docket 176.  Oral argument was not requested and would not assist the court.

## II. BACKGROUND

This action arises out of the death of April Cox, who strangled in the inner cord of a window blind at her grandparents' home on May 27, 2002.  Valerie Rountree and

Christopher Cox are the decedent's biological parents. Morgan Schediwy is the decedent's sister. Plaintiffs filed a complaint against WCMA and three other defendants: Jencraft Manufacturing ("Jencraft"), the alleged distributor of the blinds; Wal-Mart, the alleged retailer; and Ching Feng Blinds Industry Co. ("Ching Feng Blinds"), the alleged manufacturer. Jencraft was dismissed prior to answering the complaint.[1] Summary judgment was granted in Wal-Mart's favor on April 27, 2006, because plaintiffs were unable to produce admissible evidence that the blinds had been purchased from it.[2] Ching Feng Blinds was dismissed as a defendant on July 27, 2007.[3]

WCMA is a non-profit trade association incorporated in New Jersey, with its principal place of business in New York. WCMA's membership consists exclusively of window covering manufacturers. In 1996, WCMA developed a national safety standard intended to address the strangulation hazard of window blinds.[4] A warning bearing strong resemblance to that sponsored by WCMA was affixed to the blinds in which April Cox got caught. Plaintiffs' cause of action sounds in negligence and alleges that WCMA's standard was "woefully inadequate."[5] Whether any undertaking by WCMA resulted in the imposition of a legal duty to plaintiffs is the crux of the motion before the court.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."[6] The moving party has the burden of coming forward with admissible evidence showing "a complete failure of proof concerning an essential

---

[1]Doc. 23

[2]Doc. 86.

[3]Doc. 137.

[4]Doc. 168-56, exh. 50 at 3, 5.

[5]Doc. 164 at 25.

[6]Fed. R. Civ. P. 56(c).

Case 3:04-cv-00112-JWS   Document 179   Filed 06/10/08   Page 2 of 10

element of the nonmoving party's case . . . ."[7]  To avoid summary judgment, assuming the above burden is met, the nonmoving party must "set out specific facts showing a genuine issue for trial."[8]  The court will not assess the credibility of, nor weigh the evidence and "all justifiable inferences are to be drawn in . . . favor"[9] of the nonmoving party.

Under Alaska law, "the 'precise nature and extent' of a duty 'is a question of law which can be decided at the summary judgment stage.'"[10]  Where the breadth of the assumed duty is at issue, summary judgment is only proper where "reasonable people could not differ on the nature and extent of [the] voluntarily undertaken duty . . . ."[11]

## IV. DISCUSSION

"The basic question is whether the defendant has undertaken a responsibility.  If it has, and it has failed adequately to discharge that responsibility, it may be liable to the people who have been injured."[12]  Plaintiffs argue that WCMA voluntarily undertook to provide a safety standard for window coverings and thereby incurred a duty to plaintiffs.[13]  WCMA argues that plaintiffs have not produced any evidence that WCMA was under any duty to plaintiffs.[14]  Specifically, WCMA argues (1) that there is no evidence supporting WCMA's liability under the Restatement (Second) of Torts § 324A, (2) that there is no evidence that WCMA had assumed any duty to warn specifically of the dangers associated with the inner cord, and (3) that for policy reasons a trade

---

[7]*Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

[8]Fed. R. Civ. P. 56(e)(2).

[9]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[10]*Smith v. State*, 921 P.2d 632 (Alaska 1996).

[11]*Mulvihill v. Union Oil Co.*, 859 P.2d 1310, 1314 (Alaska 1993).

[12]*Kotzebue v. McLean*, 702 P.2d 1309, 1313 (Alaska 1985).

[13]Doc. 164 at 15.

[14]Doc. 158 at 3.

-3-

association should not be held liable for developing safety standards.[15]  These
contentions will be addressed in turn.

**A. WCMA's Liability Under § 234A**

The Restatement (Second) of Torts § 324A ("§ 324A") "applies to any
undertaking to render services to another, where the actor's negligent conduct in the
manner of performance of his undertaking . . . results in physical harm to [a] third
person . . . ."[16]  Section 324A states that

> One who undertakes, gratuitously or for consideration, to render
> services to another which he should recognize as necessary for
> the protection of a third person or his things, is subject to liability
> to the third person for physical harm resulting from his failure to
> exercise reasonable care to protect his undertaking, if:
>
> > (a) his failure to exercise reasonable care increases the
> > risk of such harm, or
> >
> > (b) he has undertaken to perform a duty owed by the
> > other to the third person, or
> >
> > (c) the harm is suffered because of reliance of the other
> > or the third person upon the undertaking.[17]

Plaintiffs argue that WCMA voluntarily undertook to perform a service by
developing a safety standard, thereby incurring liability to the third-party consumer
under subsections (a) and (b).  WCMA argues that no criterion of § 234A can be met.

**1. Increased Risk**

Plaintiffs argue that WCMA's standard was inadequate because it neither
addressed the inner cord, nor cord stops, which alleviate the danger of the inner cord.
Plaintiffs argue further that because the safety standard was inadequate, the risk of
harm associated with the blinds was increased.  This argument is flawed, however,
because the absence of a decrease in the risk involved with a particular product is not

---

[15]*Id.* at 7.

[16]Restatement (Second) of Torts § 324A cmt. b (1965).

[17]Restatement (Second) of Torts § 324A.

-4-

tantamount to an increase in the risk involved with that product. The level of risk is static. Regardless of whether WCMA's standard was adequate, the risk of harm that the window coverings posed did not vary as a function of that standard. A standard or warning that explicitly accounted for the danger posed by the inner cord may have decreased the risk of injury to plaintiffs. It does not follow logically that the risk of injury to plaintiffs was increased by an inadequate standard. This is particularly true in light of the fact that the manufacturer has not been identified and the influence of WCMA over the manufacturer is uncertain.

Plaintiffs contend that "questions of fact remain concerning whether a negligent adoption of the wrong standard . . . not only increased the risk of strangulation . . . but actually caused it . . . ."[18] Even if all of the evidence that plaintiffs have presented in support of this proposition is assumed to be true, it does not show that an inadequate standard *increased* the risk of harm to the third-party consumer.

### 2. Voluntary Undertaking

In *Smith v. State*, the Alaska Supreme Court made it clear that although duty is a question of law, "'it depends on the nature and extent of the act undertaken, a question of fact.'"[19] Furthermore, "the scope of the assumed duty will vary depending on the inferences drawn from the facts."[20] Summary judgment is only appropriate "insofar as there is no question as to whether the duty the undertaking gave rise to was fully discharged."[21]

WCMA argues that it did not, in the context of § 234A(b), voluntarily undertake to perform a duty owed to plaintiffs. WCMA rests its contention on two bases. First, WCMA argues that Alaska courts have never imposed liability to a third party on an

---

[18]Doc. 164 at 27.

[19]*Smith v. State*, 921 P.2d 632, 634 (Alaska 1996).

[20]*Id.* at 635.

[21]*Id.* at 635.

-5-

entity lacking control over the instrumentality of harm.[22]  In *Anderson v. PPCT Management Systems*,[23] the Alaska Supreme Court did precisely that.  The *Anderson* court held that PPCT Management Systems ("PPCT"), a company that undertook to instruct employees of the Department of Corrections ("DOC") in use-of-force training techniques, was liable to an employee of the DOC who was injured during use-of-force training.[24]  The court concluded "that PPCT had a duty of care in developing and implementing its training program."[25]  The court specifically stated that PPCT's duty was "not . . . limited to danger from PPCT techniques and [did] not . . . require a showing that PPCT had control over the DOC academy . . . "[26] which implemented their training techniques.

WCMA's second basis for this argument is that because the manufacturer has not been identified, there can be no evidence that the manufacturer delegated its duty to WCMA.[27]  A duty, however, need not be delegated to be supplanted by voluntary assumption.

There is no question that the warning on the blinds was substantially the same as that developed by WCMA.[28]  WCMA contends that "there are technical differences between the warning label specified in the safety standard and the label on the blinds."[29]  If it is WCMA's warning affixed to the blinds, WCMA voluntarily undertook to perform at least the duty to warn consumers of the risks of harm associated with the product.  It is of no consequence that WCMA did not have control over the blinds because WCMA

---

[22]Doc. 158 at 11-13.

[23]*Anderson v. PPCT Management Systems, Inc.*, 145 P.3d 503 (Alaska 2006).

[24]*Id.*

[25]*Id.* at 505.

[26]*Id.* at 512.

[27]Doc. 158 at 13-14.

[28]*See* Doc. 111 at 3-4.

[29]Doc. 158 at 15.

Case 3:04-cv-00112-JWS   Document 179   Filed 06/10/08   Page 6 of 10

had control over the content of the warning. The warning itself provides a critical nexus between WCMA, the manufacturer and the consumer. Whether the warning did or did not comport with WCMA's standard cannot be determined as a matter of law. The scope of the duty that WCMA assumed by developing a safety standard for window coverings hinges on disputed questions of fact to be determined by a jury. WCMA is therefore not entitled to judgment as a matter of law on this basis.

**B. Scope of Undertaking**

WCMA contends that it did not undertake "to ensure the safety of all window covering products."[30] The court agrees that "the scope of one's duty is limited by the scope of [their] undertaking."[31] However, as discussed above, the scope of WCMA's undertaking, and the scope of its resultant duty rest on questions of fact that must be determined by a jury.[32]

WCMA contends that "[t]here is no [evidence] that suggests an undertaking of any broader duty . . ."[33] than that set forth in the standard itself. This argument is problematic for WCMA because it admits that it may have undertaken *some* duty by developing the standard. This is contrary to the thrust of WCMA's contentions with respect to liability under § 234A(b).

WCMA argues further that the safety standard sought only to address pull cord strangulation, and not any hazards associated with the inner cord.[34] The stated purpose of that standard was "to provide requirements for covered products . . . that reduce the possibility of injury, including strangulation, to young children from the bead chain, *cord*, or any type of flexible loop device used to operate the product."[35] According to plaintiffs'

---

[30]Doc. 158 at 15

[31]*Id.* at 15.

[32]*Smith v. State*, 921 P.2d 632, 634 (Alaska 1996).

[33]Doc. 158 at 16.

[34]*Id.* at 17.

[35]Doc. 168-56, exh. 50 at 5 (emphasis added).

Case 3:04-cv-00112-JWS   Document 179   Filed 06/10/08   Page 7 of 10

evidence, the pull cord and the inner cord are "actually two ends of one cord."[36]  If the safety standard, as it states, sought to reduce the possibility of harm resulting from the cord, any distinction between the pull cord and the inner cord seems purely semantic.

Finally, even if the distinction between the pull cord and the inner cord is recognized, there is some conflict in the evidence as to whether WCMA knew of the hazards associated with the inner cord at the time the relevant standard was drafted. WCMA contends that "there is no document generated by WCMA that references inner cord strangulation."[37]  There was, however, a letter[38]  received by Peter Rush, the Executive Director of WCMA, that seems to have at least brought the matter to his attention.[39]  Thus, there is a dispute as to whether WCMA knew of the dangers posed by the inner cord at the time they developed the standard in question.  This fact is material to a determination of whether the safety standard was adopted with reasonable care.  WCMA is therefore not entitled to judgment as a matter of law on this separate basis.

### C.  Policy Argument

WCMA contends that for public policy reasons, the court should not impose liability on a trade association, citing *D.S.W. v. Fairbanks North Star Borough*.[40]  In that case the Alaska Supreme Court identified a series of seven factors that should be considered when deciding if a common law duty of care should be imposed on a defendant.

The first of the seven factors is the foreseeability of the particular type of injury. Here the injury, an infant strangling in the cords of a blind, is foreseeable.  Indeed, the objective of the ANSI standard sponsored by WCMA was "to reduce the possibility of

_____

[36]Doc. 168-3, exh. 2 at 2.

[37]Doc. 158 at 17.

[38]Doc. 169, exh. 3.

[39]*See* Doc. 104, exh. 3 at 22-28.

[40]628 P. 2d 554 (Alaska 1981).

-8-

injury, including strangulation, to young children from the bead chain, cord, or any type of flexible loop device used to operate the product."[41]  This factor favors imposition of a duty.  The second factor is the certainty that harm occurred.  Here, there is no doubt that the infant died.  This factor also supports imposition of a duty.

The third factor is the closeness of the connection between the defendant's conduct and the harm.  In any failure to warn case, there is room to argue that the connection is not close, because of the potential that an adequate warning would not be heeded, or that a particular user already would know of the risk.  However, it is well established that makers of products owe a duty to give an adequate warning.[42]  There is no reason to treat an association differently than the manufacturer in a case such as this, where the association sponsored the allegedly defective warning.  This factor therefore favors, if less strongly than the first two, the imposition of a duty.

The fourth factor is the moral blame attached to the conduct.  WCMA asserts that there is no blame which can attach to an effort to "reduce the incidence of window blind strangulation."[43]  That may be so, but once WCMA decided to make the effort to reduce strangulation deaths, the failure to give an adequate warning may fairly be considered culpable conduct.[44]   This factor also supports recognition of a duty.

The fifth of the *D.S.W.* factors is the policy of preventing future harm.  WCMA suggests that imposing liability on a trade association would actually increase the prospects for future harm, presumably because to avoid liability, trade associations would cease to provide *any* warnings.  However, it is also plausible that trade associations would continue to craft and provide warnings because warnings benefit the members of such associations. Imposition of a duty would not then eliminate warnings, but rather assure better warnings, and that outcome would diminish the prospects for

---

[41]Doc. 168-56, exh. 50 at 5.

[42]*E.g., Prince v. Parachutes, Inc.*, 685 P. 2d 83 (Alaska 1984).

[43]Doc. 158 at p. 20.

[44]Restatement (Second) of Torts § 324A.

Case 3:04-cv-00112-JWS   Document 179   Filed 06/10/08   Page 9 of 10

future harm.  It certainly cannot be said that this factor weighs against the imposition of a duty.

The next factor is the burden on the defendant and the consequences to the community if a duty is imposed.  The burden on a manufacturers' association such as WCMA, which is already involved in crafting warnings, would not be great because all that would be required to escape liability would be the crafting of adequate warnings.  The consequences to the community of imposing the duty would be positive, because adequate warnings would reduce injuries and deaths.

The seventh factor is the cost and availability of insurance for trade associations.  WCMA, not plaintiffs, is in a position to present evidence on this point.  WCMA candidly acknowledges that there is nothing in the record on this topic.[45]  The upshot of WCMA's failure to present evidence is that this factor cannot be said to weigh against imposition of liability.

Taking into account the seven factors identified by the Alaska Supreme Court in the *D.S.W.* case, this court concludes as a matter of law that a duty should be imposed on WCMA in favor of plaintiffs.

## V. CONCLUSION

For the foregoing reasons, defendant WCMA's motion for summary judgment at docket 157 is **DENIED**.

DATED at Anchorage, Alaska, this 10th day of June 2008.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[45]Doc. 158 at p. 21.

Case 3:04-cv-00112-JWS   Document 179   Filed 06/10/08   Page 10 of 10